# EXHIBIT G

Case 21-51190-BLS    Doc 49-7    Filed 01/14/22    Page 2 of 12

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

2006 WL 2376763 (W.D.Wash.) (Trial Motion, Memorandum and Affidavit)
United States District Court, W.D. Washington.

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc., Plaintiffs,

v.

David W. WALKER, Donald J. Schroeder, and Terry A. Gunsel, Defendants;

Terrence J. Donahue, Trustee for the Chapter 7 Bankruptcy Estate of PT Cable, Inc., Plaintiff-Intervention,

v.

The Carlyle Group, L.P., a.k.a. The Carlyle Group: et al., Defendants-in-Intervention.

No. CV-04-5709-FDB.
July 3, 2006.

**Defendant Neptune Communications, LLC and Neptune Global
Systems, LLC (U.S.)'s Motios to Dismiss the Complaint in Intervention**

*CONTENTS*

TABLE OF AUTHORITIES ............................................................................................................ iii
INTRODUCTION ........................................................................................................................... 1
BACKGROUND ............................................................................................................................. 2
ARGUMENT .................................................................................................................................. 5
I. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE DELAWARE DIVIDENDS STATUTE (CAUSE OF ACTION NO. 1) .................................................................................... 5
A. Non-Directors NCLLC and NGS Cannot Be Held Liable Under the Delaw are Dividend Statute ..... 5
B. Recipients of a Dividend Are Not Liable under the Delaware Dividend Statute ................................ 6
II. THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT TRANSFER (CAUSE OF ACTION NO. 3) ........................................................................................................................ 6
A. The Third Cause of Action Falls Short of the Requirements of Rules 8(a) and 9(b) .......................... 6
B. The Fraudulent Transfer Claim Is Time-Barred ................................................................................ 8
III. THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING A VIOLATION OF DELAWARE'S DIVIDEND STATUTE (CAUSE OF ACTION NO. 4) ...................... 10
V. THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY (CAUSE OF ACTION NO. 5) ........................................................................ 11
A. The Claim for Aiding and Abetting Fiduciary Breaches Is Untimely ................................................ 11
B. The Claim for Aiding and Abetting Fiduciary Breaches Is Insufficient as a Matter of Law ............... 12
V. THE TRUSTEE FAILS TO STATE A CLAIM FOR ALTER EGO LIABILITY (CAUSE OF ACTION NO. 6) ........................................................................................................................... 13
CONCLUSION .............................................................................................................................. 15

*TABLE OF AUTHORITIES*

Cases

*Balistreri v. Pacifica Police Dep't,* 901 F.2d 696 (9th Cir. 1990) .............. 14
*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994) ........................................................................................ 10
*China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l,* 788 F. Supp. 815 (D. Del. 1992) .............................................................................................................. 7
*Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969 (9th Cir. 2004) ................ 2
*Conley v. Gibson,* 355 U.S. 4 1 (1957) ...................................................... 7
*Davis & Cox v. Summa Corp.,* 751 F.2d 1507 (9th Cir. 1985) ................. 12
*Geyer v. Ingersoll Publ'ns Co.,* 621 A.2d 784 (Del. Ch. 1992) ................ 7

*Harper v. Delaware Valley Broadcasters, Inc.,* 743 F. Supp. 1076 (D. Del. 1990), *iaff'd mem.,* 932 F.2d 959 (3d Cir. 1991) .................................. 15

*In re Freeport-McMoran Sulphur, Inc. S'holders Litig.,* No. C.A. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) ....................................... 11, 14

*In re Fruehauf Trailer Corp.,* 250 B.R. 168 (Bankr. D. Del. 2000) ........... 11

*In re Santa Fe Pacific Corp. S'holder Litig.,* 669 A.2d 59 (Del. 1995) ..... 13

*In re Verestar, Inc.,* No. 03-18077 (ALG), 2006 WL 1620193 (Bankr. S.D.N.Y. June 9, 2006) ........................................................... 8

*Isaacson, Stolper & Co. v. Artisan's Sav. Bank,* 330 A.2d 130 (Del. 1974) ................................................................................ 12

*LaHue v. Keystone Inv. Co.,* 496 P.2d 343 (Wash. Ct. App. 1972) ........... 12

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001) ....................... 12

*Malpiede v. Townson,* 780 A.2d 1075 (Del. 2001) .................................. 13

*McMichael v. U.S. Filter Corp.,* No. EDCV 99-182VAP (MCX), 2001 WL 418981 47 (C.D. Cal. Feb. 23, 2001) ............................................... 12

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,* 854 A.2d 121 50 (Del. Ch. 2004) ...................................................... 14

*Miller v. Edward Jones & Co.,* 355 F. Supp. 2d 629 (D. Conn. 2005) ...... 11, 13

*Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260 (D. Del. 1989) ... 14, 15

*Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................................ 8

*Pauley Petroleum, Inc. v. Continental Oil Co.,* 239 A.2d 629 (Del. 1968) .. 14

*Pietrangelo v. NUI Corp.,* No.Civ.04-3223 (GEB), 2005 WL 1703200 (D.N.J. July 20, 2005) ............................................................... 7, 16

*Ralford v. E.B.N. Enters., Inc.,* No. 01C 9393, 2002 WL 1397002 (N.D. Ill. June 2 6, 2002) ................................................................. 14

*Read v. Local Lodge 1284,* 528 F.2d 823 (3d Cir. 1975) ........................ 11

*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003) ............... 7

*Wallace v. Wood,* 752 A.2d 1175 (Del. Ch. 1999) .................................. 14, 15

Statutes and Rules
11 U.S.C. § 5 4 4 (b ) ................................................................... 1, 8
Del. Code tit. 6, § 1309 ............................................................... 9, 10
Del. Code tit. 8, § 170(a) ............................................................. 5
Del. Code tit. 8, § 172 ................................................................. 1
Del. Codetit. 8, § 174 ................................................................. 5, 6, 10
Del. Code tit. 10, § 8106 ............................................................. 11, 12
Wash. Rev. Code § 4.16.080(2) ...................................................... 12
Wash. Rev. Code § 4.18.020(1)(a) .................................................. 12
Wash. Rev. Code § 19.40.091 ........................................................ 9, 10
Fed. R.Civ.P. 8(a) ..................................................................... 1, 7, 8, 16
Fed. R.Civ.P. 9(b) ..................................................................... 1, 7, 8, 10
Fed. R. Civ. P. 12 (b)(6) .............................................................. 1
Fed. R. Evid. 201 ...................................................................... 12
Treatise
1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 5.32 (3d ed. 2002) .............. 6

*INTRODUCTION*

Case 21-51190-BLS    Doc 49-7    Filed 01/14/22    Page 4 of 12

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

Defendants Neptune Communications, LLC ("NCLLC0") [1] and Neptune Global Systems, LLC (U.S.) ("NGS") move to dismiss the Trustee's Complaint in Intervention pursuant to Federal Rule of Civil Procedure 12(b)(6).

The first cause of action fails to state a claim under Delaware's dividends statute, Del. Code tit. 8, § 172, because the Delaware statute only creates liability for directors of the corporation who actively participated in the declaration of an improper dividend. NCLLC and NGS are not alleged to be (and were not) directors of Neptune Pacific Holdings, Inc. ("NPH"), which declared the dividends at issue.

The third cause of action, for fraudulent transfer, is deficient under Rules 8(a) and 9(b) because it is unclear whether it is even directed at NCLLC and NGS. It also fails to identify both the relevant state statute and the specific creditor into whose shoes the Trustee steps, as required to state a claim under 11 U.S.C. § 544(b). Even if the fraudulent transfer claim could overcome these defects, it still would be time-barred, as the Trustee has conceded.

The fourth cause of action fails to state a claim for aiding and abetting a violation of Delaware's dividends statute because (as the Trustee also acknowledges) no such cause of action exists under Delaware law. Even if such a cause of action did exist, the Complaint's allegations are still insufficient as a matter of law. First, the Trustee improperly seeks to impose both primary and aiding-and-abetting liability on NCLLC and NGS for the same alleged violation of Delaware's dividend statute. Second, no aiding-and-abetting claim can survive in the absence of some primary claim for violation of the statute. Third, any aiding and abetting claim would be untimely under the statute of limitations that would govern this type of cause of action.

The fifth cause of action, for aiding and abetting a breach of fiduciary duty, likewise is time-barred. It is also insufficient as a matter of law for three other reasons. First, it should be dismissed to the extent that it seeks to impose both primary and aiding-and-abetting liability for the same alleged breach of fiduciary duty, for those two theories cannot co-exist. Second, the Trustee fails to make the requisite allegation that NCLLC and NGS knowingly participated in a fiduciary breach, instead making only a conclusory assertion that they "knew or should have known" of a fiduciary breach. Third, the claim for aiding-and-abetting a fiduciary breach does not exist in the absence of a primary fiduciary breach.

The sixth cause of action, for alter ego liability, should be dismissed for failure to allege any of the requisite factors showing that NCLLC and NGS functioned as a facade for the dominant shareholder, or that they used the corporate form to perpetrate a fraud. Indeed, the Trustee acknowledges that his alter ego allegations lack evidentiary support.

## BACKGROUND

The North Pacific Cable ("NPC") is an undersea telecommunications cable whose U.S. end was owned by PTC. [2] *See* Compl. ¶¶ 3.1, 3.2. Telecom carriers acquired capacity on the NPC pursuant to contracts that required the carriers to pay fees for the operations and maintenance ("O&M") of the undersea cable. *Id.* ¶¶ 3.5, 3.8, 3.37. Until 1998, PTC was owned primarily by a publicly traded company, Pacific Telecom, Inc. ("PTI"). *Id.* ¶¶ 3.4, 3.15. PTC harged all of its common carrier customers a surcharge over the costs it incurred for O&M services from the time the NPC began operations in 1991, and for a period of seven years before Donald Schroeder, David Walker, and Terry Gunsel (the "Individuals") acquired an ownership interest in PTC. *Id.* ¶ 3.9.

In May 1998, the Individuals acquired an indirect minority interest in PTC as part of a purchase of PTC by the Carlyle Group, L.P. and related entities. [3] *Id.* ¶¶ 3.14-3.15. Although the Individuals previously had been employed by PTC, they were not directors or owners of the company, nor were they the decision-makers concerning PTC's O&M pricing practices. *See id.* ¶ 3.10. In fact, the Individuals already had left their positions at PTC by the time the NPC went into service, or within two years

Case 21-51190-BLS   Doc 49-7   Filed 01/14/22   Page 5 of 12

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

thereafter. *Id.* ¶ 3.10. After the Individuals and the Carlyle entities acquired their interest in PTC, the company "continue[d] its practice of billing AT&T and the other carriers more than the actual costs of providing O&M" that had been instituted and maintained by PTI since the early 1990s. *Id.* ¶ 3.33.

In 1999, PTC conducted a financing transaction known as a leveraged recapitalization. In June 1999, PTC and NPH jointly and severally issued $46.7 million of Senior Secured Notes to a group of insurance company lenders ("Lenders"). *Id.* ¶ 3.19. To fulfill a condition of the loan, the Lenders obtained an opinion from Kane Reece Associates, Inc. ("Kane Reece"), an entity independent from PTC and NPH. *Id.* ¶ 3.23. NPH received the net proceeds from the Senior Secured Notes, after deducting transaction costs and a $1.7 million liquidity reserve. *Id.* ¶ 3.20. NPH declared a dividend of $43 million and, in December 1999, a further dividend of $1.25 million. *Id.* ¶ 3.21.

In October 2000, the Individuals effectively became the sole owners of PTC. *Id.* ¶ 3.31. The Individuals continued the O&M pricing practices that had been in place since the NPC went into service in May 1991. *Id.* ¶ 3.33.

### Procedural History of the *PT Cable v. Sprint* Action

In 2003, litigation commenced between AT&T Corporation ("AT&T") and PTC concerning O&M costs under one type of contract for capacity on the NPC, the Indefeasible Right of User Interest Agreements ("IRUs"). [4] *Id.* ¶ 3.37. AT&T sued PTC, claiming that PTC had overcharged for O&M. *Id.* PTC subsequently sued AT&T and Sprint Communications Co., L.P. for failure to make payments under the IRUs. *Id.* Thereafter, AT&T's action was transferred to this Court and consolidated with PTC's action under the caption *PT Cable, Inc. v. Sprint Communications Co., L.P., and AT&T Corp.,* No. 03-CV-5202-FDB ("*PT Cable*"). *Id.* The Individuals were not parties to this litigation. On September 22, 2004, this Court granted summary judgment on AT&T's breach of contract claim and ordered PTC to pay $3,714,420 plus interest, amounting to a total award of $5,597,374. *PT Cable,* Dkt. #169 at 11; *see* Compl. ¶ 3.38. The Court also granted Sprint's joinder in AT&T's summary judgment motion and invited Sprint to file a motion for damages. The Court subsequently awarded Sprint $2,482,767.55 in damages, plus interest, amounting to a total award of $3,384,528.55. *See id.* ¶ 3.38. Those judgments presently are on appeal.

On January 5, 2005, the Lenders filed an involuntary bankruptcy petition against PTC. *Id.* ¶ 1.1. Following these events, PTC effectively ceased doing business. The appeal from the Court's summary judgment order was stayed by the filing of the bankruptcy petition.

### Procedural History of This Action

On October 20, 2004, almost immediately after the Court entered judgment on AT&T's behalf against PTC, AT&T and Alascom, Inc. ("Alascom") (a carrier owned by AT&T) filed an action against the Individuals in this Court asserting eight separate claims and seeking at least $13 million in damages, plus treble and punitive damages. The Trustee moved to intervene in this action on February 24, 2006. *See* Dkt. #69. The Trustee sought to substitute as the real party in interest on AT&T's claims for breach of fiduciary duty, constructive fraudulent conveyances, actual fraudulent conveyances, and illegal dividends. The Trustee further sought to add new defendants and new claims to those set forth in AT&T's and Alascom's Complaint. The Court granted the Trustee's motion to intervene on March 23, 2006. Dkt. #73.

### ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE DELAWARE DIVIDENDS STATUTE (CAUSE OF ACTION NO. 1).

The Complaint alleges that all Defendants are jointly and severally liable under Del. Code tit. 8, § 174 for the June and December 1999 dividend distributions by NPH. Compl. ¶¶ 3.21, 4.2. NCLLC and NGS cannot be liable under Section 174, because they

Case 21-51190-BLS    Doc 49-7    Filed 01/14/22    Page 6 of 12

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

are not alleged to be, and were not, directors of NPH at the time the dividends were declared, nor is there precedent for holding corporate entities such as NCLLC and NGS liable under this statute.

#### A. Non-Directors NCLLC and NGS Cannot Be Held Liable Under the Delaware Dividend Statute.

Delaware's dividend statute authorizes directors to declare and pay dividends from either surplus or net profits for the fiscal year in which the dividend is declared and/or the preceding fiscal year. Del. Code tit. 8, § 170(a). The statute expressly limits liability for noncompliance to "*the directors* under whose administration the [distribution] may happen ..." Del. Code tit. 8, § 174(a) (emphasis added). [5]  The statute exempts from liability any "director who may have been absent when the [distribution was declared], or who may have dissented from the act or resolution by which the [distribution was declared] ..." *Id.* Thus, by its plain language, the statute creates liability *only* for directors of the corporation who were actually involved in the distribution of allegedly unlawful dividends.

Neither NCLLC nor NGS was a director of NPH at the time the challenged dividends were declared. *See* Compl. ¶ 1.3. Neither the statute nor any case law interpreting the statute authorizes liability against persons who were not directors of the corporation declaring the dividends. Because NCLLC and NGS are not alleged to be, and were not, directors of NPH, they cannot be held liable under the statute.

#### B. Recipients of a Dividend Are Not Liable under the Delaware Dividend Statute.

To the extent the Trustee submits that NCLLC and NGS are liable, not as directors, but as recipients of NPH's dividend payments, that theory lacks merit. *See* Compl. ¶ 4.2. Again, the Delaware statute provides a cause of action only against participating *directors*- in this case, the directors of NPH at the time of the NPH distributions - and certainly does not create liability for recipients of dividend payments. *See* 1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 5.32 (3d ed. 2002) ("There is no statute imposing liability on stockholders who receive unlawful dividends."). There is no basis for side-stepping the plain text of Section 174 to create from whole cloth a new, statutory cause of action against NCLLC and NGS based on receipt of the challenged dividends.

### II. THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT TRANSFER (CAUSE OF ACTION NO. 3).

#### A. The Third Cause of Action Falls Short of the Requirements of Rules 43 8(a) and 9(b).

The Trustee's third cause of action, alleging fraudulent transfer, should be dismissed for failure to satisfy the pleading requirements of Fed. R.Civ.P. 9(b) and 8(a), because it is impossible to determine whether the Trustee even seeks to hold NCLLC and NGS liable for this claim, and because he fails to sufficiently allege the basis for his standing.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). Where, as here, a fraudulent transfer claim alleges actual intent to defraud, it must be pled with the particularity required by Rule 9(b). *See* Compl. ¶ 4.7 ("Such encumbrance was ... made with actual intent to hinder, delay or defraud creditors of PTC"); *China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l,* 788 F. Supp. 815, 819 n.6 (D. Del. 1992); *Geyer v. Ingersoll Publ'ns Co.,* 621 A.2d 784 (Del. Ch. 1992) (applying Del. Ch. R. 9(b)).

Fatal to the Trustee's third cause of action is its omission of the " 'who, what, when, where, and how' of the misconduct charged," as Rule 9(b) requires. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). The Complaint contains no

Case 21-51190-BLS Doc 49-7 Filed 01/14/22 Page 7 of 12

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

allegations whatsoever of any specific acts by NCLLC and NGS that purportedly support a fraudulent transfer claim, let alone the time or place of such acts. Indeed, the fraudulent transfer claim must be dismissed for failing to allege even "who" the Trustee seeks to hold liable, leaving NCLLC and NGS to guess as to whether they are charged with fraudulent transfer. *See* Compl. ¶¶ 4.6-4.10.

Because the third cause of action fails to give defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests," as required by Fed. R.Civ.8(a), *see* Conley v. Gibson, 355 U.S. 41, 47 (1957), it should also be dismissed for violating that Rule. *See* Pietrangelo v. NUI Corp., No.Civ.04-3223 (GEB), 2005 WL 1703200, at *10 (D.N.J. July 20, 2005) (Rule 8(a) not satisfied where "the allegations are so general that they fail to put each defendant on notice of the claims against them.").

The Complaint violates Rules 8(a) and 9(b) in yet another way: it fails to allege sufficiently the basis for the Trustee's atanding to bring the fraudulent transfer claim. The Trustee relies upon 11 U.S.C. § 544(b), *see* Compl. ¶ 4.8, which authorizes the avoidance by the Trustee of "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable *under applicable law by a creditor* holding an [allowable] unsecured claim." 11 U.S.C. § 544(b) (emphasis added). Both the identity of the creditor holding the claim and the applicable state law must be alleged in order for the Trustee to state a claim. Unless the Trustee "is required to allege specifically the identity of the unsecured creditor(s) whose rights he is asserting, defendants will have no way to assess[] the initial strength of the plaintiffs claim, ... preserv[e] relevant evidence, ... identify[] any related counter- or cross-claims, and ... prepar[e] an appropriate answer." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1 101, 1148 (C.D. Cal. 2003) (alterations in original; quotation marks omitted) (granting motion to dismiss). By alleging in conclusory terms the existence of a creditor into whose shoes the Trustee steps - without identifying that creditor - the Trustee denies plaintiffs the notice required by Rule 8(a). *See* Compl. ¶ 4.8.

Moreover, the Complaint fails to identify the specific state statute that supports the Trustee's fraudulent transfer claim, rendering the Complaint deficient under Rule 9(b). *See* Compl. ¶ 4.8 (referring to "Washington State or other applicable law"); *In re Verestar, Inc.,* No. 03-18077 (ALG), 2006 WL 1620193, at *16 -17 (Bankr. S.D.N.Y. June 9, 2006) (dismissing under Rule 9(b) a fraudulent transfer claim that failed to allege the state statute supporting standing under § 544(b)).

### 31 B. The Fraudulent Transfer Claim Is Time-Barred.

The Trustee's third cause of action is also untimely under both theories of liability asserted by the Trustee: constructive and actual fraud.

In alleging constructive fraud, the Trustee asserts:

> The encumbrance of PTC's assets in favor of New York Life and Jefferson Pilot constituted a fraudulent transfer in that the encumbrance was given without receipt of any value, let alone reasonable equivalent value, rendered PTC and NPH insolvent, left them with woefully insufficient capital and rendered them unable to serve not only the debt to New York Life and Jefferson Pilot, but their ongoing operational obligations as well.

Compl. ¶ 4.7.

Case 21-51190-BLS    Doc 49-7    Filed 01/14/22    Page 8 of 12

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

49 The fraudulent transfer claim is untimely to the extent it relies upon constructive fraud, because it was not brought "within 4 years after the transfer was made or the obligation was incurred." Del. Code tit. 6, § 1309(2); *see also* Wash. Rev. Code § 19.40.091(b) (same). The alleged transfer is "the encumbrance of PTC's assets in favor of New York Life and Jefferson Pilot," *see* Compl. ¶ 4.7, which took place upon PTC and NPH's issuance of Senior Secured Notes to the Lenders on June 17, 1999. Compl. ¶ 3.19 ("The Notes were secured by liens on essentially all of PTC's assets."). Any claim based on constructive fraud had to be filed no later than June 17, 2003. Even if the Trustee's Complaint in Intervention relates back to the filing of AT&T's Complaint on October 20, 2004, the fraudulent transfer claim must be dismissed as untimely to the extent it relies upon a theory of constructive fraud. [6]

The fraudulent transfer claim also is time-barred to the extent it is based on actual fraud. To allege actual fraud, the Trustee asserts that "[s]uch encumbrance was also made with actual intent to hinder, delay, or defraud creditors of PTC ...." Compl. ¶ 4.7. A fraudulent transfer claim based on actual fraud must be brought "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Del. Code tit. 6, § 1309(1); *see also* Wash. Rev. Code § 19.40.091(a) (same). As set forth above, the Trustee's claim was not filed "within 4 years after the transfer was made or the obligation was incurred." *Id.*

Nor does the Trustee allege sufficiently that the claim was filed "within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." *Id.* The Trustee fails to identify the creditor into whose shoes he steps, nor does he allege facts sufficient to conclude that that creditor lacked actual or constructive knowledge of the transfer within the limitations period. *See* Compl. ¶ 4.8. These omissions not only fall short of the particularity that Fed. R.Civ.P. 9(b) demands for a claim of actual fraudulent transfer, *see* Section III.A, *supra;* they also render the fraudulent transfer claim untimely to the extent it alleges actual fraud.

### III. THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING A VIOLATION OF DELAWARE'S DIVIDEND STATUTE (CAUSE OF ACTION NO. 4).

The fourth cause of action, alleging aiding and abetting a violation of Delaware's dividend statute, is subject to dismissal on four grounds.

*First,* as the Trustee concedes, no such cause of action exists. [7] Neither the statute nor any Delaware court has ever recognized such a cause of action. To do so would be an unwarranted expansion of the statute, which explicitly provides for private actions only against directors who were involved in declaring the dividend. Del. Code tit. 8, § 174; *see also* Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 175 (1994) (rejecting aiding and abetting claim under § 10(b) of the Securities Exchange Act of 1934, because the statutory text controls the definition of conduct covered by § 10(b) and does not permit such expansion).

*Second,* even if such a cause of action were to exist, the Trustee's claim would be subject to dismissal to the extent that the Trustee seeks to impose both primary and aiding-and-abetting liability on NCLLC and NGS for the payment or receipt of the dividends, because "one cannot aid or abet oneself." Miller v. Edward Jones & Co., 355 F. Supp. 2d 629, 644 (D. Conn. 2005) (quotation omitted).

*Third,* again assuming *arguendo* that Delaware's dividend statute supports an aiding and abetting claim, no such claim can survive in the absence of a primary claim for violation of the statute. As set forth above, the Trustee fails to state a claim for a violation of that statute, and therefore has no claim against NCLLC and NGS for aiding and abetting such a violation. *Cf.* In re Freeport-McMoran Sulphur, Inc. S'holders Litig., No. C.A. 16729, 2001 WL 50203, at *5 n.29 (Del. Ch. Jan. 11, 2001) ("[A]n underlying breach of fiduciary duty [is] an essential element of a claim for aiding and abetting.").

Case 21-51190-BLS   Doc 49-7   Filed 01/14/22   Page 9 of 12

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

*Fourth,* even assuming *argulendo* that a cause of action for aiding and abetting the allegedly unlawful dividend distributions did exist, it would be time-barred. Such a cause of action, if it did exist, would necessarily be subject to Delaware's three-year statute of limitations for an "action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant." Del. Code tit. 10, § 8106; *Read v. Local Lodge 1284,* 528 F.2d 823, 826 (3d Cir. 1975) ("§ 8106 is the general statute" that applies absent a statutory exception). Events that occurred in June and December of 1999 cannot support a claim brought over four years later, on October 20, 2004 (assuming relation back to the filing of AT&T's Complaint). *Id.*

### IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY (CAUSE OF ACTION NO. 5).

#### A. The Claim for Aiding and Abetting Fiduciary Breaches Is Untimely.

The Trustee's claim for aiding and abetting fiduciary breaches is untimely under Delaware's three-year statute of limitations. [8]

*See* Del. Code tit. 10, § 8106; *In re Fruehauf Trailer Corp.,* 250 B.R. 168, 184 (Bankr. D. Del. 2000) (applying Del. Code tit. 10, § 8106 to a claim of aiding and abetting fiduciary breach). The statute of limitations set forth at Del. Code tit. 10, § 8106 begins to run at the time of the wrongful act. *See Isaacson, Stolper & Co. v. Artisan's Sav. Bank,* 330 A.2d 130, 132 (Del. 1974).

The Trustee alleges that defendants aided and abetted breaches of fiduciary duties by PTC's and NPH's boards in connection with three 1999 transactions: the issuance by PTC and NPH of $46.7 million of Senior Secured Notes on June 17, 1999, *see* Compl. ¶ 3.19, the declaration by NPH of a $43 million dividend on June 22, 1999, *see* Compl. ¶ 3.21, and the declaration by NPH of a $1.25 million dividend in December 1999, *see* Compl. ¶ 3.21.

The Trustee's action is untimely even if his Complaint in Intervention relates back to the filing date of AT&T's Complaint (October 20, 2004). Under the three-year statute of limitations, the claim for aiding and abetting fiduciary breaches had to be filed no later than June 2002 (for fiduciary breaches in connection with the issuance of the Senior Secured Notes and the declaration of the $43 million dividend) or December 2002 (for fiduciary breaches in connection with the declaration of the $1.25 million dividend). The Trustee's fifth cause of action therefore is untimely and should be dismissed.

#### B. The Claim for Aiding and Abetting Fiduciary Breaches Is Insufficient as a Matter of Law.

Even if timely, the Trustee's allegation that NCLLC and NGS are "liable for aiding and abetting the breach of fiduciary duties by PTC and NPH Directors," Compl. ¶ 4.14, is fatally deficient for the following three reasons.

*First,* if the Trustee seeks to impose both primary and aiding-and-abetting liability on NCLLC and NGS for the same alleged breach of fiduciary duty, the aiding and abetting claims should be dismissed. It is tautological that "one cannot aid or abet oneself." *Miller,* 355 F. Supp. 2d at 644. The Trustee's claims for primary and secondary liability against NCLLC and NGS cannot co-exist.

*Second,* the Trustee fails to make the requisite allegation that the Individuals " 'knowingly participate[d]' " in the breach. *Malpiede v. Townson,* 780 A.2d 1075, 1096 (Del. 2001). "Knowing participation in a board's fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach." *Id.* at 1097. It is insufficient to rely on conclusory allegations of knowing participation. *See In re Santa Fe Pacific Corp. S'holder Litig.,* 669 A.2d 59, 72 (Del. 1995). Rather than alleging (as is required) that NCLLC and NGS had actual knowledge, the Trustee instead asserts that defendants "knew *or should have known* that encumbering PTC's assets as previously alleged, and declaring the Illegal Dividend, violated the PTC and NPH Directors' fiduciary duties to PTC and Neptune Pacific." Compl. ¶ 4.14 (emphasis added).

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

Case 21-51190-BLS    Doc 49-7    Filed 01/14/22    Page 10 of 12

The failure to allege NCLLC's and NGS's actual knowledge renders the aiding and abetting claim insufficient as a matter of law. Even under liberal pleading standards, "to say 'Defendant knew or should have known' is not adequate." *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,* 854 A.2d 121, 144 (Del. Ch. 2004) (quotation omitted).

*Third,* absent a primary claim against other defendants for breach of fiduciary duty, there is no claim against NCLLC and NGS for aiding and abetting such a breach. *See Freeport-McMoran,* 2001 WL 50203, at \*5 n.29 ("[A]n underlying breach of fiduciary duty [is] an essential element of a claim for aiding and abetting.").

## V. THE TRUSTEE FAILS TO STATE A CLAIM FOR ALTER EGO LIABILITY (CAUSE OF ACTION NO. 6).

The Trustee effectively concedes that his allegations of alter ego liability fail to meet the demanding threshold set by Delaware law. His Complaint does not allege any facts supporting this alleged cause of action. Rather, it merely speculates that such a claim *might* exist against unspecified parties if facts develop that might support it. Such a speculative allegation lacks a good faith basis and is insufficient as a matter of law. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990) ("Dismissal can be based on ... the absence of sufficient facts alleged under a cognizable legal theory."); *Ralford v. E.B.N. Enters., Inc.,* No. 01 C 9393, 2002 WL 1397002, at \* 1 (N.D. Ill. June 26, 2002) (dismissing claim based on the "speculative argument" "that 'something may turn up' in discovery").

Under controlling Delaware law, the corporate form is to be disregarded only in exceptional circumstances, and only where the defendants used the limited liability of the corporate form "deliberately, with specific intent to escape liability for a specific tort or class of torts" - *i.e.* where "fraud or injustice [is] found in the defendants' use of the corporate form." *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260, 269 (D. Del. 1989) (quotation omitted); *see Pauley Petroleum, Inc. v. Continental Oil Co.,* 239 A.2d 629, 633 (Del. 1968); *Wallace v. Wood,* 752 A.2d 1175, 1183 (Del. Ch. 1999) (persuading court to disregard corporate entity " 'is a difficult task' ").

The Trustee does not even attempt to meet this standard. Nowhere does he allege any factors showing that "the corporation simply functioned as a facade for the dominant shareholder," *Harper v. Delaware Valley Broadcasters, Inc.,* 743 F. Supp. 1076, 1085 (D. Del. 1990) (quotation omitted), *aff'd mem.,* 932 F.2d 959 (3d Cir. 1991), including lack of attention to corporate formalities, dominion of one party over the corporate entity, and the commingling of assets. *See Mobil Oil,* 718 F. Supp. at 266-68. Nor does the Trustee make the requisite allegation that NCLLC and NGS "utilized the corporate form to perpetrate a fraud or to work an injustice." *Mobil Oil,* 718 F. Supp. at 270; *see also Wallace,* 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.").

Instead, the Trustee effectively admits that he lacks any evidence supporting alter ego liability, but hopes that such evidence exists. His sixth cause of action alleges, *in its entirety,* only the following speculative and non-specific statement:

> To the extent any of the PTC Affiliated Defendants have been used as instrumentalities to perpetrate a fraud or injustice upon PTC, Neptune Pacific and/or their creditors, the separate existence of such defendants should be disregarded and such defendants should be found to be alter egos of other liable defendants.

48 Compl. ¶ 4.17.

Case 21-51190-BLS    Doc 49-7    Filed 01/14/22    Page 11 of 12

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

The Trustee's alter ego claim is purely speculative, for it relies, *inter alia,* upon the Trustee finding evidence that defendants "have been used as instrumentalities to perpetrate a fraud or injustice." *Id.* At present, the Trustee's allegations reflect that he lacks any evidentiary support for his alter ego claim. The Trustee's sixth cause of action thus is deficient as a matter of law and should be dismissed.

### *CONCLUSION*

For the foregoing reasons, the Complaint in Intervention should be dismissed against defendants Neptune Communications, LLC and Neptune Global Systems, LLC (U.S.). [9]

### **Footnotes**

1    The Trustee served the Complaint in Intervention on two separate entities named Neptune Communications, LLC. The other identically-named (although independent) entity is represented by Gregory Murphy, Esq., and is responding separately to the Trustee's Complaint in Intervention. The NCLLC entity discussed in this motion merged into NGS effective December 28, 2000, with NGS as the surviving entity, and NCLLC ceased to exist at that time. Pursuant to the merger agreement, the assets and liabilities of NCLLC vested in NGS. For this reason, NCLLC has requested that the Trustee dismiss NCLLC from this action, and the Trustee is considering this request. NCLLC reserves the right to raise this issue and present relevant documentation, if necessary, in a future summary judgment motion.

2    For purposes of this motion, well-pleaded factual allegations are assumed to be true, although the Court need not accept conclusory allegations or legal conclusions cast as facts. *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir. 2004).

3    In that transaction, NCLLC, through its wholly-owned subsidiary Neptune Pacific Holdings, Inc. ("NPH"), acquired a 100% interest in PTC. *Id.* ¶ 3.15. The Individuals were the majority owners of NGS, which owned 28.5% of NCLLC. *Id.* ¶ 3.14. The remaining 71.5% of NCLLC was owned by the defendants identified in the Trustee's Complaint as the Carlyle Entities. *Id.*

4    The other type of contract for capacity on the NPC, the Construction and Maintenance Agreement 50 ("C&MA"), contained an arbitration clause. As a result, the issue of O&M charges under the C&MA was the 51 subject of an International Chamber of Commerce arbitration and was not at issue in the litigation between AT&T and PTC. Compl. ¶ 3.37.

5    Section 174(a) reads: "In case of any wilful or negligent violation of § 160 or 173 of this title, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within 6 years after paying such unlawful dividend or after such unlawful stock purchase or redemption, to the corporation, and to its creditors in the event of its dissolution or insolvency, to the full amount of the dividend unlawfully paid, or to the full amount unlawfully paid for the purchase or redemption of the corporation's stock, with interest from the time such liability accrued. Any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may be exonerated from such liability by causing his or her dissent to be entered on the books containing the minutes of the proceedings of the directors at the time the same was done, or immediately after such director has notice of the same."

6    In a deposition on June 28, 2006, counsel for the Trustee acknowledged that the claims of constructive fraudulent transfer are time-barred. Ex. 1, Deposition of Thomas Bucknell ("Bucknell Dep.") at 23:6-23:11; 51:1-3 ("[T]he constructive fraud case ... is the one that we had the greatest time problem on.") (rough transcript).

7    Counsel for the Trustee acknowledged, in a June 28, 2006 deposition, that no state has recognized a cause of action for aiding and abetting an illegal dividend distribution. Ex. 1 (Bucknell Dep.) at 50:18-19 ("[W]e never found any cases

AT&T CORP. and Alascom, Inc. d/b/a AT&T Alascom, Inc.,..., 2006 WL 2376763...

Case 21-51190-BLS    Doc 49-7    Filed 01/14/22    Page 12 of 12

alleging that cause of action."); 92:17-19 ("I don't think that the aiding and abetting and the [il]legal dividend has been recognized as a cause of action anywhere that I know of.") (rough transcript).

8    Delaware substantive law governs the Trustee's claim for aiding and abetting fiduciary breaches, because PTC and NPH are Delaware corporations. *See* *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1527 (9th Cir. 1985) ("Claims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation."); Compl. ¶ 1.1; Ex. 2 (PTC certificate of incorporation); Ex. 3 (NPH certificate of incorporation). Accordingly, the Delaware statute of limitations applies. *See* Wash. Rev. Code § 4.18.020(1)(a) (subject to exceptions that do not apply here, "if a claim is substantively based ... [u]pon the law of one other state, the limitation period of that state applies."). The Trustee's claims would be untimely under Washington's three-year statute of limitations as well. *See* Wash. Rev. Code § 4.16.080(2); *LaHue v. Keystone Inv. Co.,* 496 P.2d 343 (Wash. Ct. App. 1972). This Court may take judicial notice of PTC's and NPH's certificates of incorporation pursuant to Fed. R. Evid. 201, without converting this motion to dismiss into a summary judgment motion. *See* *Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001) ("matters of public record" may be considered "without converting the motion to dismiss into a motion for summary judgment" (quotation omitted)); *McMichael v. U.S. Filter Corp.,* No. EDCV 99-182VAP (MCX), 2001 WL 418981, at *8 (C.D. Cal. Feb. 23, 2001) ("The certificate of incorporation of a Delaware corporation is a publicly filed document, and as such, can be judicially noticed.").

9    The Second Cause of Action for breach of fiduciary duty, by its express terms, makes no allegations against NCLLC or NGS. Therefore, NCLLC and NGS are not required to respond to the Second Cause of Action. To the extent this Cause of Action *is* intended to be directed to NCLLC and NGS, it is impermissibly vague and fails to give sufficient notice, and therefore must be dismissed for failure to comply with Fed. R.Civ.P. 8(a). *See* *Pietrangelo v. NUI Corp.,* No.Civ.04-3223 (GEB), 2005 WL 1703200, at *10 (D.N.J. July 20, 2005) (Rule 8(a) not satisfied where "the allegations are so general that they fail to put each defendant on notice of the claims against them."). As to this cause of action, NCLLC and NGS incorporate by reference the arguments set forth in Defendant David W. Walker, Donald J. Schroeder, and Terry A. Gunsel's Motion to Dismiss the Complaint in Intervention and Memorandum of Law in Support of Motion to Dismiss. NCLLC and NGS also join in all well-founded motions filed by other defendants to this action.

End of Document    © 2022 Thomson Reuters. No claim to original U.S. Government Works.