## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| QUORUM HEALTH CORPORATION, | ) Case No. 20-10766 (BLS) |
| | ) |
| Reorganized Debtor. | ) Jointly Administered |
| | ) |
| | ) |
| DANIEL H. GOLDEN, AS LITIGATION TRUSTEE OF THE QHC LITIGATION TRUST, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE | ) Adv. Proc. No. 21-51190 (BLS) |
| Plaintiffs, | ) |
| v. | ) |
| COMMUNITY HEALTH SYSTEMS, INC.; CHS/COMMUNITY HEALTH SYSTEMS, INC.; REVENUE CYCLE SERVICE CENTER, LLC; CHSPSC, LLC; PROFESSIONAL ACCOUNT SERVICES, INC.; PHYSICIAN PRACTICE SUPPORT, LLC; ELIGIBILITY SCREENING SERVICES, LLC; W. LARRY CASH; RACHEL SEIFERT; ADAM FEINSTEIN; AND CREDIT SUISSE SECURITIES (USA) LLC, | ) |
| Defendants. | ) |

## QUORUM HEALTH CORPORATION'S MOTION TO INTERVENE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT ................................................................................................................. 7

    I.      The Bankruptcy Court Has Jurisdiction ................................................... 7

          A.      The Bankruptcy Court Retained Jurisdiction under the Plan and Related Documents ................................................................. 7

          B.      The Bankruptcy Court Has Core Jurisdiction Over the Dispute ................ 11

    II.     Quorum is Entitled to Intervene in this Action ..................................................... 16

    III.   The Bankruptcy Court Should Grant Quorum Declaratory Relief Regarding Its Advancement or Indemnification Obligations .............................. 21

CONCLUSION ............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Charney v. American Apparel, Inc.*,
  2015 WL 5313769 (Del. Ch. Sept. 11, 2015) ...................................................................22, 23

*Coffin v. Malvern Federal Savings Bank*,
  90 F.3d 851 (3d Cir.1996)....................................................................................................11

*Geruschat v. Ernst Young LLP (In re Seven Fields Development Corp.)*,
  505 F.3d 237, 260 (3d Cir.2007 ..........................................................................................12

*Halper v. Halper*,
  164 F.3d 830 (3d Cir. 1999)..................................................................................................13

*In re Combustion Engineering, Inc.*,
  391 F.3d 190 (3d Cir. 2004), *as amended* (2005)...........................................................11, 12

*In re Forever 21, Inc.*,
  623 B.R. 53  (Bankr. D. Del. Oct. 7, 2020) ........................................................................18

*In re Guild & Gallery Plus, Inc.*,
  72 F.3d 1171 (3d Cir. 1996)........................................................................................... 11-12

*In re LaRoche Industries, Inc.*,
  312 B.R. 249 (Bankr. D. Del. 2004) ......................................................................................7

*Matter of Marin Motor Oil, Inc.*,
  689 F.2d 445 (3d Cir. 1982)..................................................................................................17

*In re Money Center*,
  2016 WL 362414 ..................................................................................................................21

*In re Money Center of America, Inc.*,
  544 B.R. 107 (Bankr. D. Del. 2016) ...............................................................................17, 21

*In re Pacor, Inc. v. Higgins*,
  743 F.2d 984 (3d Cir.1984)...................................................................................................12

*In re Penson Worldwide*,
  587 B.R. 6 (Bankr. D. Del. 2018) .................................................................................. 12-13

*In re Resorts International, Inc.*,
  372 F.3d 154 (3d Cir. 2004)................................................................................7, 11, 12, 15

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) ................................................22

*Stoe v. Flaherty*,
    436 F.3d 209 (3d Cir. 2006), *as amended* (2006) ..........................11, 12

*In re Stone & Webster, Inc.*,
    373 B.R. 353 (Bankr. D. Del. Aug. 31, 2007), *aff'd,* 2008 WL 4890896 (D.
    Del. Nov. 12, 2008)................................................18

*In re Touch America Holdings, Inc.*,
    401 B.R. 107 (Bankr. D. Del. 2009) ....................................12, 14, 15, 16

*7547 Partners v. Beck*,
    682 A.2d 160 (Del.1996................................................22

*United States Trustee v. Gryphon at the Stone Mansion, Inc.*,
    166 F.3d 552 (3d Cir.1999)..........................................11-12

*United States v. State Street Bank & Trust Co.*,
    2002 WL 417013 (Bankr. D. Del. Mar. 4, 2002)......................17, 18, 19

*In re Welded Construction, L.P.*,
    618 B.R. 710 (Bankr. D. Del. 2020) ....................................16

**Statutes**

28 U.S.C. § 157................................................13

28 U.S.C. § 157(b)................................................12, 13

28 U.S.C. § 157(b)(1) ................................................11

28 U.S.C. § 157(b)(2)(H)................................................9,15

Bankruptcy Code Section 541 ................................................15

Bankruptcy Code Section 544 ................................................6, 9, 15, 16

Bankruptcy Code Section 548 ................................................6, 9, 15, 16

Bankruptcy Code Section 1109(b)................................................17, 18, 19

Bankruptcy Code Section 1142 ................................................7

**Other Authorities**

Rule 24, Federal Rules of Civil Procedure ................................................1, 16

Rule 24(a), Federal Rules of Civil Procedure .................................................................17

Rule 24(a)(2), Federal Rules of Civil Procedure ............................................................19

Rule 24(b), Federal Rules of Civil Procedure .........................................................19, 21

Pursuant to Rule 7024 of the Bankruptcy Rules and Rule 24 of the Federal Rules of Civil Procedure, Quorum Health Corporation ("Quorum"), by and through its attorneys, hereby moves to intervene in this adversary proceeding (the "Adversary Proceeding") and to file the Complaint annexed hereto as Exhibit A for the limited purpose of seeking a determination regarding Quorum's obligation arising from the request made by defendants Community Health Systems, Inc. ("CHS"), W. Larry Cash and Rachel Seifert  to (i) advance payment of the attorneys' fees and expenses incurred in this Adversary Proceeding by those three defendants, and (ii) indemnify "all Losses" incurred by those defendants in this Adversary Proceeding (the "Indemnification Request").  In support of this motion, Quorum respectfully states as follows:

## INTRODUCTION

1.      Quorum exists as a result of a separation agreement between Quorum and CHS (as described below in paragraph 7 hereof), but which agreement was prepared, determined, dictated by and evaluated solely by CHS.  That separation agreement was prepared without any independent input or arms-length negotiation by Quorum or Quorum's representatives.  Quorum's purported representatives were not independent and were all simultaneously officers and directors of CHS, taking direction from CHS, solely for the benefit of CHS.  The separation agreement included a broad and sweeping indemnification clause to protect CHS, Cash and Seifert (among others) from any liability arising from numerous acts, including any misconduct by them for the benefit of CHS and to the detriment of Quorum.  In other words, the separation agreement's indemnification provision created an unprecedented situation by which the victim of the misconduct of the indemnified parties must indemnify those parties for the losses that the victim incurred -- thereby leaving the perpetrators without any liability and doubling the losses that the victim incurred by having to pay for them a second time.

2.      Quorum's indemnification obligations under the separation agreement are an integral part of this Adversary Proceeding, as the plaintiff, the trustee for the QHS Litigation Trust, has asserted (among other claims) claims that the indemnification obligations are invalid as fraudulent transfers.  The Indemnification Request is integrated into this Adversary Proceeding, both because the claims asserted by the plaintiff address those obligations and also because the Indemnification Request arises specifically out of the conduct at issue in this Adversary Proceeding.

3.      Quorum brings this motion to intervene and to assert its claim for declaratory relief in accordance with this Court's retention of jurisdiction under all the pertinent documents regarding the plan of reorganization that this Court confirmed in the bankruptcy proceeding commenced by Quorum and its affiliates in 2020.  Specifically, Quorum seeks a determination that CHS, Cash and Seifert are not entitled to any advancement or indemnification with respect to the claims asserted against each of them in this Adversary Proceeding.  Any such liabilities arise from those three defendants' conduct solely in their capacity of representing and acting on behalf of CHS for CHS' exclusive benefit and not on behalf of or as representatives of Quorum.

4.      It is in the best interests of this Court, the reorganization process that occurred for Quorum, the operation of the QHS Litigation Trust and Quorum for this Court to determine the validity of the Indemnification Request in conjunction with adjudication of the claims asserted by the plaintiff against CHS, Cash and Seifert.

## **STATEMENT OF FACTS**

5.      CHS is a Delaware corporation and operator of general acute care hospitals and outpatient care centers across the United States.

2

6.      On July 27, 2015, CHS had Quorum incorporated as a wholly-owned subsidiary of CHS.  CHS appointed CHS officers to act as the officers and directors of Quorum in preparation for an eventual spin-off transaction, and those individuals continued to be CHS officers at all relevant times and did not independently act in Quorum's own interests.

7.      CHS and Quorum entered into a Separation and Distribution Agreement by and between CHS and Quorum dated as of April 29, 2016 (the "Separation Agreement").  The Separation Agreement was dictated by CHS and without any arm's-length negotiations with independent Quorum representatives.

8.      On April 29, 2016, pursuant to the Separation Agreement, Quorum became an independent, publicly-traded company as a result of a (i) spin-off of 38 hospitals, their affiliated facilities and an affiliated advisory and consulting services firm from CHS to Quorum and (ii) the distribution of 100 percent of the common stock of Quorum to CHS stockholders (the "Spin-Off").

9.      Section 4.02 of the Separation Agreement provided that Quorum had certain indemnification obligations.  That section states:

> Except as otherwise specifically set forth in any provision of this Agreement or of any Ancillary Agreement, QHC and each of the QHC Subsidiaries shall, to the fullest extent permitted by Law, indemnify, defend and hold harmless each of the CHS Indemnitees from and against all QHC Indemnity Obligations, including, to the fullest extent permitted by Law, the advancement and reimbursement of expenses, including attorneys' fees and costs, incurred with respect to a QHC Indemnity Obligation; provided, however, that the indemnity in this Section 4.02 for QHC Liabilities shall not extend to a past, present or future director, officer, employee or agent of QHC or a QHC Subsidiary to the extent such Person would not be eligible for indemnification under the terms of (i) CHS' certificate of incorporation or bylaws in connection with the matter for which indemnification is sought due to action or inaction by such Person in connection with such matter; or (ii) the directors' and officers' insurance policy of CHS would not cover such Person in connection with the matter for which indemnification is sought due to action or inaction by such Person in connection with such matter. Notwithstanding the foregoing, the indemnification provided for in this Section 4.02 shall exclude, and QHC shall have no responsibility for, Liability arising out of or relating to acts,

practices or omissions engaged in after the Distribution Date by CHS or any of its respective Subsidiaries or Affiliates.

10.     As defined in the Separation Agreement and as is pertinent to Section 4.02, the term "CHS Indemnitees" means "(i) CHS and each CHS Subsidiary; (ii) each of the respective past, present and future directors, officers, employees or agents of the entities described in (i) above, in each case in their respective capacities as such; and (iii) each of the heirs, executors, administrators, successors and assigns of any of the foregoing."

11.     The Separation Agreement defines "QHC Indemnity Obligations" as "all Losses incurred by a CHS Indemnitee to the extent such Losses relate to, arise out of or result from, directly or indirectly, any of the following items: (i) any QHC Liability; (ii) any failure of QHC or a QHC Subsidiary or any other Person to pay, perform or otherwise promptly discharge any QHC Liabilities in accordance with their terms, whether prior to, at or after the Effective Time; (iii) any Third Party Claim relating to the conduct of any business, operation or activity by QHC or a QHC Subsidiary from and after the Effective Time; (iv) any Proceeding in respect of the CHS CIA to the extent such Proceeding relates to, arises out of or results from any business operation or activity of QHC occurring from and after the Effective Time; and (v) any breach by QHC or a QHC Subsidiary of this Agreement or any Ancillary Agreement."

12.     The Separation Agreement defines the term "QHC Liabilities" as liabilities incurred by either CHS or QHC that are included or reflected on the QHC pro forma balance sheet.

13.     On April 7, 2020, Quorum and 134 of its affiliates (collectively, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware, seeking relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.     On June 30, 2020, the Court entered its Findings of Fact, Conclusion of Law, and Order Approving the Debtors' Disclosure Statement For, and Confirming, the Debtors' Joint

Prepackaged Chapter 11 Plan of Reorganization [Dkt. No. 566] (the "Confirmation Order").  The Confirmation Order confirmed the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization [Dkt. No. 566-1] (the "Plan").

15.    Article IV.B of the Plan requires the creation of a litigation trust (the "QHC Litigation Trust") and the execution of the Litigation Trust Agreement dated as of July 7, 2020 by and among Quorum and each of its debtor affiliates, KKR Credit Advisors (US) LLC as a beneficiary, Davidson Kempner Capital Management LP as a beneficiary, GoldenTree Asset Management LP as a beneficiary, York Capital Management Global Advisors, LLC as a beneficiary, Oak Hill Advisors, L.P. as a beneficiary, Argo Group US, Inc., as a beneficiary, Daniel H. Golden solely in his in his representative capacity as trustee of the QHC Litigation Trust and Harlan Cherniak, Suzanne Gibbons and Daniel Flores as members of the board of directors governing the QHC Litigation Trust (the "Litigation Trust Agreement").

16.    Pursuant to the Plan, the Debtors assigned certain claims and causes of action to the QHC Litigation Trust for its investigation and prosecution.  Plan Art. IV.C.3.

17.    Article XI of the Plan provides that this Court retains jurisdiction over matters arising out of or related to the Debtors' chapter 11 cases.  These provisions were specifically approved by the Confirmation Order.  *See* Confirmation Order ¶ 99.  Similarly, Section 2.1(i) of the Litigation Trust Agreement provides that this Court shall retain jurisdiction over matters arising from or related to the QHC Litigation Trust.

18.    On October 25, 2021, Daniel H. Golden, as the litigation trustee of the QHC Litigation Trust, commenced this Adversary Proceeding and filed his Complaint [Dkt. No. 1], asserting claims against a number of defendants, including CHS, Cash and Seifert (the defendants who have made the Indemnification Request).

19.    Cash was the Chief Financial Officer of CHS.  On July 27, 2015, Cash also became Quorum's President and a member of Quorum's board of directors, while continuing to be CHS' Chief Financial Officer.  Cash resigned from his role as Quorum's President and as a Quorum director immediately after voting to approve the dividend to CHS resulting from the Spin-Off.

20.    Seifert was CHS' Executive Vice President, Secretary and General Counsel.  On July 27, 2015, while continuing to be CHS' General Counsel, Seifert became Quorum's Executive Vice President and a member of its board of directors.  Seifert resigned as a Quorum officer effective April 1, 2016 and as a Quorum director on April 29, 2016, immediately after voting to approve the dividend to CHS resulting from the Spin-Off.

21.    The Complaint alleges, among others, claims for fraudulent transfer under Sections 544 and 548 of the Bankruptcy Code and Tennessee law as to (i) the dividend and transaction fees paid by Quorum to CHS, (ii) releases granted by Quorum to CHS officers (including Cash and Seifert) and (iii) Quorum's indemnification obligations to CHS and CHS officers (including Cash and Seifert).

22.    On December 15, 2021, counsel for CHS, Cash, and Seifert sent the Indemnification Request to Quorum, purportedly pursuant to Section 4.02 of the Separation Agreement.  Counsel asserted that Quorum was required to make "advancement of the CHS Defendants fees and expenses incurred in defending" against the claims in this Adversary Proceeding and indemnification for "all Losses" incurred in connection with this Adversary Proceeding, including indemnification for the payments that CHS must make pursuant to its own indemnification obligations to defendants Credit Suisse Securities (USA) LLC ("Credit Suisse") and Adam Feinstein.  Counsel also asserted that Cash and Seifert are entitled to indemnification under Quorum's By-Laws and Certificate of Incorporation.

23.     Quorum disputes that the three defendants are entitled to any indemnification in connection with this Adversary Proceeding.  Accordingly, on February 4, 2022, Quorum advised counsel for CHS, Cash and Seifert that Quorum rejects the Indemnification Request in its entirety.

**ARGUMENT**

I.     **The Bankruptcy Court Has Jurisdiction**

   A.     **The Bankruptcy Court Retained Jurisdiction under the Plan and Related Documents**

24.     As courts have explained, "[r]etention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction." *In re LaRoche Industries, Inc.*, 312 B.R. 249, 257 (Bankr. D. Del. 2004) (quoting *In re Resorts International, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004)).

25.     Here, this Court has retained jurisdiction to adjudicate the controversy regarding the Indemnification Request.  As set forth in the Confirmation Order, the "provisions governing the retention of jurisdiction set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety.  The Bankruptcy Court shall retain exclusive jurisdiction over the matters arising in, and under, and related to, these chapter 11 cases, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code."  Confirmation Order ¶ 99.  The Debtors' Plan further provides that "the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan."  Plan, Art. XI.

26.     More specifically, the Plan clarifies that the Bankruptcy Court retains jurisdiction to "adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions" and "resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions, or any Entity's

7

obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions."  Plan, Art. XI.9 & XI.11.

27.     The term "Restructuring Transactions" includes "all actions set forth in the Restructuring Steps Memorandum" and "all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan. . ." Plan, Art. IV.B.

28.     The Restructuring Steps Memorandum calls for the formation of the QHC Litigation Trust.  The Litigation Trust Agreement similarly provides that the "Bankruptcy Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the Litigation Trust."  Litigation Trust Agreement § 2.1(i).

29.     The Plan also provides that certain claims and causes of action were assigned to the QHC Litigation Trust.  The Debtors contributed "the QHC Litigation Trust Assets to the QHC Litigation Trust, including by facilitating the assignment of the Contributed Claims" on the Plan's effective date.  Plan, Art. IV.C.3.  The QHC Litigation Trust Assets include "(a) any Cause of Action arising under or based on sections 542, 543, 544 through 548, 550, or 553 of the Bankruptcy Code, any state law fraudulent transfer, fraudulent conveyance, or voidable transaction law, or any statute limiting or prohibiting transfers to shareholders, (b) any Cause of Action relating to fraudulent transfer, fraudulent conveyance, voidable transaction, illegal dividend, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, alter ego, or unjust enrichment, and (c) the Contributed Claims" with certain limited exceptions.  Plan, Art. I.A.124.

30.     Under the Litigation Trust Agreement, the QHC Litigation Trust was established for the purpose of serving "as a mechanism for prosecuting all Litigation Trust Causes of Action

(upon which investigation and preparations for prosecution shall began no later than September 30, 2020, *provided* that the Litigation Trust shall not commence any such prosecution with respect to such investigation until on or after September 30, 2021), monetizing the Litigation Trust Assets, and distributing the Litigation Trust Proceeds in a timely fashion. . ." Litigation Trust Agreement, § 3.1(a). The QHC Litigation Trust is accordingly charged with generating funds for distributions under the Plan through its "litigation, arbitration, or settlement of any QHC Litigation Trust Assets." Plan, Art. IV.C.3.

31.    As discussed in detail below, the Court has jurisdiction over the Indemnification Request as a core proceeding. The dispute concerning the Indemnification Request entails a core proceeding because the dispute is intertwined with the Court's resolution of the fraudulent conveyance claims brought under the Bankruptcy Code by the QHC Litigation Trust. The Indemnification Request therefore falls under 28 U.S.C. § 157(b)(2)(H)'s specific grant of core jurisdiction over "proceedings to determine, avoid, or recover fraudulent conveyances."  In addition, the matter arises under the Bankruptcy Code, as the QHC Litigation Trust is pursuing claims under Sections 544 and 548 of the Bankruptcy Code. This Court should therefore give full effect to the retention of jurisdiction provisions contained in the Confirmation Order, the Plan, and the Litigation Trust Agreement.

32.    First, the Indemnification Request "arises out of" the Chapter 11 Cases and the Plan. The QHC Litigation Trust was created under the Plan. The Litigation Trust Agreement is a document dictating, in part, the means of the Plan's implementation. *See* Confirmation Order ¶ 24. The QHC Litigation Trust had to assess and pursue the claims that were assigned to it under the Plan. Thereafter, the QHC Litigation Trust commenced this Adversary Proceeding and challenged (among other things) the Reorganized Debtors' indemnification obligations throughout

the Complaint in connection with claims both assigned to it under the Plan and arising under the Bankruptcy Code.   In other words, the Adversary Proceeding is the end result of the Debtors' assignment of claims and the QHC Litigation Trust's carrying out its purpose, all as mandated by the Plan.  Notably, the defendants in the Adversary Proceeding have not challenged the Court's jurisdiction.

33.    The resolution of the Adversary Proceeding requires that the Indemnification Request must also be addressed because (i) the issue is already raised in the Complaint and (ii) this Court's resolution of the dispute regarding Indemnification Request will dictate what party is financially  responsible for any recovery if the QHC Litigation Trust prevails on its claims.

34.    Second, this Court's retention of jurisdiction over the Indemnification Request is further evidenced by Article XI.11 of the Plan.  The QHC Litigation Trust commenced this Adversary Proceeding to carry out its charge of prosecuting the claims assigned pursuant to the Plan and the Litigation Trust Agreement.  Among other claims, the QHC Litigation Trust has asserted that indemnification of CHS and the two individuals constitutes a fraudulent transfer under the Bankruptcy Code.  Consequently, the dispute regarding both the grant of indemnification and the dispute regarding the Indemnification Request together are a controversy, dispute or other matter that has arisen in connection with the QHC Litigation Trust's rights and obligations incurred in connection with the Plan and the Restructuring Transactions.  This Court consequently retains jurisdiction over the dispute regarding the Indemnification Request.

35.    Therefore, the dispute regarding the Indemnification Request should be determined by this Court.  This dispute is intertwined with the QHC Litigation Trust's stated purpose under the Litigation Trust Agreement: to "serve as a mechanism for prosecuting all Litigation Trust

Causes of Action" as a result of its connection to certain counts included in the Complaint. Litigation Trust Agreement, § 3.1(a).

### B.        The Bankruptcy Court Has Core Jurisdiction Over the Dispute

36.        Notwithstanding the retention of jurisdiction provisions in the Confirmation Order, Plan, and Litigation Trust Agreement, "neither the bankruptcy court nor the parties can write their own jurisdictional ticket.  Subject matter jurisdiction 'cannot be conferred by consent' of the parties." *Resorts*, 372 F.3d at 161 (citing *Coffin v. Malvern Federal Savings Bank*, 90 F.3d 851, 854 (3d Cir.1996)).. Moreover, a  court cannot create jurisdiction by simply stating that jurisdiction exists in a confirmation or other order. *see id.* at 161.  This Court is not relying on such an *ipse dixit* to assert jurisdiction.

37.        28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  Section 157(b)(2) enumerates certain, but not all, "core" proceedings, including "proceedings to determine, avoid, or recover fraudulent conveyances."  As the courts have explained, "[b]ankruptcy court jurisdiction potentially extends to four types of title 11 matters: '(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.'" *In re Combustion Engineering, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004), *as amended* (2005) (quoting *Resorts*, 372 F.3d at 162).

38.        A case "under" title 11 "refers merely to the bankruptcy petition itself."  *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006), *as amended* (2006) (quoting *Combustion Engineering*, 391 F.3d at 225-26 n. 38).  A proceeding "arises under" title 11 "if it invokes a substantive right provided by title 11." *Id.* at 216 (citing *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d

11

Cir. 1996)).  "Proceedings 'arise in' a bankruptcy case, 'if they have no existence outside of the bankruptcy.'"  *Stoe*, 436 F.3d 209 at 216 (quoting *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999)).  Lastly, "a proceeding is 'related to' a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"  *Id.* at 216 (citing *In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

39.     "Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings."  *Combustion Engineering*, 391 F.3d at 225 (citing *Resorts*, 372 F.3d at 162).  Post-confirmation "bankruptcy jurisdiction over non-core proceedings narrows; it exists only if there is 'a close nexus to the bankruptcy plan or proceeding.'  In contrast, in core proceedings the close nexus test does not apply; bankruptcy jurisdiction remains the same as it was pre-confirmation."  *In re Penson Worldwide*, 587 B.R. 6, 12 (Bankr. D. Del. 2018) (quoting *Resorts*, 372 F.3d at 167); *accord In re Touch America Holdings, Inc.*, 401 B.R. 107, 118 (Bankr. D. Del. 2009) ("Because I have determined that the issues before me are core bankruptcy issues, I am not required to address the 'close nexus' test.") (citing *Geruschat v. Ernst Young LLP (In re Seven Fields Development Corp.)*, 505 F.3d 237, 260 (3d Cir.2007).

40.     When a proceeding falls under the ambit of 28 U.S.C. § 157(b), the courts have readily determined that the matter is a core proceeding.  For example, in *Penson*, the debtors confirmed a plan of liquidation pursuant to which "their assets, claims, and causes of action" transferred to Penson Technologies, the successor in interest to two debtor entities.  *Penson*, 587 B.R. at 9. Following confirmation, Penson Technologies initiated an adversary proceeding against a trading and investment company that had sold its clearing and back office operations to a debtor

pursuant to an asset purchase agreement. *Id*. at 9. The adversary proceeding included (i) claims for breach of contract, breach of a guaranty and breach of the duty of good faith and fair dealing, (ii) an objection to the defendant's claim and (iii) a request for declaratory relief regarding Penson Technology's right to offset damages incurred due to the defendant's breach of contract against any amounts ultimately owed to the defendant. *Id*. at 10. The defendant sought to dismiss the adversary proceeding based on a lack of subject matter jurisdiction, arguing that "although [Penson Technology's] claims are statutorily core pursuant to 28 U.S.C. § 157, [Penson Technology's] claims are not constitutionally [core] as required by *Stern v. Marshall* and *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999). Accordingly, absent an independent basis for federal jurisdiction (which does not exist in this case), [the court lacked] subject matter jurisdiction over [Penson Technology's] counterclaims." *Id*. at 11.

41.    The *Penson* bankruptcy court concluded that "both parties miss[ed] the fundamental question posed by a subject matter jurisdiction challenge: whether bankruptcy jurisdiction exists over the adversary proceeding." *Id.* at 11. The court stated that, because "bankruptcy jurisdiction remains the same as it was pre-confirmation" for core proceedings after confirmation, "the path of least resistance to bankruptcy jurisdiction is a determination that a proceeding is core." *Id.* at 12. The court described this analysis as "straightforward" because each "count in the Complaint is an enumerated core proceeding, Counts IV and V (objection to claim and declaration on setoff) fall under § 157(b)(2)(B), allowance or disallowance of claims against the estate. Counts I–III fall under § 157(b)(2)(C), counterclaims by the estate against persons filing claims against the estate. Each claim thus 'arises in' the bankruptcy case or under title 11 and the subject matter jurisdiction analysis is complete. Bankruptcy jurisdiction exists over each and every claim in the Complaint." *Id.* at 12-13.

42.     When courts have found that proceedings were core matters without relying on the specified core proceedings under 28 U.S.C. § 157(b), they have done so even when resolution of the matter required an assessment of authority other than the Bankruptcy Code. For example, in *Touch America*, the debtor's predecessor was a holding company, Montana Power, that sold certain of its assets and planned to restructure its enterprises.  *Touch America*, 401 B.R. at 111. After the sale, but prior to the restructuring, a group of Montana Power's shareholders commenced an action against Montana Power in state court alleging claims arising from assets sales undertaken as part of the restructuring and earlier asset sales.  *Id*.  Montana Power completed the restructuring, which involved creating the debtor as a subsidiary, and the debtor and its subsidiaries and affiliates commenced their chapter 11 case less than a year and a half later.  *Id*.  The unsecured creditors committee commenced an adversary proceeding against certain former directors and officers and certain shareholders, which was pursued by the plan trustee following confirmation of a liquidating plan,  and sought, among other things, an injunction against the shareholders  to prevent them from pursuing their claim for loss of stock value.  *Id*. at 110-12.[1]

43.     The shareholders sought to dismiss the adversary proceeding on the ground that the bankruptcy court did not have jurisdiction to decide the injunction claim.  *Id*. at 115.   The shareholders argued that "(i) the central issues before the Court (*i.e.* whether certain claims asserted in the  [Montana Power] Litigation are direct or derivative claims, and whether the Debtor has any right to pursue certain claims as a successor-in-interest to Montana Power) are state law issues that should be decided by the Montana District Court in the  [Montana Power] Litigation; and (ii) there is no longer a bankruptcy estate that will be affected by the outcome of this proceeding, since the

---

[1] The plan trustee filed a motion, which was granted, to sever the injunction claim from the other claims so that the plan trustee could continue to pursue claims against the directors and officers and a new adversary proceeding was commenced.  *Touch America*, 401 B.R at 113.

Debtor's confirmed plan transferred all assets out of the bankruptcy estate to the Plan Trust." *Id*.

at 116.  The bankruptcy court rejected that contention, and held that the injunction application was

a core proceeding because the motions required a:

> determination of whether certain claims against the [former
> directors and officers] belong to Touch America.  At bottom,
> therefore, the issues raised by the Motion to Dismiss and the
> Summary Judgment Motion prompt the question of whether the
> claims against the [former directors and officers] are property of the
> Debtor's estate that were transferred to the Trustee upon Plan
> confirmation. Various courts have concluded that matters requiring
> a declaration of whether certain property comes within the definition
> of 'property of the estate' as set forth in Bankruptcy Code § 541 are
> core proceedings.

*Id*. at 117.

44.     The Montana Power shareholders also argued that confirmation terminated the

bankruptcy court's jurisdiction.  *Id*.  The bankruptcy court acknowledged that "post-confirmation

bankruptcy court related-to jurisdiction is 'normally appropriate' for matters in which 'there is a

close nexus to the bankruptcy plan or a proceeding, as when a matter affects the interpretation,

implementation, consummation, execution, or administration of a confirmed plan or incorporated

litigation trust agreement.'" *Id*. at 118 (quoting *Resorts*, 372 F.3d at 168-69).  The court held that,

because the court "determined that the issues before [it were] core bankruptcy issues, [it was] not

required to address the 'close nexus' test." *Id*.

45.     Here, this Court has jurisdiction over the dispute regarding the Indemnification

Request as a core proceeding.  First, the QHC Litigation Trust raise the indemnification obligations

in numerous counts in the Complaint, including Counts Seven, Eight, Twenty and Twenty-One.

Each of these counts asserts fraudulent transfer claims under Sections 544 and 548 of the

Bankruptcy Code and are therefore core proceedings under the scope of 28 U.S.C. § 157(b)(2)(H).

As the dispute regarding the Indemnification Request is intertwined with the fraudulent

conveyance claims, it is necessary to determine the validity of the Indemnification Request as part of a core proceeding.

46.     Furthermore, the various claims regarding indemnification is a proceeding that arises under title 11, which provides an alternative basis to establish the Indemnification Request as a core proceeding.  The Complaint invokes substantive rights under the Bankruptcy Code, including the recovery of fraudulent transfers under Sections 544 and 548.  The dispute regarding the Indemnification Request is intertwined with the prosecution of those substantive rights. Although the resolution of those claims may require this Court also to evaluate state law outside of the Bankruptcy Code, that fact does not preclude the matter from being a core proceeding under the reasoning of *Touch America*, as a core proceeding serves as the basis for Quorum's intervention.

47.     Lastly, it is in the public interest for this Court to resolve the dispute.  The Separation Agreement was drafted by the perpetrators of the alleged misconduct without any independent negotiation with or say by an independent QHC, even though the perpetrators purported to be acting on behalf of QHC.  The perpetrators should not be permitted to embed in an agreement, drafted without any say by the victim, the obligation to indemnify the perpetrators from any liability arising from the injury that they inflicted on the victim.  Allowing such actions would effectively allow perpetrators to draft their own releases and absolve themselves of all wrongdoing, since they would shift all potential liability from themselves to the victims.  Parties should not be permitted to circumvent the Bankruptcy Court's oversight and process through such legerdemain.

## II.    Quorum is Entitled to Intervene in this Action

48.     Rule 7024 of Bankruptcy Rules and Rule 24 of the Federal Rules of Civil Procedure governs intervention in an adversary proceeding.  7 *Collier on Bankruptcy* ¶ 1109.03[5]. "Rule

24 of the Federal Rules of Civil Procedure, made applicable by Rule 7024 of the Federal Rules of Bankruptcy Procedure, provides for (a) mandatory intervention and (b) permissive intervention." *In re Welded Construction, L.P.*, 618 B.R. 710, 716 (Bankr. D. Del. 2020).

49.     Under Rule 24(a), a court "must permit" a party to intervene when (1) the party is "given an unconditional right to intervene by a federal statute" or (2) the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *See United States v. State Street Bank & Trust Co.*, 2002 WL 417013, at *1 (Bankr. D. Del. Mar. 4, 2002).

50.     Here, as a debtor in the underlying chapter 11 proceedings, Quorum is entitled to intervene as a matter of right.  Quorum is provided the unconditional right to intervene under Section 1109(b) of the Bankruptcy Code.  That statute states: "A party in interest, including the debtor . . ., may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  "The words 'this chapter' in section 1109(b) denote Chapter 11 of the Bankruptcy Code, the Chapter which deals specifically with reorganizations." *Matter of Marin Motor Oil, Inc.*, 689 F.2d 445, 449-50 (3d Cir. 1982).

51.     The Third Circuit has held that the right to intervene conferred by Section 1109(b) is "broad," "absolute" and "mandatory" and that courts have no "discretion to deny intervention to the parties in interest such as creditors' committees  that are specifically listed in section 1109(b)." *Marin Motor Oil*, 689 F.2d at 449-57.  The court confirmed that this right to intervene also applies to adversary proceedings. *Id.*; *see also In re Money Center of America, Inc.*, 544 B.R. 107, 112 & n.4 (Bankr. D. Del. 2016).

52.     By its intervention in this Adversary Proceeding, Quorum seeks a declaratory judgment resolving the dispute regarding the Indemnification Request.  This Court has previously held that claims for declaratory relief may properly be heard as part of an adversary proceeding. *In re Forever 21, Inc.*, 623 B.R. 53, *61-62 (Bankr. D. Del. Oct. 7, 2020) (determining that claim for declaratory judgment relating to debtors' obligation to indemnify was properly brought in an adversary proceeding).

53.     Despite Section 1109(b)'s broad, mandatory language, "courts have held that parties that wish to intervene must show that they have constitutional standing."  *In re Stone & Webster, Inc.*, 373 B.R. 353, 361 (Bankr. D. Del. Aug. 31, 2007), *aff'd,* 2008 WL 4890896 (D. Del. Nov. 12, 2008).  Constitutional standing requires a showing of (1) "an injury, (2) a causal connection between the alleged injury and the conduct being challenged, and (3) redressability." *Id.*

54.     Quorum has constitutional standing.  Here, the three defendants delivered the Indemnification Request to Quorum seeking the immediate advancement of their attorneys' fees and expenses, as well as indemnification for all "Losses" incurred by the three defendants (including their damages and the payment of CHS' indemnification obligations to Credit Suisse and Feinstein).  As set forth above, this Court has the authority to adjudicate the dispute by entering declaratory relief holding that Quorum has no advancement or indemnification obligations to the three defendants.   Further, assuming *arguendo* that the Separation Agreement imposes indemnification obligations on Quorum, this Court could nevertheless set aside and avoid these obligations, as the QHS Litigation Trust has requested in its Complaint.

55.     This Court's decision in *State Street Bank* is instructive.  In that case, the chapter 11 debtor sought to intervene in an adversary action brought by the United States against State

Street Bank as the trustee for the debtor's junior subordinated secured PIK notes. *State St. Bank*, 2002 WL 417013, at *1. In opposing the debtor's motion to intervene, the United States argued that "the proper determination of whether § 1109(b) provides a debtor with the absolute right to intervene should turn on whether the debtor has a meaningful interest that could be affected by the outcome of the case" and that the debtor was "not entitled to intervene as a 'party in interest' because it has no meaningful financial or other interest to protect in the adversary proceeding." *Id.* at *3. This Court rejected that assertion, holding that:

> Although Debtor may not have a significant financial interest in the outcome of the adversary proceeding, it does have an interest and fiduciary duty, as debtor-in-possession, to ensure that the Estate's assets are distributed in accordance with the proper legal and equitable priorities of the parties in interest. It also has an interest in the adversary proceeding because the outcome of the proceeding has the potential to disrupt Debtor's current capital structure as established by the confirmation order entered in connection with Debtor's prior reorganization case.

*Id.* Here, Quorum has a significant and immediate financial interest in the outcome of this Adversary Proceeding because of the Indemnification Request.

56.    Because Quorum has constitutional standing and is "a party in interest specifically listed in § 1109(b), [Quorum] has the *absolute right* to intervene in the instant adversary proceeding." *See State St. Bank*, 2002 WL 417013, at *2 (internal quotations omitted) (emphasis added). Nonetheless, Quorum also has a mandatory intervention right under Rule 24(a)(2) and a permissive intervention right under Rule 24(b).

57.    Under Rule 24(a)(2), Quorum is entitled to intervene because it has "an interest relating to the property or transaction which is the subject of the action" and "is so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest, unless [Quorum's] interest is adequately represented by existing parties." There are four elements for an applicant to establish a right to intervene under Rule 24(a)(2):

> First, the applicant must establish that it's [sic] motion for leave to intervene was timely. Second, the entity seeking to intervene must show that it has a sufficient interest in the litigation. Third, the entity must demonstrate that there is a threat that the interest will be impaired or affected by the disposition of the proceeding in which it seeks to intervene. Finally, the prospective intervenor must also show that the existing parties to the litigation inadequately represent its interest.

*State Street Bank*, 2002 WL 417013, at *3 (citations omitted)

58.     Quorum's motion to intervene is timely.  Quorum received the Indemnification Request on December 15, 2021.  By this motion, Quorum has reasonably moved to intervene for a determination of the dispute.  Moreover, permitting Quorum to intervene at this early stage of the Adversary Proceeding will have minimal impact (if any) on the ultimate resolution of the Adversary Proceeding.  Defendants have just filed their motions to dismiss.  *See* Dkt. 43-49. Quorum has a strong interest in obtaining a prompt determination on the scope of its advancement and indemnification obligations (if any) before significant liabilities are incurred.  Quorum's need for certainty regarding its potential exposure is particularly acute given its status as a newly reorganized entity.

59.     There is no question that Quorum has a sufficient interest in, and that there is a significant threat to its interests due to, this Adversary Proceeding.  Indeed, the Indemnification Request asserts that Quorum is not only obligated to advance immediately payment of "fees and expenses incurred in defending this" Adversary Proceeding, but also that Quorum is obligated to indemnify "all Losses incurred" by the three defendants as well as Credit Suisse and Feinstein. These "Losses" potentially include all "damages, settlements, claims, fines, penalties, costs, and expenses (including reasonable attorneys' fees . . .)" incurred by five of the defendants in this Adversary Proceeding.  Quorum has concluded that the Indemnification Request is baseless, both based on the terms of the Separation Agreement and in equity.  Nevertheless, Quorum has an immediate and significant interest in this Adversary Proceeding and its outcome.

60.     Finally, none of the current parties to the Adversary Proceeding adequately represent Quorum's interests.  Defendants do not adequately represent Quorum's interests, by virtue of both the Indemnification Request as well as the allegations regarding defendants' misconduct directed at Quorum.  The QHC Litigation Trust also does not adequately represent Quorum because it is acting to benefit the holders of interests in the QHC Litigation Trust (formerly the Debtors' creditors), and not Quorum as a going concern.

61.     Although not necessary for purposes of deciding this motion, Quorum may also seek permissive intervention under Rule 24(b).  "A court may permit anyone to intervene when a timely motion is filed, and there is either (1) a federal statute that provides the intervener a conditional right or (2) 'the claim or defense that the intervener asserts shares a common question of law or fact with the main action.'"  *In re Money Center,* 544 B.R. 107at *116.  Both the claims in this Adversary Proceeding and the dispute regarding the Indemnification Request relate to the same set of facts:  defendants conduct in connection with the Spin-Off of Quorum from CHS.  This Adversary Proceeding seeks to determine whether defendants' conduct in orchestrating the Spin-Off was wrongful, and Quorum seeks to determine whether that conduct in connection with the Spin-Off obligates Quorum to grant the Indemnification Request.

## III.    The Bankruptcy Court Should Grant Quorum Declaratory Relief Regarding Its Advancement or Indemnification Obligations

62.     The Indemnification Request asserts that the three defendants are entitled to advancement and indemnification from Quorum because the Adversary Proceeding involves claims relating to "(1) Quorum's issuance of debt in connection with the spin-off; (2) Quorum's obligations under the Spin-Off Agreement; and (3) Quorum's obligations under the Transition Services Agreements."  According to the Indemnification Request, these claims are "QHC Liabilities" under the Separation Agreement.  That assertion is false.  The Complaint does not

allege any breach of contract under the Separation Agreement or Transitions Services Agreement or any claims arising out of the conduct of Quorum's business, the QHC Financing Transactions or Quorum's or its fiduciaries' conduct or obligations.

63.  To the contrary, the Complaint concerns the defendants' conduct prior to the Spin-Off in their capacities as CHS and CHS' officers—*i.e.*, allegations that relate to CHS' and its executives' alleged scheme to "cause QHC to raise $1.21 billion in debt, which [Quorum] would then pay to CHS as a tax-free dividend so that CHS could pay down over one billion dollars of its own debt that would be coming due over the next two years."  Complaint ¶ 37.  As part of that scheme, through the Separation Agreement drafted solely by CHS, CHS and the individual defendants allegedly caused Quorum to incur advancement and indemnification obligations "to insulate them from the ramifications of this fraudulent, reckless and exploitative conduct."  *Id.* ¶ 132; *see also id.* ¶¶ 82, 126(e)-(f), 136(d).

64.  Under Delaware law, the defendants' alleged fraudulent acts occurred before the Spin-Off and do not implicate any actions by Cash or Seifert in their capacities as Quorum fiduciaries -- all their actions were for CHS' benefit.  Indeed, the defendants' alleged fraudulent scheme was put into motion before Quorum was separated from CHS.  *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 406–07 (7th Cir. 2000) ("Where the plaintiff complains of the terms, rather than the actual consummation, of a transaction, the 'time of the challenged transaction' is when the terms of the transaction are established." (quoting *7547 Partners v. Beck*, 682 A.2d 160, 161–63 (Del.1996)); *accord Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *8-18 & n.42 (Del. Ch. Sept. 11, 2015) (denying advancement and indemnification to former director and officer of company because the underlying proceedings did not arise "by reason of the fact" that he served as a director and officer of the company).  As such, the claims at issue in the Adversary Proceeding

involve actions prior to the Spin-Off related to the conduct or operation of the CHS business, which claims relate to "CHS Liabilities" (and not "QHC Liabilities") under the Separation Agreement. Since defendants' alleged misconduct occurred prior to Quorum's separation from CHS, allegations related to that conduct cannot give rise to the advancement and indemnification obligations under either the Separation Agreement or Delaware law.

65.     CHS also seeks to foist CHS' own indemnification obligations to Credit Suisse and Feinstein on Quorum.  CHS asserts that "claims against Credit Suisse and Mr. Feinstein likewise relate to Quorum's issuance of debt in connection with the spin-off, CHS[]'s indemnification expenses in favor of Credit Suisse and Mr. Feinstein are among the 'Losses' for which CHS[] is in turn entitled to indemnification from Quorum."  CHS' position only amplifies the extent to which it seeks to ignore erroneously the terms of the Separation Agreement to advance CHS' financial interests.  CHS' indemnification obligations were incurred as part of fixing CHS' financial condition and structuring the Spin-Off, and they do not relate to any "QHC Liabilities".

66.     Nor do Quorum's Certificate of Incorporation or By-Laws create an obligation to pay advancement or indemnification to Cash or Seifert.  Each of those documents provide advancement and indemnification only to the extent that the conduct at issue arose "by reason of the fact that he or she was a director, officer or agent of the corporation" (*i.e.*, Quorum).  As set forth above, the allegations in the Complaint relate to those individuals' conduct on behalf of CHS to coerce Quorum (which had no independent say in the terms of other Separation Agreement) to assume various obligations prior to the separation of Quorum and had nothing to do with their capacity as a Quorum director. *See Charney*, 2015 WL 5313769, at *8-18 & n.42.

## CONCLUSION

67.    Accordingly, for the reasons set forth herein, Quorum respectfully requests the entry of an order permitting Quorum to intervene for the limited purpose described herein and the filing of the Complaint annexed hereto as Exhibit A.

Dated: February 7, 2022          /s/ David R. Hurst
       Wilmington, Delaware     David R. Hurst (I.D. No. 3743)
                                             **MCDERMOTT WILL & EMERY LLP**
                                           1007 North Orange Street, 10th Floor
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 485-3900
                                           Facsimile:  (302) 351-8711
                                           Email:    dhurst@mwe.com

                                           -and-

                                           Felicia Gerber Perlman (admitted *pro hac vice*)
                                           Bradley Thomas Giordano (admitted *pro hac vice*)
                                           **MCDERMOTT WILL & EMERY LLP**
                                           444 West Lake Street
                                           Chicago, Illinois 60606-0029
                                           Telephone: (312) 372-2000
                                           Facsimile:  (312) 984-7700
                                           Email:    fperlman@mwe.com
                                                           bgiordano@mwe.com

                                           *Attorneys for Quorum Health Corporation*