## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>QUORUM HEALTH CORPORATION, *et al.*,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 20-10766 (BLS) |
| DANIEL H. GOLDEN, AS LITIGATION TRUSTEE OF THE QHC LITIGATION TRUST, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>COMMUNITY HEALTH SYSTEMS, INC.; CHS/COMMUNITY HEALTH SYSTEMS, INC.; REVENUE CYCLE SERVICE CENTER, LLC; CHSPSC, LLC; PROFESSIONAL ACCOUNT SERVICES, INC.; PHYSICIAN PRACTICE SUPPORT, LLC; ELIGIBILITY SCREENING SERVICES, LLC; W. LARRY CASH; RACHEL SEIFERT; ADAM FEINSTEIN; AND CREDIT SUISSE SECURITIES (USA) LLC,<br><br>　　　　　　　　　　Defendants. | Adv. Pro. No. 21-51190 (BLS) |

**MEMORANDUM (I) IN SUPPORT OF DEFENDANTS COMMUNITY HEALTH SYSTEMS, INC., CHS/COMMUNITY HEALTH SYSTEMS, INC., REVENUE CYCLE SERVICE CENTER, LLC, CHSPSC, LLC, PROFESSIONAL ACCOUNT SERVICES, INC., PHYSICIAN PRACTICE SUPPORT, LLC, ELIGIBILITY SCREENING SERVICES, LLC, W. LARRY CASH, RACHEL SEIFERT, AND ADAM FEINSTEIN'S OPPOSITION TO QUORUM'S MOTION TO INTERVENE AND (II) IN SUPPORT OF DEFENDANTS COMMUNITY HEALTH SYSTEMS, INC., W. LARRY CASH, AND RACHEL SEIFERT'S MOTION TO STAY LITIGATION PENDING ARBITRATION**

YOUNG CONAWAY STARGATT
  & TAYLOR LLP

Michael S. Neiburg (DE No. 5275)
Christopher M. Lambe (DE No. 6846)
Rodney Square
1000 North King St.
Wilmington, DE 19801
Tel.: (302) 571-6600
Fax: (302) 571-1253
mneiburg@ycst.com

*Counsel for Defendants Community Health
Systems, Inc., CHS/Community Health
Systems, Inc., Revenue Cycle Service Center,
LLC, CHSPSC, LLC, Professional Account
Services, Inc., Physician Practice Support,
LLC, Eligibility Screening Services, LLC, W.
Larry Cash, Rachel Seifert, and Adam
Feinstein*

ROBBINS, RUSSELL, ENGLERT, ORSECK
  & UNTEREINER LLP

Gary A. Orseck (admitted *pro hac vice*)
Alison C. Barnes (admitted *pro hac vice*)
William J. Trunk (admitted *pro hac vice*)
Jack A. Herman (admitted *pro hac vice*)
Lauren C. Andrews (admitted *pro hac vice*)
Jason A. Shaffer (admitted *pro hac vice*)
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
gorseck@robbinsrussell.com

*Counsel for Defendants Community Health
Systems, Inc., CHS/Community Health Systems,
Inc., Revenue Cycle Service Center, LLC,
CHSPSC, LLC, Professional Account Services,
Inc., Physician Practice Support, LLC,
Eligibility Screening Services, LLC, W. Larry
Cash, and Rachel Seifert*

ROLNICK KRAMER SADIGHI LLP

Marc B. Kramer (admitted *pro hac vice*)
Matthew Peller (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 597-2800
Fax: (212) 597-2801
mkramer@rksllp.com

Sheila Sadighi (admitted *pro hac vice*)
300 Executive Drive
West Orange, New Jersey 07052

*Counsel for Defendant Adam Feinstein*

March 7, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iv

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

STATEMENT OF FACTS ............................................................................................ 3

     A.    The Spin-Off Agreement ......................................................................... 3

     B.    The Lawsuit and Indemnification Request ............................................ 4

     C.    Quorum's Motion to Intervene ............................................................... 6

ARGUMENT ................................................................................................................. 7

I.     THE COURT LACKS JURISDICTION OVER QUORUM'S PROPOSED ACTION .... 7

     A.    None Of The Four Types Of Bankruptcy Jurisdiction Covers Quorum's Declaratory Judgment Action ................................................................. 7

     B.    Quorum's Arguments Do Not Show Otherwise .................................. 10

II.    SHOULD THE COURT FIND JURISDICTION, IT MUST STAY QUORUM'S ACTION PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT ... 12

     A.    The Federal Arbitration Act Requires Courts To Stay Litigation Of Arbitrable Issues ................................................................................... 13

     B.    Quorum's Proposed Action Is Arbitrable, And Therefore Must Be Stayed In This Court ........................................................................... 14

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beard v. Braunstein*,
    914 F.2d 434 (3d Cir. 1990)................................................................................7, 8

*In re BWI Liquidating Corp.*,
    437 B.R. 160 (Bankr. D. Del. 2010) ....................................................................8, 11

*Chemours Co. v. DowDuPont, Inc.*,
    2020 WL 1527783 (Del. Ch. March 30, 2020).....................................................2, 12

*In re Craig's Stores of Texas, Inc.*,
    247 B.R. 652 (S.D. Tex. 2000), *aff'd*, 266 F.3d 388 (5th Cir. 2001).......................9

*Dish Network LLC v. Ray*,
    900 F.3d 1240 (10th Cir. 2018) ...........................................................................2, 14

*In re Exide Techs.*,
    544 F.3d 196 (3d Cir. 2008)................................................................................10

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)............................................................................................7, 14

*Lloyd v. HOVENSA, LLC*,
    369 F.3d 263 (3d Cir. 2004)................................................................................13

*In re Mintze*,
    434 F.3d 222 (3d Cir. 2006)................................................................................12, 13

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984)................................................................................10

*In re Penson Worldwide*,
    587 B.R. 6 (Bankr. D. Del. 2018) ........................................................................10, 11

*Pontone v. Milso Indus. Corp.*,
    100 A.3d 1023 (Del. Ch. 2014)............................................................................6

*Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*,
    590 F. Supp. 2d 663 (D. Del. 2008).....................................................................15

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004)................................................................................7, 8, 9, 10

# TABLE OF AUTHORITIES—Continued

**Page(s)**

*Richardson v. Coverall N. Am., Inc.*,
    811 Fed App'x 100 (3d Cir. 2020) ........................................................................14

*Stoe v. Flaherty*,
    436 F.3d 209 (3d Cir. 2006) ..............................................................................7, 8

*In re The Fairchild Corp.*,
    452 B.R. 525 (Bankr. D. Del. 2011) ...................................................................10

*In re Touch America Holdings, Inc.*,
    401 B.R. 107 (Bankr. D. Del. 2009) ...................................................................11

*Transamerica Occidental Life Ins. Co. v. DiGregorio*,
    811 F.2d 1249 (9th Cir. 1987) ............................................................................15

*In re VeraSun Energy Corp.*,
    No. 08-12606 (BLS), 2013 WL 3336870 (Bankr. D. Del. June 28, 2013) ...............9

*WMS Gaming, Inc. v. IGT*,
    31 F. Supp. 3d 974 (N.D. Ill. 2014) ...................................................................15

**Statutes, Rules & Codes**

9 U.S.C. § 2 ...................................................................................................................12

9 U.S.C. § 3 ................................................................................................................2, 13

28 U.S.C. § 157 ...........................................................................................................10

28 U.S.C. § 1334 ...........................................................................................................6

**Other Authorities**

10B Wright & Miller § 2758 (4th ed.) ..........................................................................15

Defendants Community Health Systems, Inc. ("CHSI"), CHS/Community Health Systems, Inc., Revenue Cycle Service Center, LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC, W. Larry Cash, Rachel Seifert, and Adam Feinstein[1] submit this memorandum in opposition to Quorum's motion to intervene and in support of the motion to stay litigation pending arbitration.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This adversary proceeding springs from the Chapter 11 reorganization of Quorum Health Corporation ("Quorum"). Quorum emerged from bankruptcy in June 2020, but the Litigation Trustee has now brought a smattering of claims against CHSI and others relating to the 2016 transaction by which Quorum was spun-off from CHSI. The Trustee seeks, among other things, to unwind a $1.2 billion distribution from Quorum to a CHSI affiliate as part of that spin-off.

As Quorum itself has previously advised the Court,[2] the Trustee's case is baseless. But even baseless litigation is expensive. Under the plain terms of the agreement governing the 2016 spin-off (the "Spin-Off Agreement"), Quorum must indemnify CHSI and others for their defense costs relating to the litigation. And so, shortly after the Trustee commenced suit, CHSI sent Quorum a letter identifying the relevant provisions of the Spin-Off Agreement and requesting indemnification and advancement of fees.

Quorum evidently disagrees with that request. But instead of negotiating or arbitrating the dispute, as required by the Spin-Off Agreement, Quorum fired off the instant motion to intervene. Quorum proposes to insinuate itself into the Trustee action and litigate in parallel the peripheral,

---

[1] Part II of this memorandum (in support of the motion for a stay pending arbitration) is joined only by Defendants CHSI, W. Larry Cash, and Rachel Seifert. CHSI, Cash, and Seifert are the only parties named as defendants in Quorum's proposed complaint.

[2] *See* Adv. Dkt. 44 (CHSI Defendants' Motion to Dismiss) at 8-9.

state-law question whether CHSI is entitled to indemnification from Quorum. That does not work. Quorum's motion should be denied for two independent reasons.

**1. The Court Lacks Jurisdiction Over Quorum's Proposed Action.**  Quorum seeks a declaratory judgment regarding its state-law contractual indemnification obligations. But Quorum emerged from bankruptcy nearly two years ago. There is no jurisdictional exemption for the ghost of a former debtor, and thus no basis for hearing Quorum's claims in this Court—regardless how "intertwined" Quorum professes them to be with the Trustee's litigation. Quorum's proposed action does not arise under title 11, arise in a case under title 11, or relate to a case under title 11. This Court thus lacks subject matter jurisdiction over Quorum's proposed action.

**2. Alternatively, Quorum's Action Should Be Stayed Pending Arbitration.**  In the alternative, the Federal Arbitration Act ("FAA") requires the Court, even if it otherwise has jurisdiction, to stay Quorum's declaratory judgment action pending arbitration. *See* 9 U.S.C. § 3. Quorum and CHSI broadly agreed to arbitrate any "dispute, controversy or claim arising out of or relating to" the Spin-Off Agreement. *See* Ex. 1[3] (Spin-Off Agreement), §§ 8.01 & 8.02(b); *see also Chemours Co. v. DowDuPont, Inc.*, 2020 WL 1527783, *10-*11 (Del. Ch. March 30, 2020) (enforcing arbitration clause in spin-off agreement). Quorum's dispute over its indemnification obligations under the Spin-Off Agreement plainly qualifies. And even if Quorum contests the validity of the arbitration clause, or the arbitrability of this dispute more specifically, the Spin-Off Agreement unmistakably reserves those questions for the arbitrator, not the Court. *See* Ex. 1, § 8.02(a) (incorporating arbitration rules); *Dish Network LLC v. Ray*, 900 F.3d 1240, 1245 (10th Cir.

---

[3] All exhibits referenced herein are attached to the Declaration of Gary A. Orseck, filed concurrently with this memorandum.

2018) (parties' incorporation of arbitration rules includes agreement to delegate authority to arbitrator).

## STATEMENT OF FACTS

### A.    The Spin-Off Agreement

In August 2015, CHSI announced its plan to spin off 38 hospitals, together with a hospital management company, into a newly formed company, Quorum Health Corp. ("Quorum"). Quorum was to become an independent, publicly traded company; CHSI retained no ownership stake after the spin-off.  A detailed account of the facts surrounding the spin-off is set forth in CHSI's motion to dismiss papers.  *See* Adv. Dkt. 44.

The spin-off was consummated through a Spin-Off Agreement that outlined the terms of the transaction and the obligations the companies owed—and continue to owe—each other.  *See* Adv. Dkt. 1 (Cplt.) ¶ 82; Ex. 1.  Among other things, CHSI and Quorum assumed reciprocal indemnification obligations: Quorum is required to "indemnify, defend and hold harmless" CHSI "to the fullest extent permitted by Law" for so-called "QHC Indemnity Obligations," whereas CHSI owes an obverse duty to Quorum for so-called "CHS Indemnity Obligations."  *See* Ex. 1, §§ 4.02 & 4.03.  The companies further promised each other "the advancement and reimbursement of expenses" relating to such indemnities, "including attorney's fees and costs."  *Id.*

The Spin-Off Agreement contains a dispute-resolution mechanism, as well.  *See id.* art. VIII.  Thus, a party seeking resolution of "any dispute, controversy or claim arising out of or relating to" the Spin-Off Agreement ("including regarding whether . . . any Liabilities are QHC Liabilities") is typically required to provide written notice to the other party; the companies then have 30 days to "attempt in good faith to negotiate a resolution" of the dispute.  *Id.* § 8.01.  Failing that, the dispute "shall," at the request of either party, "be submitted to be finally resolved by

binding arbitration" under the Commercial Arbitration Rules of the American Arbitration Association. *Id.* § 8.02.

Quorum has not previously questioned the force and effect of these provisions. Indeed, the parties have arbitrated several issues arising from the spin-off, including (at Quorum's instigation) the question whether CHSI had indemnification obligations to *Quorum* in connection with a prior dispute.

### B.    The Lawsuit and Indemnification Request

In October 2021, the Litigation Trustee—together with the Indenture Trustee, on behalf of individual noteholders—commenced the instant adversary proceeding. *See* Cplt. The litigation implicates numerous issues relating to the spin-off, including: (1) Quorum's issuance of debt in connection with the spin-off; (2) Quorum's obligations under the Spin-Off Agreement itself; and (3) Quorum's obligations under a series of ancillary agreements (so-called "Transition Services Agreements") under which certain CHSI affiliates continued to provide administrative services to Quorum-affiliated hospitals following the spin-off.

Soon after the Trustee commenced suit, CHSI requested indemnification and advancement from Quorum. *See* Ex. 2 (12/15/21 Orseck Letter). CHSI pointed out that the Spin-Off Agreement requires Quorum to indemnify CHSI, as well as Defendants Cash and Seifert, from and against all "QHC Indemnity Obligations." *Id.* at 1-2. Such "QHC Indemnity Obligations" includes "'all Losses[4] incurred by [certain CHSI persons] to the extent such Losses related to, arise out of or result from, directly or indirectly' any of the 'QHC Liabilities.'" *Id.* (quoting Spin-Off Agreement

---

[4] The Spin-Off Agreement defines "Losses" to mean "any and all losses, damages, settlements, claims, fines, penalties, costs and expenses (including reasonable attorneys' fees . . .) actually incurred by such person arising from such matter, but excluding consequential damages." *See* Ex. 1, at 8.

at 12).   And "QHC Liabilities" is defined, in turn, to embrace a host of liabilities squarely

implicated by the Trustee's suit.   For example:

- "'all Liabilities relating to, arising out of or resulting from the QHC Financing Transactions [*i.e.*, the loan and note offerings to which [the Trustee's] claims relate]'";

- "'all Liabilities expressly allocated to QHC or a QHC Subsidiary pursuant to [the Spin-Off Agreement] or any [Transition Services Agreement], and the obligations of QHC or a QHC Subsidiary under such agreements'"; and

- "'the Liabilities relating to, arising out of, or resulting from Proceedings [including lawsuits and any proceeding before a judicial body] to the extent such Proceedings relate to, arise out of, or result from' any of the other QHC Liabilities (including both of the preceding categories)."

Ex. 2 at 2 (quoting Spin-Off Agreement, at 12-13).[5]

Several weeks later, Quorum responded with a terse email.   Quorum's chief legal officer

reported that the "holidays have affected our ability to analyze and consider this request for

indemnification, but we should be able to respond during the week of January 31, 2022."   *See* Ex.

3 (1/5/22 Esposito Email).

Nearly a month later, Quorum sent another brief missive.   *See* Ex. 4 (2/4/22 Esposito

Letter).   Quorum maintained that there was no basis for indemnification or advancement under

either the Spin-Off Agreement or corporate governance documents.   *Id.*   Quorum did not dispute

that the companies continue to owe each other reciprocal indemnification obligations.   Rather, it

asserted that "because the actions of CHS and [Cash and Seifert] all occurred on behalf of, under

the control of and for the benefit of CHS, any liabilities constitute 'CHS Liabilities' under the

Separation and Distribution Agreement."   *Id.*   It did not elaborate or cite any contractual language

---

[5] The letter explained that these were merely illustrative, and not "the exclusive grounds on which the CHSI Parties are entitled to indemnification." Ex. 2 at 2 n.3.  For example, the letter noted, "the QHC Indemnity Obligations also include all Losses that 'relate to, arise out of or result from, directly or indirectly' the 'failure of QHC or a QHC Subsidiary or any other Person to pay, perform or otherwise promptly discharge any QHC Liabilities in accordance with their terms, whether prior to, at or after the Effective Time." *Id.*

supporting its view. Quorum also said, without explanation, that "[f]or that same reason, neither Mr. Cash nor Ms. Seifert is entitled to indemnification" under Quorum's corporate governance documents.[6] *Id.*

### C.    Quorum's Motion to Intervene

Quorum sent its response on a Friday. The following Monday—without any notice, much less effort to engage in the contractually required negotiations—Quorum filed this motion to intervene. *See* Adv. Dkt. 54 (Quorum Health Corporation's Motion To Intervene) ("Mot."). Quorum seeks a declaratory judgment that it owes no indemnification or advancement obligations under either the Spin-Off Agreement or corporate governance documents. It further contends that this Court has jurisdiction on the grounds this is a "civil proceeding arising under or relating to the bankruptcy petitions" Quorum filed in April 2020, despite the fact Quorum emerged from bankruptcy as a reorganized company in June 2020. *See* Adv. Dkt. 54-1 (Proposed Complaint), ¶ 5.

Quorum's motion mentions neither the arbitration clause nor the exclusive-forum provision in the Spin-Off Agreement.

---

[6] In fact, Quorum's Certificate of Incorporation grants indemnification rights to "[e]ach person who was or is made a party to . . . any action, suit or proceeding . . . by reason of the fact that he or she . . . is or was a director" of Quorum, so long as Delaware law does not otherwise bar indemnification (such as because the director acted in bad faith). *See* Ex. 3, at Article VII(A). A director is a party to a proceeding "by reason of the fact" he or she is a director if "there is a nexus or causal connection between any of the underlying proceedings and one's official corporate capacity . . . without regard to one's motivation for engaging in that conduct." *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050-51 (Del. Ch. 2014) (internal quotation marks omitted). Here, Cash and Seifert are being sued for transactions they allegedly authorized in their capacity as directors of Quorum. *See* Cplt. ¶¶ 160-69.

**ARGUMENT**

## I.    THE COURT LACKS JURISDICTION OVER QUORUM'S PROPOSED ACTION

A bankruptcy court's subject matter jurisdiction is limited.    Under 28 U.S.C. § 1334, bankruptcy jurisdiction extends to only four types of title 11 matters: "cases under title 11," "proceedings arising under title 11," "proceedings . . . arising in . . . cases under title 11," and "proceedings . . . related to cases under title 11."  28 U.S.C. § 1334(a)-(b).

Quorum's declaratory judgment action, which raises purely *state-law* claims relating to contract interpretation and corporate governance, fits none of these four categories.    Perhaps realizing this, Quorum instead presses a fifth jurisdictional hook: its "intertwined" theory of jurisdiction.    But there is no such thing.    The Court therefore lacks jurisdiction over Quorum's proposed action.[7]

### A.    None Of The Four Types Of Bankruptcy Jurisdiction Covers Quorum's Declaratory Judgment Action

*First*, Quorum's declaratory judgment action is not a *case* under title 11.    That category "refers merely to the bankruptcy petition itself."  *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (internal quotation marks omitted).    Quorum's proposed action is not the bankruptcy petition itself. Quorum does not argue otherwise.    *See generally* Mot. 11-16.

*Second*, it does not *arise under* title 11.    The Court's *arising under* jurisdiction applies only when a proceeding "'invokes a substantive right provided by title 11.'"  *Stoe*, 436 F.3d at 216

---

[7] Quorum's brief opens with several pages about the Confirmation Order's retention-of-jurisdiction provision.    *See* Mot. 7-11.    All of which is window dressing: "[R]etention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant" to whether a "dispute falls within the Bankruptcy Court's subject matter jurisdiction."  *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004).    Indeed, Quorum ultimately concedes that "'neither the bankruptcy court nor the parties can write their own jurisdictional ticket.'"  Mot. 11 (quoting *Resorts Int'l*, 372 F.3d at 161).

(quoting *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir. 1996)). Quorum's declaratory judgment action concerns a "garden variety contract claim" and a corporate-law claim under Delaware law—*i.e.*, whether there are indemnification and advancement rights available under the Spin-Off Agreement and Quorum's corporate governance documents. *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990). Those claims invoke no substantive rights under title 11 and thus do "not meet this test." *Id.*

*Third*, it does not *arise in* a case under title 11. The Court's *arising in* jurisdiction applies only to proceedings that "'have no existence outside of the bankruptcy.'" *Stoe*, 436 F.3d at 216 (quoting *U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999)). "The category of proceedings 'arising in' bankruptcy cases 'includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens.'" *Id.* (quoting 1 COLLIER ON BANKRUPTCY § 3.01(4)(c)(iv) at 3-31)). Quorum's proposed declaratory judgment case concerns none of those things. Nor is it "a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Beard*, 914 F.2d at 444.

*Last*, it does not *relate to* a case under title 11. In the post-confirmation context, a bankruptcy court's related-to jurisdiction is vanishingly narrow. For such jurisdiction to extend to a claim *after* confirmation, "the claim must affect an integral aspect of the bankruptcy process." *In re Resorts Int'l*, 372 F.3d at 167. That is, "there must be a close nexus to the bankruptcy plan or proceeding." *Id.*

Quorum does not contend that its declaratory judgment claims meet that demanding test. And for good reason. To start, resolving Quorum's declaratory judgment action "will not affect the estate," which disappeared upon Plan confirmation. *Id.* at 169. Nor does Quorum's declaratory judgment action offer the "potential to increase recovery for creditors." *In re BWI Liquidating*

*Corp.*, 437 B.R. 160, 166 (Bankr. D. Del. 2010) (minimal effect on creditor recoveries cuts against close nexus). CHSI's indemnification rights against Quorum have no bearing on the Trustee's or creditors' ultimate recoveries (if any). In addition, Quorum's declaratory judgment action "will not require a court to interpret or construe the Plan or the incorporated Litigation Trust Agreement"—Quorum's indemnification obligations arise under *state* law, and thus "will not be determined by reference to those documents." *In re Resorts Int'l*, at 372 F.3d at 170. Nor would it affect the Plan, let alone have a "substantial effect on the success of the Plan." *Id.* Roughly 20 months (and counting) have passed since confirmation—further severing any connection to the bankruptcy. *See id.* at 166-67 (action had no close nexus despite beginning just 38 days after confirmation). And although a sufficiently specific jurisdiction-retention provision may support finding a close nexus, nowhere in either the Confirmation Order or the Plan is Quorum's declaratory judgment action "explicitly included." *In re VeraSun Energy Corp.*, No. 08-12606 (BLS), 2013 WL 3336870, at *6 (Bankr. D. Del. June 28, 2013) (broad jurisdiction-retention language creates no "close nexus"). Last, the happenstance that Quorum is a reorganized debtor— "rather than a liquidating trust or non-debtor"—is "irrelevant" to the jurisdictional inquiry. *Id.* (citing *In re Insilco Techs., Inc.*, 330 B.R. 512, 525 (Bankr. D. Del. 2005)). Reorganized debtors do not receive lifetime passes to bankruptcy court. Rather, "[a] cause of action that arises after confirmation belongs to the re-organized entity alone, which is 'reborn' by the confirmation of the plan, and generally is beyond the bankruptcy court's jurisdiction—protective or otherwise." *In re Craig's Stores of Texas, Inc.*, 247 B.R. 652, 654 (S.D. Tex. 2000), *aff'd*, 266 F.3d 388 (5th Cir. 2001).

In sum, none of the four jurisdictional hooks is available to Quorum. Its proposed action is not a case under title 11. It is not a proceeding arising under title 11. It is not a proceeding

arising in a case under title 11.  And it is not a proceeding related to a case under title 11.  The Court thus lacks subject matter jurisdiction over it.

### B.    Quorum's Arguments Do Not Show Otherwise

Doubtless aware of this problem, Quorum concocts a new jurisdictional hook for proceedings "intertwined with a core proceeding."  Specifically, Quorum says that the Trustee's underlying adversary proceeding is a "core proceeding," and that because its declaratory judgment action is "intertwined" with that adversary proceeding then it, too, must be a "core proceeding" over which "this Court has jurisdiction."  Mot. 15.  That is wrong at every turn.

For starters, they are not "intertwined" at all:  Whether and to what extent CHSI has indemnification rights against a third party, like Quorum, has no bearing on the Trustee's or creditors' recoveries.  The Trustee will put on its case, collect a judgment (or not), and creditors will obtain the same recovery (or lack thereof) irrespective of whether CHSI has recourse against Quorum—or an insurance company, for that matter—for some portion of that recovery.

But even if Quorum's declaratory judgment action *were* "intertwined" with the adversary proceeding, it would not matter.  All the "intertwining" in the world cannot transmogrify a garden-variety state-law claim into one that invokes a "substantive right provided by title 11," or one that, "by its nature, could arise only in the context of a bankruptcy case."  *Supra* pp. 7-8.  Nor does it create a basis for "related to" jurisdiction:  The "close nexus" test inquires whether a proceeding affects an integral part of the *bankruptcy process*; merely being "intertwined" with a post-confirmation adversary proceeding does not cut it.  Put simply, that "common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate" might exist "does not justify federal jurisdiction."  *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *accord*

*In re Resorts Int'l, Inc.*, 372 F.3d at 170 ("Though the Plan and Trust Agreement might provide the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction.").[8]

None of the cases cited by Quorum is to the contrary. In *In re Penson Worldwide*, cited at Mot. 12-13, the court held simply that bankruptcy jurisdiction existed because "[e]ach count in the Complaint is an enumerated core proceeding" under 28 U.S.C. § 157(b), and "[e]ach claim thus 'arises in' the bankruptcy case or under title 11." 587 B.R. 6, 12-13 (Bankr. D. Del. 2018). That holding is useless to Quorum because Quorum's declaratory judgment action contains no claims enumerated as core proceedings under Section 157(b)—and Quorum does not argue otherwise. Rather, Quorum argues only that the *Trustee's* complaint asserts core claims under Section 157(b). *See* Mot. 15. But, as explained, that the *adversary* action might be a core proceeding does not make Quorum's *declaratory judgment* action a core proceeding.

*In re Touch America Holdings, Inc.*, 401 B.R. 107 (Bankr. D. Del. 2009) is equally unhelpful to Quorum. Quorum cites *Touch America* (Mot. 14-15) for the proposition that a proceeding involving state-law issues may still be a "core" proceeding. No one doubts that. The crucial difference here is that Quorum's declaratory judgment action involves state-law issues *only*. By contrast, the proceeding in *Touch America* required determining "whether certain property comes within the definition of 'property of the estate' as set forth in Bankruptcy Code § 541"—a quintessential "arising under" or "arising in" proceeding. *Touch America*, 401 B.R. at 117. Quorum also appears to cite *Touch America* (Mot. 15) for the proposition that when a

---

[8] Factors like judicial economy and efficiency are likewise "insufficient to create subject matter jurisdiction." *In re The Fairchild Corp.*, 452 B.R. 525, 532 (Bankr. D. Del. 2011); *see also In re Exide Techs.*, 544 F.3d 196, 219 n.16 (3d Cir. 2008) ("judicial economy and efficiency" are not "appropriate factors to consider with regard to the 'core' determination" either) (citing *Pacor*, 743 F.2d at 994). Nor would there be any "efficiency" here, anyway. Quorum's indemnification obligations raise pure questions of contractual interpretation untethered to the allegations in the Trustee's lawsuit.

proceeding is "core," a court need not determine whether it has "related to" jurisdiction under "the 'close nexus' test." *Touch America*, 401 B.R. at 118. But that tells us nothing about whether Quorum's declaratory judgment action *is* a "core" proceeding.

Last, Quorum asserts that "it is in the public interest for this Court to resolve the dispute." Mot. 16. Quorum argues (Mot. 16, ¶ 47) that allowing the "victim" to indemnify CHSI, the so-called "perpetrators," would permit the "perpetrators to draft their own releases and absolve themselves of all wrongdoing." But Quorum identifies no authority for a "public interest" exception to the bankruptcy court's otherwise limited jurisdiction. None exists. *See BWI Liquidating*, 437 B.R. at 168 (rejecting argument that federal policy concerns could override statutory limits on bankruptcy jurisdiction). What's more, Quorum's supposed "public interest" justification proceeds from the premise that unless the *bankruptcy court* resolves the dispute, no one will. Nonsense. The question whether to enforce the indemnification provision in the Spin-Off Agreement is a merits question that an arbitral panel can and will resolve.

Quorum fails to show that the declaratory judgment action arises under title 11 or arises in a case under title 11. Quorum does not even argue that the action relates to a case under title 11. As a result, the Court lacks subject matter jurisdiction over the declaratory judgment action.[9]

## II.    SHOULD THE COURT FIND JURISDICTION, IT MUST STAY QUORUM'S ACTION PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT[10]

Even if the Court had jurisdiction over Quorum's proposed action, it would have no discretion to exercise it. Quorum and CHSI agreed that any dispute relating to the Spin-Off

---

[9] Because the Court lacks jurisdiction over Quorum's proposed claim, Quorum's Rule 24 arguments (Mot. 16-21) are entirely beside the point.

[10] This section of the memorandum is joined only by Defendants CHSI, W. Larry Cash, and Rachel Seifert in support of their motion to stay litigation pending arbitration.

Agreement shall be resolved by binding arbitration.  *See* Ex. 1, §§ 8.01 & 8.02(a).[11]  That includes

not just the indemnification dispute itself, but the threshold question of arbitrability.  CHSI, Cash,

and Seifert therefore move for a mandatory stay, pursuant to Section 3 of the FAA, to permit that

promised arbitration to take place.

### A.    The Federal Arbitration Act Requires Courts To Stay Litigation Of Arbitrable Issues

The FAA "has established a strong policy in favor of arbitration" and "requires rigorous

enforcement of arbitration agreements."  *In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006).  It governs

written arbitration agreements in contracts involving interstate commerce and provides procedures

by which courts can (and sometimes must) enforce valid arbitration agreements.  *See* 9 U.S.C. § 2.

Among other things, Section 3 of the FAA gives a remedy to a party whose opponent runs

to the courthouse in the face of a mandatory arbitration provision.  *See* 9 U.S.C. § 3.  It provides

that if a suit is brought in court "upon any issue referable to arbitration under an agreement in

writing for such arbitration, the court . . ., upon being satisfied that the issue involved in such suit

or proceeding is referable to arbitration under such an agreement, shall on application of one of

the parties stay the trial of the action until such arbitration has been had in accordance with the

terms of the agreement . . . ."  *Id.*  In other words, if a party moves for a stay pursuant to Section 3

with respect to an issue that is facially arbitrable, the court must grant the stay.  Courts lack the

discretion to deny such a stay, even in bankruptcy.  *See Mintze*, 434 F.3d at 230-31 (bankruptcy

courts lack discretion to deny motion for stay in both core and non-core proceedings); *Lloyd v.*

---

[11]  Notably, the Delaware Chancery Court recently enforced an arbitration clause in a spin-off agreement even where the spin-ee alleged that its former parent had unilaterally "conceived, drafted, and executed" the provision.  *See Chemours*, 2020 WL 1527783, at *10-*11.

*HOVENSA, LLC*, 369 F.3d 263, 270 (3d Cir. 2004) ("§ 3 of the FAA, as we have noted, mandates that a stay be entered by the District Court").

**B.    Quorum's Proposed Action Is Arbitrable, And Therefore Must Be Stayed In This Court**

The instant indemnification dispute is subject to mandatory arbitration.  The arbitration requirement in the Spin-Off Agreement extends to "any dispute, controversy or claim arising out of or relating to this Agreement . . . including regarding whether . . . any Liabilities are QHC Liabilities or the validity, interpretation, breach or termination of this Agreement." Ex. 1, § 8.01. Any such dispute that cannot be resolved through good-faith negotiation[12] must "be submitted to be finally resolved by binding arbitration pursuant to the then current . . . Commercial Arbitration Rules of the American Arbitration Association" (the "AAA Commercial Arbitration Rules").  *Id.* § 8.02(a).

That arbitration requirement includes the threshold question of arbitrability.  Ordinarily, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination ***unless the parties clearly and unmistakably provide otherwise***." *Dish Network*, 900 F.3d at 1243-44 (internal quotation marks and alterations omitted) (emphasis added); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  And parties may "clearly and unmistakably" delegate such questions to the arbitrator by incorporating arbitration rules providing for such delegation.  *See Dish Network*, 900 F.3d at 1245.  That is precisely what Quorum and CHSI did when they incorporated the AAA Commercial Arbitration Rules into the Spin-Off Agreement.  *See* Ex. 1, § 8.02; AAA Commercial

---

[12] The arbitration provision provides that a "[d]ispute shall be submitted to arbitration" "if a Party reasonably concludes that the other Party is not willing to negotiate as contemplated by" the dispute resolution procedures.  *See* Ex. 1, § 8.01.  By responding to CHSI's letter request with a lawsuit, Quorum appears unwilling to negotiate.

Arbitration Rule 7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or *validity of the arbitration agreement or to the arbitrability of any claim or counterclaim*.") (emphasis added); *see also Richardson v. Coverall N. Am., Inc.*, 811 Fed App'x 100, 103 (3d Cir. 2020) (holding that "incorporation of the AAA Rules in [parties'] arbitration clause constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability").

The lone exception to the compulsory arbitration requirement is for disputes that "involve[] primarily non-monetary relief." Ex. 1, § 8.02(a).[13] But the instant dispute is *purely* monetary; the legal question is whether Quorum must advance fees (money) and indemnify CHSI and others (also money). That Quorum postured its proposed complaint as one for declaratory relief does not change that. *See, e.g.*, *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1251 (9th Cir. 1987) ("A declaratory judgment does not necessarily constitute a form of equitable relief. . . . A particular declaratory judgment draws its equitable or legal substance from the nature of the underlying controversy. Defendant's contractual claim to benefits, the source of [Plaintiff's] case, is clearly a legal one.") (internal quotation marks and citations omitted); *see also Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*, 590 F. Supp. 2d 663, 667 (D. Del. 2008) (declaratory judgment actions should not be used for "procedural fencing, forum shopping," or "circumvent[ing] the dispute resolution procedures provided for in" a valid contract) (internal quotation marks omitted); *see also* 10B Wright & Miller § 2758 (4th ed.) ("an action for a declaratory judgment may not be used to bypass arbitration provided for by a contract").

\*\*\*

---

[13] In that circumstance, the Spin-Off Agreement requires the parties to litigate in Tennessee state court. *See* Ex. 1, § 8.02(e).

In short, if the Court determines that it has jurisdiction over Quorum's declaratory judgment action, the Court must grant CHSI's accompanying motion for a stay pending arbitration under Section 3 of the FAA.[14]  It will then be for the arbitrator to decide the scope of the arbitration and whether CHSI is entitled to indemnification and advancement pursuant to the Spin-Off Agreement.

## CONCLUSION

For the foregoing reasons, the Court should deny Quorum's motion for want of jurisdiction or, in the alternative, grant the motion by CHSI, Cash, and Seifert for a stay pending arbitration.

---

[14] Quorum's claims should be stayed as against all three proposed Defendants (CHSI, Cash, and Seifert).  To the extent the Court concludes that Quorum's claims with respect to Cash and Seifert are not arbitrable, the Court should nevertheless stay those claims. Quorum's claims with respect to Cash and Seifert are inextricably tied to the claim against CHSI and involve the same operative facts; the outcome of the arbitration will have preclusive effect as against Quorum; and permitting litigation to go forward against Cash and Seifert while CHSI is in arbitration risks inconsistent rulings.  *See WMS Gaming, Inc. v. IGT*, 31 F. Supp. 3d 974, 977 (N.D. Ill. 2014) (describing factors that counsel in favor of staying both arbitrable and non-arbitrable issues).

Date: March 7, 2022

Respectfully submitted,

/s/ Michael S Neiburg

Michael S. Neiburg (DE No. 5275)
Christopher M. Lambe (DE No. 6846)
YOUNG CONAWAY STARGATT
  & TAYLOR LLP
Rodney Square
1000 North King St.
Wilmington, DE 19801
Tel.: (302) 571-6600
Fax: (302) 571-1253
mneiburg@ycst.com

*Counsel for Defendants Community Health
Systems, Inc., CHS/Community Health
Systems, Inc., Revenue Cycle Service Center,
LLC, CHSPSC, LLC, Professional Account
Services, Inc., Physician Practice Support,
LLC, Eligibility Screening Services, LLC, W.
Larry Cash, Rachel Seifert, and Adam
Feinstein*

Gary A. Orseck (admitted *pro hac vice*)
Alison C. Barnes (admitted *pro hac vice*)
William J. Trunk (admitted *pro hac vice*)
Jack A. Herman (admitted *pro hac vice*)
Lauren C. Andrews (admitted *pro hac vice*)
Jason A. Shaffer (admitted *pro hac vice*)
ROBBINS, RUSSELL, ENGLERT, ORSECK
  & UNTEREINER LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
gorseck@robbinsrussell.com

*Counsel for Defendants Community Health
Systems, Inc., CHS/Community Health Systems,
Inc., Revenue Cycle Service Center, LLC,
CHSPSC, LLC, Professional Account Services,
Inc., Physician Practice Support, LLC,
Eligibility Screening Services, LLC, W. Larry
Cash, and Rachel Seifert*


ROLNICK KRAMER SADIGHI LLP

Marc B. Kramer (admitted *pro hac vice*)
Matthew Peller (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 597-2800
Fax: (212) 597-2801
mkramer@rksllp.com

Sheila Sadighi (admitted *pro hac vice*)
300 Executive Drive
West Orange, New Jersey 07052

*Counsel for Defendant Adam Feinstein*