# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| QUORUM HEALTH CORPORATION, | Case No. 20-10766 (BLS) |
| Reorganized Debtor. | Jointly Administered |
|  |  |
| DANIEL H. GOLDEN, AS LITIGATION TRUSTEE OF THE QHC LITIGATION TRUST, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE |  |
| Plaintiffs, |  |
| v. | Adv. Proc. No. 21-51190 (BLS) |
| COMMUNITY HEALTH SYSTEMS, INC.; CHS/COMMUNITY HEALTH SYSTEMS, INC.; REVENUE CYCLE SERVICE CENTER, LLC; CHSPSC, LLC; PROFESSIONAL ACCOUNT SERVICES, INC.; PHYSICIAN PRACTICE SUPPORT, LLC; ELIGIBILITY SCREENING SERVICES, LLC; W. LARRY CASH; RACHEL SEIFERT; ADAM FEINSTEIN; AND CREDIT SUISSE SECURITIES (USA) LLC, | (Relates to A.D.I. 54, 59 and 60) |
| Defendants. |  |

**QUORUM HEALTH CORPORATION'S REPLY**
**IN SUPPORT OF MOTION TO INTERVENE**

| | |
|---|---|
| H. Peter Haveles, Jr. *(admitted pro hac vice)*<br>AKERMAN LLP<br>1251 Avenue of the Americas, 37th Floor<br>New York, New York 10020<br>Telephone: (212) 822-2280<br>Facsimile: (212) 259-8586<br>E-mail: peter.haveles@akerman.com<br><br>*Co-counsel for Quorum Health Corporation* | David M. Fournier (DE No. 2812)<br>Kenneth A. Listwak (DE No. 6300)<br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street, P.O. Box 1709<br>Wilmington, Delaware 19899-1709<br>\|Telephone: (302) 777-6500<br>Facsimile: (302) 421-8390<br>E-mail: david.fournier@troutman.com<br>         kenneth.listwak@troutman.com<br><br>*Co-counsel for Quorum Health Corporation* |

2

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Quorum's Declaratory Judgment Complaint is a Core Proceeding ................................ 1

    II.    The Court Also Has "Related To" Jurisdiction Over Quorum's Declaratory Judgment Complaint .................................................................................................. 7

    III.    Debtors Have an Unconditional Right to Intervene under 11 U.S.C. § 1109(b) ........... 12

    IV.    Intervention Also is Appropriate under Rule 24 .......................................................... 12

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beard v. Braunstein*,
 914 F.2d 434 (3d Cir. 1990) ............................................................................................ 4, 5, 6

*Belcufine v. Aloe*,
 112 F.3d 633 (3d Cir. 1997) .................................................................................................. 11

*Bond Street Assocs. v. Ames Dept. Stores, Inc.*,
 174 B.R. 28 (S.D.N.Y. 1994) ................................................................................................ 10

*In re AstroPower Liquidating Trust*,
 335 B.R. 309 (Bankr. D. Del. 2005) .................................................................................... 8, 9

*In re Caldor Corp.*,
 303 F.3d 161 (2d Cir. 2002) .................................................................................................. 12

*In re Craig's Stores of Texas, Inc.*,
 247 B.R. 652 (S.D. Tex. 2000), *aff'd*, 266 F.3d 388 (5th Cir. 2001) ........................................ 8

*In re LGI, Inc.*,
 322 B.R. 95 (Bankr. D.N.J. 2005) ........................................................................................... 9

*In re Marin Motor Oil, Inc.*,
 689 F.2d 445 (3d Cir. 1982) .................................................................................................. 12

*In re Resorts International, Inc.*,
 372 F.3d 154 (3d Cir. 2004) ........................................................................................... 7, 8, 9

*In re River Center Holdings, LLC*,
 288 B.R. 59 (Bankr. S.D.N.Y. 2003) ..................................................................................... 10

*In re Seven Fields Development Corp.*,
 505 F.3d 237 (3d Cir. 2007) .................................................................................................. 10

*In re U.S. Lines, Inc.*,
 197 F.3d 631 (2d Cir. 1999) .................................................................................................... 5

*In re Wolverine Radio Co.*,
 930 F.2d 1132 (6th Cir. 1991) ............................................................................................... 11

*In re WP Realty Acquisition III LLC*,
 626 B.R. 154 (Bankr. S.D.N.Y. 2021) .................................................................................... 5

*Liberty Mutual Insurance Co. v. Treesdale, Inc.*,
    419 F.3d 216 (3d Cir. 2005) ................................................................................. 13

*Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*,
    86 F.3d 482 (6th Cir. 1996) .................................................................................. 11

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*,
    241 B.R. 511 (Bankr. S.D.N.Y. 1999) ................................................................. 10

*Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995) ................................................................................... 13

*Owen Equipment & Erection Co. v. Kroger*,
    437 U.S. 365 (1978) ............................................................................................. 14

*Phar-Mor, Inc. v. Coopers & Lybrand*,
    22 F.3d 1228 (3d Cir. 1994) ................................................................................. 12

*Pinchanski v. Finn*,
    No. 10-00102(KG), 2010 WL 2541124 (Bankr. D. Del. June 10, 2010) ............ 5, 6

*Refinery Holding Co., LP v. TRMI Holdings, Inc. (In re El Paso Refinery, LP)*,
    302 F.3d 343 (5th Cir. 2002) .......................................................................... 10, 11

*Stoe v. Flaherty*,
    436 F.3d 209 (3d Cir. 2006) ....................................................................... 2, 3, 4, 6

*United States Postal Service v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ................................................................................. 14

**Statutes**

11 U.S.C. §1109(b) ....................................................................................... 2, 12, 13

28 U.S.C. § 157(b)(2) ............................................................................................ 2, 7

**Rules**

Rule 24, Federal Rules of Civil Procedure .......................................... 2, 12, 13, 14

Quorum Health Corporation ("Quorum") submits this reply memorandum in further support of its Motion to Intervene (the "Motion to Intervene") [Dkt. No. 54] in this adversary proceeding and to file the Complaint annexed as Exhibit A to the Motion to Intervene and in response to defendants' omnibus Memorandum of Law submitted both in opposition to the Motion to Intervene and in support of defendants' Motion to Stay ("Defendants' Memo"). [Dkt. No. 60]

## PRELIMINARY STATEMENT

1.      Quorum has filed its Motion to Intervene in order to have this Court adjudicate the dispute between Quorum and defendants regarding Quorum's indemnification obligations, if any, to defendants with respect to the claims that the plaintiff in this adversary proceeding, the Trustee for the QHC Litigation Trust, has asserted against defendants. Quorum seeks to intervene with respect to this dispute because the dispute is inextricably part of the dispute that the Trustee has brought to this Court for determination. Namely, the Trustee challenges the indemnification rights granted to defendants under the Separation Agreement on the ground that they are void fraudulent transfers under Section 544 of the Bankruptcy Code. Those same alleged indemnification rights are the subjct of the declaratory judgment sought by Quorum. In its Motion to Intervene, Quorum sets forth why this Court has jurisdiction to determine Quorum's claim for declaratory judgment.

2.      Defendants insist, without any legal basis, that this Court lacks jurisdiction to determine Quorum's claim. *See* Defendants Memo at 7-10. Yet, in accord with all the pertinent case law from the Third Circuit as well as other circuits, there can be no dispute that this Court has jurisdiction. Because of the intertwined nature of the Trustee's claims in Counts Seven and Eight of the Trustee's Complaint and the declaratory judgment claim set forth in Quorum's proposed complaint, this Court has jurisdiction on numerous grounds.

3.      Defendants do not look at the interrelated and inextricably linked nature of those claims, and instead dismiss Quorum's claim as a mere state law contract claim that should be

1

adjudicated outside of this Court. As set forth below, however, defendants do not properly analyze Quorum's claim. Because of its intertwined nature, Quorum's claim is not only a core claim, but is related to the bankruptcy case. Indeed, defendants do not object to this Court's jurisdiction to determine the Trustee's claims regarding the indemnification provisions, and they *a fortiori* cannot object to this Court's jurisdiction to determine Quorum's interrelated claim.

4. Further, Quorum has a right to intervene under 11 U.S.C. §1109(b), which grants Quorum the unconditional right to intervene as a party in interest. Likewise, Rule 24 of the Federal Rules of Civil Procedure entitles Quorum to intervene.

5. Accordingly, for the reasons set forth below, as well as in the Motion to Intervene, defendant's opposition to the motion to intervene should be rejected.

## ARGUMENT

### I. Quorum's Declaratory Judgment Complaint is a Core Proceeding

6. As addressed in Quorum's Motion to Intervene, the dispute concerning the Indemnification Request entails a core proceeding pursuant to 28 U.S.C. § 157(b)(2) because the dispute is intertwined with the Court's resolution of the fraudulent conveyance claims brought under the Bankruptcy Code by the QHC Litigation Trust. Defendants attempt to argue that Quorum's proposed declaratory action is a pure state law cause of action that has no bearing on the estate and accordingly does not "arise under" the Bankruptcy Code or "arise in" or "relate to" a case under the Bankruptcy Code. *See* Defendants' Memo at 7-12.

7. Defendants rely primarily on *Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006), in support of its argument that Quorum's action for declaratory relief is not a core proceeding. *See* Defendants' Memo at 7. That decision does not aid defendants' arguments. The Third Circuit in *Stoe* dealt with an unpaid severance action brought by a former employee of the debtor against its former directors and officers. The defendants in that action removed the action to the district court.

2

*Stoe*, 436 F.3d at 211-212. The district court ultimately denied the plaintiff's motion for remand and abstention, holding that the matter was "inextricably intertwined" with the bankruptcy case and that mandatory abstention was not appropriate under the circumstances. *Id.* In examining whether the district court erred when it did not consider mandatory abstention, the Third Circuit considered whether the claims at issue were "core" proceedings. *Id.* After evaluating the claims to determine whether they were arising under the Bankruptcy Code, arising in the bankruptcy case, or related to the bankruptcy, the Third Circuit concluded that the claims at issue in *Stoe* were merely related to the bankruptcy. *Id.* at 218. The court observed that cases that were either arising in or arising under are core proceedings. *Id.* at 217.

8. When *Stoe* is applied to Quorum's proposed intervention complaint, all three alternatives are satisfied. The resolution of whether defendants' indemnification claim is enforceable depends in part on resolution of the Trustee's claims that those same indemnification rights are void under Section 544 of the Bankruptcy Code, which specifically arise under the Bankruptcy Code. Defendants incorrectly argue that "[w]hether and to what extent CHSI has indemnification rights against a third party, like Quorum, has no bearing on the Trustee's or creditors' recoveries. The Trustee will put on its case, collect a judgment (or not), and creditors will obtain the same recovery (or lack thereof) irrespective of whether CHSI has recourse against Quorum—or an insurance company, for that matter—for some portion of that recovery." *See* Defendants' Memo at 10. Of course, that contention misstates the case: the Trustee does not merely seek to collect a monetary judgment – he seeks to avoid under Sections 544 and 548 of the Bankruptcy Code the very transactions set forth in the Separation Agreement on which defendants rely for the Indemnification Request. Moreover, because many creditors' claims (including Class 6 general unsecured claims) passed through the bankruptcy unimpaired under Quorum's chapter

11 plan, and remain the obligation of the reorganized Quorum, the defendants' efforts to create a dynamic in which defendants could lose on the Trustee's Bankruptcy Code claims, be found liable for massive fraudulent transfers and nonetheless be indemnified by the reorganized debtor for those very same fraudulent transfer liabilities, could certainly affect creditors' recoveries. Because the dispute regarding the enforceability of the Indemnification Request is intertwined with the rights granted by Quorum's Plan to the QHC Litigation Trust and the Trustee to pursue claims under Sections 544 and 548 of the Bankruptcy Code, Quorum's claims arise in a bankruptcy case. Likewise, because the dispute between Quorum and Defendants is inextricably entwined with Counts Seven and Eight of the Trustee's Complaint in this adversary proceeding, Quorum's proposed complaint is related to a case under the Bankruptcy Code.[1]

9.      The other decision on which defendants rely, *Beard v. Braunstein*, 914 F.2d 434 (3d Cir. 1990), is also inapposite. *See* Defendants' Memo at 8. In *Beard*, in a precursor to *Stern v. Marshall*, the Third Circuit addressed whether the claims asserted by the plaintiff had to be tried by a jury and whether that jury trial should be in the district court or the bankruptcy court. *Id.* at 438-43. In connection with the latter issue, the court considered whether the claims were core versus noncore. However, the *Beard* court specifically held that it was not "presented with and thus do[es] not decide whether a claim for the breach of a post-petition contract, or a claim only for the post-petition breach of a contract entered into pre-petition, are core matters." *Id.* at 445. Although Quorum's proposed declaratory complaint concerns a pre-petition contract, it deals with defendants' post-petition actions in seeking to enforce indemnification provisions to defend against alleged fraudulent transfers involving the very same indemnification provisions, and is

---

[1] *Stoe* is also inapplicable to this Motion because Quorum, the reorganized debtor in this case, is moving to intervene. This is not a proceeding involving only non-debtors, as was the case in *Stoe*.

4

intertwined with the Trustee's Bankruptcy Code avoidance claims. Consequently, *Beard* provides little guidance in evaluating whether the Court has subject matter jurisdiction here.

10. Defendants' general propositions of law are also wrong. The analysis is not as narrow as defendants argue. A core proceeding is not established solely by its impact on the estate, or by seeking relief pursuant to a Bankruptcy Code section. Core proceedings also exist with respect to state law causes of action. For example, courts, including the Second Circuit in *In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999), have held that disputes involving the interpretation of pre-petition contracts entered into by a debtor, brought by a reorganization trust post-confirmation, can be core even if they involve solely issues of state law. In *U.S. Lines*, the Second Circuit examined an adversary proceeding brought by a post-petition trust seeking declaratory judgment to establish the trust's rights under various insurance contracts. *Id.* Observing that "whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization", *id.* at 637, the court ultimately held "that the impact these contracts have on other core bankruptcy functions nevertheless render the proceedings core." *Id.* at 638.

11. As further clarified *In re WP Realty Acquisition III LLC*, 626 B.R. 154, 159 (Bankr. S.D.N.Y. 2021), which cites to *Lines*: "actions arising from pre-petition contracts can be deemed core if the parties' dispute impacts core bankruptcy functions such as the debtor's reorganization." This broader interpretation of what constitutes a core proceeding has also been adopted by this Court in *Pinchanski v. Finn*, No. 10-00102(KG), 2010 WL 2541124 (Bankr. D. Del. June 10, 2010), which cited approvingly to *Lines* and to the proposition that "bankruptcy courts must define the core/non-core distinction on a case by case basis by evaluating both the form and the substance of the particular proceeding." *Id.* at *3. In *Pichanski,* a trustee was substituted as the plaintiff in

a state court action originally commenced by an assignee of the debtor against the defendants, who allegedly received fraudulent transfers, breached their fiduciary duties and were insiders of the debtor. *Id*. at *1. Those same defendants then filed a second declaratory action in state court as part of a collateral attack on the first action, which the trustee sought to remove to the district court and then transfer to the bankruptcy court. *Id*. Even though the second state court action in *Pichanski* asserted purely state law causes of action, the bankruptcy court held that the removed action was a "core matter that directly affects a core bankruptcy function, namely, the core function of determining property of the estate resulting from a fraudulent transfer." *Id*. at *3.

12.	The core/non-core analysis under *Pinchanski,* and even under *Stoe* and *Beard,* support Quorum's analysis that its declaratory judgment action is a core proceeding. Unlike in *Stoe,* the relief sought by the Trustee and by Quorum are "inextricably tied" to each other. The Trustee's Complaint confronts, among other things, the Separation Agreement and the QHC Indemnity Obligations contained therein. The Trustee alleges that CHS, by exercising its complete control of Quorum, spun off Quorum, dumped all of its worst performing assets into Quorum, took debt in the name of Quorum totaling $1.28 billion, used those funds to issue a $1.21 billion dividend to CHS's shareholders and forced Quorum to indemnify CHS for the underlying transactions. Complaint at 1-6. The Trustee is specifically seeking to void QHC's Indemnity Obligations in Counts Seven and Eight his Complaint. *Id.* at 44-47.

13.	If the Trustee is successful in prosecuting its claims against CHS and others and is ultimately able to prove even a fraction of the $1.28 billion of the potential damages sought from the defendants, according to CHS's indemnification demand Quorum would be obligated to satisfy that obligation, potentially rendering Quorum insolvent a second time as a result of CHS' actions. Further, because the Trustee is also seeking declaratory relief related to the QHC Indemnity

Obligations, if Quorum is forced to litigate in another forum, there is a meaningful risk of inconsistent determinations in multiple jurisdictions. For example, an arbitrator could conclude that Quorum does have an obligation to indemnify CHS, while this Court could hold that indemnification for the QHC Indemnity Obligations was a fraudulent transfer, creating a legal morass for no other reason than to advance defendants' legal tactic. This scenario is the inequitable result that CHS is asking the Court to risk.

## II. The Court Also Has "Related To" Jurisdiction Over Quorum's Declaratory Judgment Complaint

14. The Court also has related to jurisdiction pursuant to 28 U.S.C. § 157(b)(2) to interpret the QHC Indemnity Obligations. The Plan specifically reserved this Court's jurisdiction to determine issues related to the Separation Agreement and the QHC Indemnity Obligations. Further, aside from the reservation of jurisdiction, both the Plan and Confirmation Order contain clauses dealing directly with the QHC Indemnity Obligations. Quorum's declaratory judgment action, aside from dealing with the terms of the indemnification, also deals with the effect of the Plan and Confirmation Orders on those obligations. Because the Plan and Confirmation Order implicate the QHC Indemnity Obligations, and specifically reserve jurisdiction to interpret those provisions, the Court still has related to jurisdiction.

15. Primarily relying on *In re Resorts International, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004), defendants contend that the Court's retention of jurisdiction is "irrelevant". *See* Defendants' Memo at 7 n. 7. This argument not only ignores the plethora of case law that rely on and analyze a bankruptcy court's retention of jurisdiction in a confirmed plan as part of the Third Circuit's "close nexus test," *see* the Motion at 12, but is also a misapplication of the Third Circuit's holding in *Resorts*. In *Resorts*, the Third Circuit dealt with an adversary proceeding filed by a post-confirmation trust against an accounting firm for the firm's alleged post-confirmation

7

malpractice in connection with services provided to the trust. As this Court held in *In re AstroPower Liquidating Trust*, 335 B.R. 309, 324 (Bankr. D. Del. 2005), "*Resorts* decided the narrow issue of 'related to' jurisdiction over a claim that arose post-confirmation."[2] It is noteworthy that the tortious conduct was directed at the post-confirmation trust, not the debtor, with respect to services specifically and exclusively provided to that non-debtor entity after confirmation and the effective date of the plan.

16. The facts before the Court in this case are more akin to the facts addressed by the court in *AstroPower*, in which the claims at issue were "both logically linked to the debtor's prepetition losses and entrusted to the plaintiff via the Plan for the benefit of creditors." *See id.* at 324 (citing to *In re LGI, Inc.*, 322 B.R. 95, 106 (Bankr. D.N.J. 2005)).

17. In *AstroPower*, a liquidating trust established under a confirmed plan brought an adversary proceeding to avoid as a constructive fraudulent transfer a prepetition transfer of stock owned by the debtor and to recover (based on breach of contract, breach of fiduciary duty and other state law claims) damages from parties that participated in or assisted in the transfer. The liquidating trustee was tasked with litigating claims similar to the claims that the Trustee is prosecuting in this proceeding. The court in *AstroPower* found jurisdiction over the liquidating trust's claims. Here, defendants have not objected to this Court's jurisdiction over the Trustee's fraudulent transfer claims, yet inconsistently challenge jurisdiction over the nearly identical claims by Quorum involving the same QHS Indemnity Obligations.

18. Defendants fail to demonstrate why the Court has jurisdiction over the claims asserted by the Trustee but no jurisdiction over Quorum's claim regarding the same QHC

---

[2] The other decision cited by defendants to support their argument, *In re Craig's Stores of Texas, Inc.*, 247 B.R. 652, 654 (S.D. Tex. 2000), *aff'd*, 266 F.3d 388 (5th Cir. 2001), also dealt with a cause of action that arose completely post-confirmation. *See* Defendants' Memo at 9.

8

Indemnity Obligations, other than through a blanket statement that such a determination "will not affect the estate." *See* Defendants' Memo at 8. As stated by the court in *AstroPower* when discussing the test for establishing post-confirmation jurisdiction, "[b]ecause the bankruptcy estate no longer exists post-confirmation (and thus cannot logically be affected), a claim must have 'a close nexus to the bankruptcy plan or proceeding' to support post-confirmation jurisdiction in the bankruptcy court." *Id.* at 323. Here, there is of course such a nexus, as the Trustee is prosecuting Bankruptcy Code claims that Quorum, as the debtor, assigned to the Trustee in the Plan.

19. Further, the Third Circuit addressed the issue in *Resorts* and held that: "litigation trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed. The question is how close a connection warrants post-confirmation bankruptcy jurisdiction. Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Resorts*, 372 F.3d at 167. Defendants neglect to cite to this portion of *Resorts*. Further, the court *In re LGI, Inc.*, 322 B.R. 95 (Bankr. D.N.J. 2005), made a lengthy analysis of *Resorts*, and held that, in the post-confirmation trust context, a cause of action that is intended to be a source of recovery for creditors can establish the "close nexus to the bankruptcy plan or proceeding" to establish subject matter jurisdiction. The *LGI c*ourt held that the underlying adversary proceeding related directly to the "implementation, consummation [and] execution" of the plan in that case and that therefore there was a close nexus, which holding is consistent with the Third Circuit's subsequent decision in *In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3d Cir. 2007).

20. Quorum's close nexus is established by the Plan itself and the Court's retention of jurisdiction over "all matters related to the Restructuring Transactions." The Trustee was vested with all the causes of action of Quorum regarding the Restructuring Transactions. The Plan was

structured around, and the recovery of the creditors is dependent on, the Trustee's prosecution of the Complaint's claims, including Counts Seven and Eight that directly challenge the QHC's indemnity obligations. Quorum's claims are inextricably tied to the relief sought by the Trustee. The Court's reservation of jurisdiction is sufficient on its face to permit Quorum's intervention.

21. Defendants' arguments also ignore the decisions holding that a party's indemnity claims against a debtor give rise to "related to" jurisdiction over litigation to which the debtor is not a party if there is a "reasonable" legal basis for the claim. *See, e.g., In re River Center Holdings, LLC*, 288 B.R. 59, 63-65 (Bankr. S.D.N.Y. 2003) (contractual duty of debtor to indemnify guarantor who was third party defendant); *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 516-17 (Bankr. S.D.N.Y. 1999) (corporate by-laws and Delaware law allowed third party defendants to recover legal fees and expenses from debtor); *Bond Street Assocs. v. Ames Dept. Stores, Inc.*, 174 B.R. 28 (S.D.N.Y. 1994) (finding jurisdiction even in the absence of an indemnification agreement when the third party defendant would "normally have a claim" for indemnification against the debtor).

22. Several Courts of Appeals have also held that there is jurisdiction over litigation regarding an indemnification or contribution claim that may have a conceivable effect on the bankruptcy case. In *Refinery Holding Co., LP v. TRMI Holdings, Inc. (In re El Paso Refinery, LP)*, 302 F.3d 343 (5th Cir. 2002), the court reviewed a "chain of indemnification provisions" that Texaco could have used to assert a claim against the debtor and determined that there was jurisdiction over a third party claim against Texaco, even though Texaco did not actually assert any claim against the debtor. *Id.* at 348-49. In *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997), the Third Circuit held that there was jurisdiction over employee suits filed against corporate officers for non-payment of wages based on the indemnification provision in the debtor's corporate by-

laws. The court rejected the argument that there was no jurisdiction because the indemnification claims were contingent or a collusive attempt to manufacture jurisdiction. *Id.* at 636-37.

23. In *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.),* 86 F.3d 482, 494 (6th Cir. 1996), the court held that claims filed against manufacturers and suppliers were related to the bankruptcy because the contribution and indemnification claims against the debtor arose under the doctrine of joint and several liability. The *Dow* court was concerned about the threat "posed by the thousands of potential indemnification claims" to the debtor's successful reorganization. *Id.* at 494. In *In re Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir. 1991), the court observed that, when the parties are "intertwined," it would "not require a finding of definite liability of the estate as a condition precedent to hold an action related to a bankruptcy proceeding." *Id.* (citation omitted).

24. The only difference between Quorum's declaratory relief action and the circumstances in the decisions discussed above is that, in Quorum's case, confirmation happened before the litigation was initiated. This distinction, however, does not deprive the Court of jurisdiction to determine Quorum's claim. The Court has subject matter jurisdiction over the Trustee's claims against defendants, and Quorum's claim is intertwined with the Trustee's claims and within the scope of matters as to which jurisdiction was retained by the Court in the Plan. There is no risk here of unending litigation before the Court by virtue of a broad and non-specific retention of jurisdiction provision in the Plan, which is the underlying concern in the Third Circuit's "close nexus" post-confirmation line of cases. Quite the opposite, the Court's retention of jurisdiction in the Plan is narrowly tailored.

### III. Debtors Have an Unconditional Right to Intervene under 11 U.S.C. § 1109(b)

25. Notwithstanding 11 U.S.C. §1109(b)'s clear language that debtors have a right to raise arguments, appear and be heard in any matter in a chapter 11 case, defendants fail to address why Section 1109(b) is not applicable on its face to Quorum's request to intervene.

26. The Third Circuit in *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir. 1982), and *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir. 1994), recognized that the word "case" in Section 1109(b) includes an adversary proceeding, and held that Section 1109(b) gives parties in interest an unconditional statutory right to intervene in adversary proceedings filed in a Chapter 11 bankruptcy case. *See also, e.g., In re Caldor Corp.*, 303 F.3d 161, 175 (2d Cir. 2002).

27. In reaching its holding, the Third Circuit in *Phar-Mor* reasoned that the parties objecting to intervention were "trying to use a jurisdictional distinction of 'under' and 'related to,' a distinction shaped by concerns over federalism and separation of powers, to create a limitation on a right to intervene which is defined by concerns over efficiency and fair play." *Phar-Mor*, 22 F.3d at 1240. Much like the parties objecting to the creditor's committee intervention in *Phar-Mor*, defendants attempt to inject a jurisdictional argument into an analysis that instead is focused on efficiency and fair play, as the Third Circuit directs. This Court's analysis can start and end with Section 1109, as Quorum is a debtor in this case with an unconditional right to intervene in this adversary proceeding, especially when this adversary proceeding directly implicates Quorum.

### IV. Intervention Also is Appropriate under Rule 24

28. Defendants fail to address why, pursuant to Rule 24 of the Federal Rules of Civil Procedure, Quorum may not intervene in this case. Defendants devote all of one sentence in a footnote to respond to Quorum's Rule 24 arguments, dismissing the need for discussion because supposedly this Court lacks jurisdiction. *See* Defendant's Memo at 12 n. 9.

29. In light of the Third Circuit's interpretation of Section 1109(b) as providing a debtor with an unqualified right to intervene in an adversary proceeding, a Rule 24 analysis is not required. Nevertheless, Rule 24 is another independent basis for this Court to permit Quorum to intervene.

30. Pursuant to Third Circuit precedent, Rule 24 requires "(1) a timely application for leave to intervene, (2) a sufficient interest in the underlying litigation, (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests." *Liberty Mutual Insurance Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005); *Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). Quorum meets the Third Circuit's four element test for mandatory intervention in this case: 1) Quorum's application is timely; 2) Quorum has an interest in the underlying litigation as the Trustee seeks to void as a fraudulent transfer the same QHS indemnity obligations as to which Quorum seeks a declaratory judgment; 3) Quorum's interest are affected by the disposition of the underlying action; and 4) neither CHS, the other Defendants, nor the Trustee can represent Quorum in this action. CHS does not contest any of this analysis in their opposition nor offer an alternative as to why this analysis is wrong.

31. Finally, defendants fail to cite any case law as to why, since the Court unquestionably has jurisdiction over the Trustee's claims, Rule 24(a) does not provide an independent basis for intervention by Quorum. Under Rule 24(a), an intervenor "of right" does not need the standing necessary to commence a suit so long as an actual case or controversy exists between the initial, ongoing litigants. *See United States Postal Service v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) (*citing, e.g., Trbovich v. United Mine Workers of America*, 404 U.S. 528, 536-

539 (1972)); *see also Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375 n.18 (1978) (holding that court possessed ancillary jurisdiction to entertain intervenor's claim despite the absence of subject matter jurisdiction). Thus, defendants' argument that, "[b]ecause the Court lacks jurisdiction over Quorum's proposed claim, Quorum's Rule 24 arguments (Mot. 16-21) are entirely beside the point", is "wrong at every turn."

## REQUEST FOR ORAL ARGUMENT

32. Pursuant to Del. Bankr. L.R. 7007-3, Quorum requests oral argument on its Motion to Intervene.

## CONCLUSION

33. For the foregoing reasons, Quorum's Motion to Intervene should be granted in its entirety.

Dated: April 18, 2022
Wilmington, Delaware

Respectfully submitted,

/s/ David M. Fournier
David M. Fournier (DE No. 2812)
Kenneth A. Listwak (DE No. 6300)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Hercules Plaza, Suite 5100
1313 N. Market Street, P.O. Box 1709
Wilmington, Delaware 19899-1709
|Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail: david.fournier@troutman.com
         kenneth.listwak@troutman.com

-and-

        H. Peter Haveles, Jr. *(admitted pro hac vice)*
        AKERMAN LLP
        1251 Avenue of the Americas, 37th Floor
        New York, New York 10020
        Telephone: (212) 822-2280
        Facsimile: (212) 259-8586
        E-mail: peter.haveles@akerman.com

        *Attorneys for Quorum Health Corporation*