## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>QUORUM HEALTH CORP.,<br><br>    Reorganized Debtor | Chapter 11<br>Case No. 20-10766 (BLS) |
| DANIEL H. GOLDEN, as Litigation Trustee of the QHC LITIGATION TRUST and WILMINGTON SAVINGS FUND SOCIETY, FSB, solely in its capacity as Indenture Trustee<br>          Plaintiffs,<br>      v.<br>COMMUNITY HEALTH SYSTEMS, INC.; CHS/COMMUNITY HEALTH SYSTEMS, INC.; REVENUE CYCLE SERVICE CENTER, LLC; CHSPSC, LLC; PROFESSIONAL ACCOUNT SERVICES, INC.; PHYSICIAN PRACTICE SUPPORT, LLC; ELIGIBILITY SCREENING SERVICES, LLC; W. LARRY CASH; RACHEL SEIFERT; ADAM FEINSTEIN; AND CREDIT SUISSE SECURITES (USA) LLC,<br>          Defendants. | Adv. Pro. No. 21-51190 (BLS)<br><br>Re: Adv. D.I. 47 |

## MEMORANDUM ORDER REGARDING
## CREDIT SUISSE SECURITIES (USA) LLC'S MOTION TO DISMISS

On October 25, 2021 Daniel H. Golden, as Litigation Trustee of the QHC

Litigation Trust (the "Trust") and Wilmington Savings Fund Society, FSB ("WSFS"

or the Indenture Trustee")[1] filed a Complaint against Community Health Systems, Inc. and related entities and officers of CHS (the "CHS Defendants")[2] and Credit Suisse Securities (USA), LLC ("Credit Suisse"). The CHS Defendants filed a motion to dismiss certain counts in the Complaint, and the Court ruled on that motion by Opinion dated March 16, 2023 (the "Opinion").[3]

The Trustee's Complaint asserts eight claims against Credit Suisse.[4]  Six of the claims seek to avoid certain transfers as constructively and intentionally fraudulent.  The two remaining two claims are for aiding and abetting an illegal dividend and unjust enrichment. Credit Suisse also filed a motion to dismiss[5] and this Memorandum Order addresses Credit Suisse's motion.[6]

**(a)**    **<u>Fraudulent Transfer Claims</u>**

(1)    <u>§ 546(e)</u>

The Complaint asserts claims against Credit Suisse for constructive (Counts 16, 18, 20) and intentional (Counts 17, 19, 21) fraudulent transfers.  In particular, Counts 16 and 17 allege that Quorum Health Corporation ("Quorum") paid Credit Suisse "between $20 and $30 million for services it rendered in connection with the

---

[1] WSFS filed the Complaint solely in its capacity as the Indenture Trustee under that certain indenture (the "Indenture"), dated as of April 22, 2016, for the unsecured 11.625% Senior Notes due April 2023 (the "Senior Notes").  The Trustee and WSFS are referred to herein as "Plaintiffs."

[2] The CHS Defendants include Community Health Systems, Inc. ("CHS"); CHS/Community Health Systems, Inc.("CHS-2"); Revenue Cycle Service Center, LLC; CHSPSC, LLC; Professional Account Services, Inc.; Physician Practice Support, LLC; Eligibility Screening Services, LLC; W. Larry Cash; Rachel Seifert; and Adam Feinstein.

[3] Adv. Docket Nos. 136, 137.  A summary of the factual allegations from the Complaint can be found in the Opinion.

[4] Plaintiff WSFS is not pursuing any claims against Credit Suisse.

[5] Adv. Docket No. 47 (the "Motion to Dismiss").

[6] The standard for considering a motion to dismiss set forth in the Opinion regarding the CHS Motion to Dismiss equally applies to the Credit Suisse Motion to Dismiss.

Spin-Off Debt" (the "Transaction Fee Transfers").[7]  Credit Suisse argues that the

Trustee is barred from avoiding the Transaction Fee Transfers under § 546(e)

because the transfers were (i) made to a financial participant (ii) "in connection

with" a securities contract.

The Trustee disputes whether the Transaction Fee Transfers were "in

connection with" a securities contract.[8]  He asserts that it cannot be determined - -

at this stage in the litigation and without further discovery - - whether the

Transaction Fee Transfers were made "in connection with" any securities contract

governing the Senior Note Debt.  Although Credit Suisse advocates for an expansive

reading of the phrase "in connection with,"[9] the Trustee argues that, under U.S.

Supreme Court precedent, the Court should interpret the phrase narrowly.[10]  The

Court, however, need not decide the scope of the phrase "in connection with" at this

point because the Court agrees with the Trustee that further discovery regarding

Credit Suisse's § 546(e) affirmative defense is needed at this point.[11]  The request to

dismiss the fraudulent transfer claims pursuant to § 546(e) is denied.

---

[7] Compl. ¶¶ 182 and 189.

[8] In his response, the Trustee does not appear to dispute whether Credit Suisse qualifies as a "financial participant" as defined in Bankruptcy Code § 101(22A).

[9] *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Securities, LLC)*, 773 F.3d 411, 422 (2d Cir. 2014) ("Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided."); *Lehman Bros. Holdings, Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings, Inc.)*, 469 B.R. 415, 442 (Bankr. S.D.N.Y. 2012).

[10] *Maracich v. Spears*, 570 U.S. 48, 59-60, 133 S.Ct. 2191, 186 L.Ed.2d 275 (2013) ("The phrase 'in connection with' is essentially 'indeterminat[e]' because connections, like relations, 'stop nowhere ... So the phrase 'in connection with' provides little guidance without a limiting principle consistent with the structure of the statute and its other provision." ... "An exception to a 'general statement of policy' is 'usually read … narrowly in order to preserve the primary operation of the provision.'") (citations omitted).

[11] Generally, the applicability of an affirmative defense cannot be determined on a motion to dismiss under Rule 12(b)(6), unless the affirmative defense is apparent on the face of the complaint.

(2)    <u>Triggering Creditor</u>

Credit Suisse argues that all fraudulent transfer claims under § 544(b) should be dismissed because the Trustee fails to plead the requisite element of a "triggering creditor."[12]  Credit Suisse contends that the only creditors identified in the Complaint - - the Senior Noteholders - - cannot assert valid fraudulent transfer claims under state law because they became creditors knowing that the proceeds of the note offering would be transferred to CHS.[13]

The Trustee offers two arguments in response.  The first is that the Senior Noteholders' purchase of the notes did not ratify the Spin-Off Dividend.[14]  As alleged in the Complaint, the Trustee claims that the Senior Noteholders were given inflated projections presenting an inaccurate picture of Quorum's financial

---

*Miller v. Black Diamond Capital Mgmt., L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*, 642 B.R. 371, 382 (Bankr. D. Del. 2022).  It must be noted that the Transaction Fee Transfers the Trustee seeks to avoid in Counts 16 and 17 against Credit Suisse are different from the Spin-Off Dividend transfer the Trustee sought to avoid in the claims against the CHS Defendants (which were dismissed under § 546(e) in the previous Opinion).  The Complaint and other documents offered by Credit Suisse are unclear about the source of the obligation for the Transaction Fee Transfers and further factual development is necessary to complete the "in connection with" analysis.  *Bayou Steel*, 642 B.R. at 390-91.

[12] Section 544(b) provides in relevant part that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law *by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title*."  11 U.S.C. § 544(b)(1) (emphasis added).

[13] "Creditors who authorized or sanctioned the transaction, or, indeed, participated in it themselves, can hardly claim to have been defrauded by it, or otherwise to be victims of it."  *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 383-84 (Bankr. S.D.N.Y. 2014), *abrogated by Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016) *vacated and superseded by In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66 (2d Cir. 2019) (citing, *Fisher v. MRM Grp., Inc. (In re Multi-Risk Mgmt., Inc.)*, 1998 WL 566044, *2 (Bankr. N.D. Ill. Sept. 8, 1998)).

[14] The Spin-Off Dividend is described in the Opinion's Factual Allegations but, in summary, the Plaintiffs allege in the Complaint that the CHS Defendants manipulated Quorum's financial projections (among other things) so that Quorum could incur over $1.2 billion in debt (the "Spin-Off Debt") and then transferred most of the $1.2 billion of Spin-Off Debt to CHS as a tax-free dividend, leaving Quorum balance sheet insolvent, unable to pay its debts as they came due, and inadequately capitalized.  (*See* Compl. ¶¶ 3, 5, 6, 54, 85).

4

health and, therefore, the Senior Noteholders did not have knowledge of all material facts connected with the Spin-Off Dividend as required to ratify it.[15]

Second, the Trustee asserts that Credit Suisse's argument is not appropriate grounds for dismissal under a Rule 12(b)(6) motion. "When analyzing the sufficiency of a complaint for purposes of Rule 12(b)(6), courts do not generally require a trustee to plead the existence of an unsecured creditor by name, although the trustee must ultimately prove such a creditor exists."[16]

The Court agrees with the Trustee that, based on the facts alleged in the Complaint, it is not appropriate to decide the triggering creditor issue on this Motion to Dismiss.

### (3)    Badges of Fraud (Intentional Fraud Claims)

Credit Suisse also asserts that the intentional fraudulent transfer claims must be dismissed because the Complaint fails to plead badges of fraud to establish that Credit Suisse acted with "actual intent to hinder, delay or defraud creditors."[17] Credit Suisse argues that the allegations about its participation in the "scheme" are conclusory.

The Trustee disputes this and argues that the Complaint plausibly alleges that Credit Suisse's conduct shows an intent to hinder, delay and defraud Quorum's creditors.[18] The Trustee also contends that allegations of CHS's intentional scheme to defraud Quorum's creditors, including the intent to pay an investment bank to

---

[15] *PAH Litig. Trust v. Water Street Healthcare Partners L.P. (In re Physiotherapy Holdings, Inc.)*, Adv. Pro. No. 15-51238 (KG), 2016 WL 3611831, 12  (Bankr. D. Del. June 20, 2016).

[16] *Pardo v. Avanti Corp. Health Sys., Inc. (In re APF Co.)*, 274 B.R. 634, 639 (Bankr. D. Del. 2001).

[17] 6 Del. Code § 1304(a)(1); Tenn. Code 66-3-305(a)(1); N.Y. Debt. & Cred. § 276 (2016).

[18] The Trustee cites to Compl. ¶¶ 7, 44, 51, 53-55.

facilitate that scheme, are relevant in considering whether the intentional fraud claims are plausible.

Fraudulent transfer claims must be pled with specificity pursuant to Fed.R.Civ.P. 9(b).[19]  The requirements of Rule 9(b), however, are relaxed and interpreted liberally when a trustee, or trust formed for the benefit of creditors, is asserting the fraudulent transfer claims.[20]

Credit Suisse's assertion that the Complaint fails to adequately plead the badges of fraud is a challenge to the Trustee's pleading of intent.  "Because direct evidence of fraudulent intent is often unavailable, courts usually rely on circumstantial evidence to infer fraudulent intent,"[21] often in the form of badges of fraud.  The badges of fraud that courts refer to often include, but are not limited to: (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction.[22]  "The presence or absence of any single badge of fraud is not conclusive."[23] "Although the presence of a single factor, i.e., badge of fraud, may cast

---

[19] *Off'l Comm. of Unsecured Creditors of Fedders North America v. Goldman Sachs Credit Partners, L.P. (In re Fedders North America, Inc.)*, 405 B.R. 527,  544 (Bankr. D. Del. 2009). Fed.R.Civ.P. 9(b), made applicable hereto by Fed.R.Bankr.P. 7009, provides: "In alleging fraud or mistake, a party must state the particularity   the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[20] *Fedders North America*, 405 B.R. at 544 (citation omitted).

[21] *Id.* at 545.

[22] *Id.* (citing *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 551 (D. Del. 2005)).

[23] *Id.* (citing *Dobin v. Hill (In re Hill)*, 342 B.R. 183, 198 (Bankr. D.N.J. 2006)).

suspicion on the transferor's intent, the confluence of several in one transaction generally provide conclusive evidence of an actual intent to defraud."[24]

Badges of fraud are not the only substitute for direct evidence of intent.[25]  A court may consider other factors in its analysis; for example, if the natural consequence of a debtor's action is to hinder, delay or defraud creditors, a court may infer an intentional fraudulent conveyance.[26]

The Complaint alleges a controlling relationship,[27] insolvency,[28]  lack of consideration,[29] and concealment of Quorum's true financial condition.[30]  Reviewing the Complaint's factual allegations and drawing all inferences in favor of the Trustee, the Court concludes that the Complaint pleads sufficient badges of fraud and other factual allegations to allow the intentional fraudulent transfer claims to survive a motion to dismiss.

(4)    <u>Reasonably Equivalent Value (Constructive Fraud Claims)</u>

Credit Suisse also argues that the constructive fraudulent transfer claims must be dismissed because the Complaint lacks factual allegations that Credit Suisse failed to provide "reasonably equivalent value" in exchange for the Transaction Fee Transfers.[31]  Credit Suisse asserts that the Complaint concedes

---

[24] *Id.*

[25] *Kirschner v. J.P. Morgan Chase Bank, N.A. (In re Millennium Lab Holdings II, LLC)*, 2019 WL 1005657, *3 (Feb. 28, 2019).

[26] *Id.* (citations and internal punctuation omitted).

[27] The crux of the allegations is that CHS, along with its chosen investment bank Credit Suisse, controlled Quorum's incurrence of the Spin-Off Debt and payment of the Spin-Off Dividend. Compl. ¶¶  44, 54-55, 60-63, 82-86.

[28] Compl. ¶¶ 54-66, 87-96.

[29] Compl. ¶¶ 44, 54-66.

[30] Compl. ¶¶ 54-66.

[31]  Credit Suisse claims that the "reasonably equivalent value" is a requirement of demonstrating a constructive fraudulent transfer under Delaware, Tennessee, and New York law.

that it provided investment banker services in connection with the Spin-Off Debt[32] and did not charge anything other than arm's-length, market rates for its services.

The Trustee responds that Credit Suisse's argument totally ignores the Complaint's numerous allegations that Credit Suisse performed investment banking services for CHS's benefit rather than Quorum's, and actually harmed Quorum by enabling CHS to burden Quorum with an unsustainable debt load for the sole purpose of funding the Spin-Off Dividend.[33]

Considering a similar argument in *Millennium Lab Holdings*, the court decided that a plaintiff could survive a motion to dismiss a constructive fraudulent transfer claim without meeting the heightened standard of Rule 9(b), but a plaintiff would have to do more than parrot statutory elements of applicable fraudulent transfer law.[34] "In other words, Plaintiff has to provide Defendants with fair notice of the charges against them."[35]

The *Millennium Lab Holdings* court then concluded that "taking all facts in the Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, Plaintiff has placed Defendants on notice of his theory of the case  - - [the debtor] did not receive value reasonably equivalent to the Fees it obligated itself to pay and

---

Del. Code Ann. tit. 6, § 1304(a)(2); Tenn. Code Ann. § 66-3-305(a)(2); and *In re Agape World, Inc.*, 467 B.R. 556, 571 (Bankr. E.D.N.Y. 2012) ("Courts have concluded that reasonably equivalent value under § 548(a)(1)(B) and fair consideration under the DCL [the New York law that applied to alleged fraudulent transfers in 2016] are fundamentally the same.").

[32] Credit Suisse points out that the Complaint alleges that (i) "CHS tapped Credit Suisse, its long time investment banker, to nominally serve as Quorum's investment banker in connection with the Spin-Off Debt" (Compl. ¶¶ 7, 44); Credit Suisse reviewed and provided advice regarding Quorum's projections (Compl. ¶¶ 51, 58); and Credit Suisse advised on the appropriate interest rate and discount to par (Compl. ¶ 65).

[33] The Trustee cites to allegations in Compl. ¶¶ 44, 51, 54, 55, 56, 62, 63, and 65.

[34] *Millennium Lab Holdings*, 2019 WL 1005657, *5 (citations omitted).

[35] *Id.* (citation omitted).

paid in the [transaction], because at the end of the day, the [transaction] provided no value to [the debtor]."[36]  The same analysis applies here.  The Complaint provides sufficient notice of the Trustee's theory that Quorum received no value in exchange for the Transaction Fee Transfers to Credit Suisse.  Whether this theory is true will not be decided on a Motion to Dismiss.

**(b)**    **Aiding and Abetting Unlawful Dividend Claim**

Count 22 of the Complaint asserts a claim against Credit Suisse for aiding and abetting an illegal dividend under Delaware General Corporate Law (the "DGCL").  Credit Suisse argues that the plain language of the statute limits liability to a corporation's directors and does not mention liability for aiding and abetting.

Section 170(a) of the DGCL provides that:

> The directors of every corporation, subject to any restrictions contained in its certificate of incorporation, may declare and pay dividends upon the shares of its capital stock either: (1) out of its surplus, as defined in and computed in accordance with §§ 154 and 244 of this title; or (2) in case there shall be no such surplus, out of its net profits for the fiscal year in which the dividend is declared and/or the preceding fiscal year.[37]

Section 173 provides that "[n]o corporation shall pay dividends except in accordance with this chapter."[38]  And section 174(a) of the DGCL provides in pertinent part:

> In case of any wilful or negligent violation of . . . § 173 of this title, *the directors under whose administration the same may happen shall be jointly and severally liable*, at any time within 6 years after paying such unlawful dividend or after such unlawful stock purchase or redemption, to the corporation, and to its creditors in the event of its

---

[36] *Id.* at *6.
[37] Del. Code Ann. tit. 8, § 170(a).
[38] Del. Code Ann. tit. 8,  § 173.

dissolution or insolvency, to the full amount of the dividend unlawfully paid, or to the full amount unlawfully paid for the purchase or redemption of the corporation's stock, with interest from the time such liability accrued.[39]

Credit Suisse argues that this language specifies that the *directors* will be held liable for unlawful dividends, and not underwriters, financial advisors, or others.  In *Magnesium Corp. of America*, the bankruptcy court for the Southern District of New York, applying Delaware law, reviewed the statutory provisions described above and concluded that "[t]he Delaware legislature clearly provided that the right to declare dividends and liability for unlawfully issued dividends attached to one group - - a corporation's directors."[40]  The *Magnesium* court then dismissed the claim for violation of DGCL § 170 against the non-director defendants.

The Trustee opposes dismissal of the claim for aiding and abetting an illegal dividend, arguing that the Delaware Supreme Court has explained that "[i]t is a fundamental principle of our jurisprudence that co-conspirators are jointly and severally liable for the acts of their confederates committed in furtherance of the conspiracy."[41]  This case, however, considered claims against coconspirators who aided and abetted a breach of fiduciary duty.

In *Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.*, the Delaware Court of Chancery determined that the Delaware Fraudulent Transfer Act did not create a cause of action for aiding and abetting, or conspiring to commit,

---

[39] Del. Code Ann. tit. 8, § 174(a) (emphasis added).
[40] *Buchwald v. The Renco Group, Inc. (In re Magnesium Corp. of America)*, 399 B.R. 722, 778 (Bankr. S.D.N.Y. 2009).
[41] *Laventhol, Krekstein, Horwath & Horwatch v. Tuckman*, 372 A.2d 168, 170 (Del. 1976).

a fraudulent transfer.[42]  The *Edgewater* court noted that the statute provides a

cause of action only against transferors or transferees.  The court wrote:

> Given that the text of the Delaware Fraudulent Transfer Act does not
> provide for an aiding and abetting claim, and that the Delaware Act's
> text is indistinct from the Uniform Fraudulent Transfer Act which has
> been held not to create an aiding and abetting claim, I perceive no
> legitimate basis for me to create such an implied *statutory* cause of
> action by judicial innovation when the General Assembly is free to do
> so itself, and when such an innovation would thereby render
> Delaware's Uniform Fraudulent Transfer Act *non-uniform*.[43]

The legislature likewise did not provide for an aiding and abetting claim in

the language of DGCL regarding liability for illegal dividends.  The Court agrees

with *Magnesium* that there is no cause of action for aiding and abetting an illegal

dividend and, therefore, Count 22 will be dismissed.

**(c)**    **Unjust Enrichment Claim**

Credit Suisse moves for dismissal of Count 23 (unjust enrichment) on three

grounds:  (1) the action is barred by Delaware's 3-year statute of limitations,[44] (2) a

party cannot recover under a theory of unjust enrichment if the parties' relationship

is governed by a contract,[45] and (3) the Complaint fails to allege that Credit Suisse

was "unjustly" enriched when it was paid fees for services performed.[46]

---

[42] *Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.*, 2010 WL 720150, *2 (Del
Ch. Mar. 3, 2010).

[43] *Id.* at *3.

[44] *Genrette v. Bank of New York Mellon Trust Co., N.A.*, 2019 WL 4917890, *4 (D. Del. Oct. 4,
2019).

[45] *Vichi v. Koninklijke Philips Electronics N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012).

[46] *See J.A. Moore Const. Co. v. Sussex Assoc. Ltd. P'ship*, 688 F. Supp. 982, 988 (D. Del. 1988)
("Given the existence of written contracts, plaintiff may not be compensated on the ground of unjust
enrichment if he received from the other what it was agreed …the other should give in return.")
(internal citation and punctuation omitted).

The Trustee argues that all three grounds for dismissal of the unjust enrichment claim fail.  First, the Trustee claims that the 3-year statute of limitations period is tolled when fraudulent activity prevented discovery of the injury.  The Trustee claims that the Complaint alleges that CHS and Credit Suisse participated in a fraud against Quorum's creditors and took steps to conceal the fraudulent nature of their projections and Quorum's financial condition.[47]

 "[A] statute of limitations may be tolled where a defendant fraudulently has concealed from a plaintiff facts necessary to put him on notice of a breach."[48] "Frequently, determining whether the statute of limitations has been tolled pursuant to the 'discovery rule' or due to fraudulent concealment requires a factual inquiry not amenable to resolution on a motion to dismiss."[49]  As decided in the March 16, 2023 Opinion, at this stage of the proceedings, the Court cannot determine whether the statute of limitations has been tolled and the Motion to Dismiss the unjust enrichment claim on this basis will be denied.

Second, the Trustee opposes Credit Suisse's second and third arguments by asserting that the validity of any contract between Quorum and Credit Suisse is in doubt.  The Trustee claims that that more information is needed to determine whether there is a contract for the fees between Credit Suisse and Quorum, and whether CHS negotiated and controlled the terms of the contract which, the Trustee contends, provided no value to Quorum.

---

[47] The Trustee cites to Compl. ¶¶ 7, 44, 54, 60, 65, 79 and 106.
[48] *Vichi v. Koninklijke Philips Electronics N.V.*, 85 A.3d 725, 789 (Del. Ch. 2014).
[49] *TL of Florida, Inc. v. Terex Corp.*, 54 F.Supp.3d 320, 329 (D. Del. 2014).

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[50] "It is a quasi-contract theory of recovery to remedy the absence of a formal contract."[51] "Thus, the existence of an express, enforceable contract that controls the parties' relationship will defeat an unjust enrichment claim."[52]

"A claim of unjust enrichment may survive a motion to dismiss, however, when the validity of the contract is in doubt or uncertain."[53] "Alternatively, Delaware law permits a claim for unjust enrichment where an express contract exists that does not govern exclusively the obligations or rights of the parties at issue."[54]

The Complaint alleges that the Transaction Fees paid to Credit Suisse were part of the orchestrated scheme by CHS, with the help of Credit Suisse, to obtain a Spin-Off Dividend. Considering the allegations in the Complaint and drawing all inferences in favor of the Trustee, the Court will not dismiss the unjust enrichment claim.

AND NOW, upon consideration Credit Suisse's Motion to Dismiss the Complaint for Failure to State a Claim (Docket No. 47), and all responsive

---

[50] *Tolliver v. Christina School Dist.*, 564 F.Supp.2d 312, 315 (D. Del. 2008) (quoting *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F.Supp.2d 423, 439 (D. Del. 1999) (internal punctuation omitted)).

[51] *Id.* (citing *In re Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*, No. 94C-03-189-WTQ, 1997 WL 529587, *17 (Del. Super. Ct. Jan. 29, 1997)).

[52] *Id.* (citing *Bakerman v. Sidney Frank Importing Co., Inc.*, No. Civ. A. 1844-N, 2006 WL 3927242, *18 (Del. Ch. Oct. 10, 2006)).

[53] *Id.*

[54] *Id.* (citing *In re Quintus Corp.*, 353 B.R. 77, 85 (Bankr. D. Del. 2006) *amended in part by In re Quintus Corp.*, 389 B.R. 390 (Bankr. D. Del. 2008)).

pleadings thereto, and after oral argument, and for the reasons set forth above, it is hereby ORDERED that:

1. The Motion to Dismiss is GRANTED as to Count 22 (Aiding and Abetting an Unlawful Dividend) and Count 22 is hereby DISMISSED; and

2. The Motion to Dismiss is DENIED as to the remaining Counts against Credit Suisse.

FOR THE COURT:

BRENDAN LINEHAN SHANNON
United States Bankruptcy Judge

Dated:  April 18 , 2023