# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>QUORUM HEALTH CORP.,<br>      Reorganized Debtor | Chapter 11<br><br>Case No. 20-10766 (BLS) |
| DANIEL H. GOLDEN, as Litigation Trustee of the QHC LITIGATION TRUST and WILMINGTON SAVINGS FUND SOCIETY, FSB, solely in its capacity as Indenture Trustee,<br><br>      Plaintiffs.<br>  v.<br><br>COMMUNITY HEALTH SYSTEMS, INC.; CHS/COMMUNITY HEALTH SYSTEMS, INC.; REVENUE CYCLE SERVICE CENTER, LLC; CHSPSC, LLC; PROFESSIONAL ACCOUNT SERVICES, INC.; PHYSICIAN PRACTICE SUPPORT, LLC; ELIGIBILITY SCREENING SERVICES, LLC; W. LARRY CASH; RACHEL SEIFERT; ADAM FEINSTEIN; AND CREDIT SUISSE SECURITIES (USA) LLC,<br><br>      Defendants. | Adv. Pro. No. 21-51190 (BLS)<br><br>Re: Adv. D.I. 54, 59, 60, 61, 62, 78, 79, 90 |

## **OPINION**

Before the Court are two motions. The first is a Motion to Intervene[1] in this Adversary Proceeding (the "Motion to Intervene") filed by Quorum Health Corporation ("Quorum" or "QHC"). Quorum filed its Motion with a proposed intervenor complaint seeking a declaratory judgment (the "Intervenor Complaint") on the issue of indemnification stemming from a

---

[1] Adv. Doc. No. 54.

separation and distribution agreement (the "Separation Agreement") between Quorum and Community Health Systems ("CHS"). By its motion and subsequent briefing, Quorum asserts that it has a statutory right to intervene in this Adversary Proceeding[2] as a party in interest under Section § 1109(b). Quorum further asserts through the Intervenor Complaint that defendants CHS, Rachel Seifert, and Larry Cash (collectively, the "CHS Parties")[3] are not entitled to advancement or indemnification for fees & costs associated with litigating the Adversary Proceeding. In opposition to the Motion to Intervene, the CHS Parties assert that intervention should be denied because this Court lacks subject matter jurisdiction over the dispute alleged in the Complaint.

The second matter is a Motion to Stay Litigation Pending Arbitration (the "Motion to Stay")[4] filed by the CHS Parties, which contends that the proposed Intervenor Complaint must be stayed pending arbitration as provided for in the Separation Agreement. Quorum opposes the Motion to Stay on two bases: (1) that a declaratory judgment action is not a claim primarily seeking monetary relief (which is an express condition for arbitration under the Separation Agreement); and (2) that the Bankruptcy Court's jurisdiction over the indemnification issue should override the Federal Arbitration Act's general mandate of enforcing arbitration

---

[2] The Plaintiff in the underlying action, Daniel H. Golden (the "Litigation Trustee") seeks similar relief in his complaint (the "AP Complaint"), specifically asserting that the indemnification provisions under the Separation Agreement are avoidable as fraudulent transfers under 11 U.S.C. §§ 544, 548 and applicable state law.

[3] Cash was the Chief Financial Officer of CHS who also became Quorum's President and a member of Quorum's board of directors on July 27, 2015. Seifert was CHS' Chief Executive Vice President, Secretary and General Counsel, who also became Quorum's Executive Vice president and a member of its board of directors on July 27, 2015. Immediately after voting for the alleged "dividend", both parties resigned their positions as officers and board-members of Quorum. In addition to CHS, Seifert, and Cash, the other defendants opposing this motion are Community Health Systems, Inc. ("CHSI"), Revenue Cycle Service Center, LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC and Adam Feinstein.

[4] Adv. Doc. No. 60, 61.

agreements. For the following reasons, this Court will deny the Motion to Intervene, and will grant the Motion to Stay.

## JURISDICTION

This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district, pursuant to 28 U.S.C. §§ 1408 and 1409.[5]

## BACKGROUND

### I.    The Spin-off

On April 29, 2016, roughly four years before the commencement of its Chapter 11 case, Quorum was formed through a spin-off from CHS. The spin-off resulted in the creation of an independent company consisting of 38 hospitals, affiliated outpatient service facilities, and an affiliated advisory and consulting services firm.[6] To facilitate the transaction, 100% of Quorum's common stock was distributed to CHS stockholders of record on April 22, 2016.[7] The distribution resulted in each CHS shareholder receiving one share of Quorum common stock for every four shares of CHS common stock.[8]

Following the spin-off, Quorum borrowed approximately $400 million through the issuance of unsecured senior notes (the "Senior Notes"), and entered into a credit agreement

---

[5] *See Welded Constr., L.P. v. Prime NDT Services, Inc.* (*In re Welded Constr., L.P.*), 605 B.R. 35, 37 (Bankr. D. Del. 2019) (affirming the Bankruptcy Court's ability to entertain all pretrial proceedings regardless of a core/noncore designation and *Stern* issues). CHS has devoted much of its opposition to the proposition that this Court lacks subject matter jurisdiction over the Motion to Intervene. Specifically, CHS argues that the declaratory judgment, sought by Quorum and pertaining to the indemnification agreement, is neither core, nor a non-core proceeding and is thus outside of this Court's purview. This Court disagrees. The Trustee seeks to avoid the indemnification provisions in the underlying Adversary Proceeding — a matter which the Court has already concluded it has subject matter jurisdiction to preside over. The Motion to Intervene and the related Intervenor Complaint requesting declaratory judgment seeks an answer to that very same issue.
[6] *See* Disclosure Statement, at 8.
[7] *See* QHC 10-K (Dec. 31, 2017), at 3.
[8] *See id.*

3

consisting of an $880 million senior secured loan facility (the "Term Loan Facility"), a $100 million senior secured revolving credit facility, and a $125 million senior secured asset-based revolving credit facility.[9] The proceeds of the Senior Notes and Term Loan Facility loans were used to make a $1.2 billion payment from Quorum to CHS, and to pay Quorum's related transaction and financing fees and expenses.[10]

## II.    The Separation Agreement

Quorum entered into certain agreements with CHS that governed or continue to govern matters related to the spin-off, including the Separation Agreement dated as of April 29, 2016. Of particular relevance to this dispute, Section 4.02 of the Separation Agreement provides that Quorum has certain indemnification obligations. That section states:

> Except as otherwise specifically set forth in any provision of this Agreement or of any Ancillary Agreement, QHC and each of the QHC Subsidiaries shall, to the fullest extent permitted by Law, indemnify, defend and hold harmless each of the CHS Indemnitees from and against all QHC Indemnity Obligations, including, to the fullest extent permitted by Law, the advancement and reimbursement of expenses, including attorneys' fees and costs, incurred with respect to a QHC Indemnity Obligation . . . .[11]

The scope of the indemnification obligations stemming from Section 4.02 is broad, covering a wide array of people and conduct. Section 4.02 defines "CHS Indemnitees" as:

> (i) CHS and each CHS Subsidiary; (ii) each of the respective past, present and future directors, officers, employees or agents of the entities described in (i) above, in each case in their respective capacities as such; and (iii) each of the heirs, executors, administrators, successors and assigns of any of the foregoing.[12]

It further defines "QHC Indemnity Obligations" as:

---

[9] *See* Disclosure Statement at 12–13.
[10] *See* Disclosure Statement at 8.
[11] Orseck Decl., Ex. 1 at 31.
[12] Orseck Decl., Ex. 1 at 11.

> [A]ll Losses incurred by a CHS Indemnitee to the extent such Losses relate to, arise out of or result from, directly or indirectly, any of the following items: (i) any CHS Liability; (ii) any failure of CHS or a CHS Subsidiary or any other Person to pay, perform or otherwise promptly discharge any CHS Liabilities in accordance with their terms, whether prior to, at or after the Effective Time; (iii) any Third Party Claim relating to the conduct of any business, operation or activity by CHS or a CHS Subsidiary from and after the Effective Time · ( other than the conduct of business, operations, or activities for the benefit of QHC pursuant to an Ancillary Agreement); and (iv) any breach by CHS or a CHS Subsidiary of this Agreement or any Ancillary Agreement.[13]

The term "QHC Liabilities" is defined as liabilities incurred by either CHS or QHC that are included or reflected on the QHC pro forma balance sheet. The Separation Agreement also contains provisions dealing with dispute resolution. Section 8.02(a) of the Separation Agreement provides generally for arbitration of disputes under the Separation Agreement:

> In the event that a Dispute has not been resolved within thirty (30) days after receipt by a party of an initial notice provided in Section 8.01, or within such longer period of good faith negotiation as the parties may agree to in writing, then, unless the Dispute involves primarily non-monetary relief (in which case such disputes shall be addressed in accordance with Section 8.02(e), such Dispute shall, upon the written request of a party, be submitted to be finally resolved by binding arbitration pursuant to the then current CPR arbitration commercial arbitration rules of the American Arbitration Association.[14]

There is a narrow exception to the arbitration requirement which is limited to matters where money damages are not sought. Section 8.02(e) of the Separation Agreement states:

> If the Dispute involves primarily non-monetary relief, then such Dispute shall not be submitted to arbitration, and either party may commence litigation in the Tennessee Court of Chancery located in Williamson County, Tennessee (or, if such court does not have subject matter jurisdiction thereof, any other federal or state court located in the Middle District of the State of Tennessee with subject matter jurisdiction).[15]

---

[13] Orseck Decl., Ex. 1 at 12.
[14] Orseck Decl., Ex. 1 at 53.
[15] Orseck Decl., Ex. 1 at 54.

### III. The Chapter 11 Cases & Reorganization

Following the spin-off, Quorum struggled with its capital structure and engaged in a series of divestitures, closing or selling 15 of the 38 hospitals.[16] The company continued to struggle due to factors such as a deterioration of its revenue cycle, declining performance, and liquidity constraints, all of which eventually culminated into Quorum's Chapter 11 filing.[17] On April 7, 2020 (the "Petition Date"), Quorum and 134 affiliates (collectively, the "Reorganized Debtors") filed petitions for relief under Chapter 11 in this Court.[18] The Office of the United States Trustee for the District of Delaware declined to appoint an official committee in the prepackaged Chapter 11 cases. The Reorganized Debtors filed their prepackaged plan of reorganization on the Petition Date,

and this Court entered the *Findings of Fact, Conclusions of Law, and Order Approving the Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization*[19] (the "Confirmation Order") on June 30, 2020, approving the Disclosure Statement and confirming the Plan. The record indicates that the Plan became effective on July 7, 2020 (the "Effective Date").[20]

### IV. The QHC Litigation Trust

Pursuant to the terms of the Plan, the Reorganized Debtor created the QHC Litigation Trust on the Effective Date through an agreement between Senior Note Holders and the

---

[16] *See* Disclosure Statement, at 16.
[17] *Id*. at 16–20.
[18] A complete list of the 135 jointly administered Chapter 11 debtors (the "Debtors") can be found in Doc. No. 58. A majority of the cases have now been closed.
[19] *See* Doc. No. 556.
[20] *See* Doc. No. 568.

Reorganized Debtor (the "QHC Litigation Trust Agreement").[21] Its purpose was twofold: to (i) prosecute and/or settle certain causes of action and (ii) distribute any proceeds obtained from any such litigation, arbitration or settlement (the "QHC Litigation Trust Interests") to the holders of Senior Notes Claims (the "QHC Litigation Trust Beneficiaries").[22] The QHC Litigation Trust was funded using certain trust assets (the "QHC Litigation Trust Causes of Action"):

(a) any Cause of Action arising under or based on sections 542, 543, 544 through 548, 550, or 553 of the Bankruptcy Code, any state law fraudulent transfer, fraudulent conveyance, or voidable transaction law, or any statute limiting or prohibiting transfers to shareholders;
(b) any Cause of Action relating to fraudulent transfer, fraudulent conveyance, voidable transaction, illegal dividend, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, alter ego, or unjust enrichment, and
(c) the Contributed Claims, which include any prepetition Cause of Action relating to the Senior Notes held by any of the holders of Senior Notes Claims that elected to contribute such claims to the QHC Litigation Trust arising under or based on state, federal, or common law, including but not limited to fraudulent transfer, fraudulent conveyance, voidable transaction law, any statute limiting or prohibiting transfers to shareholders, and alter ego.[23]

All claims arising under Chapter 5 of the Bankruptcy Code and analogous state law state law causes of action were assigned to the QHC Litigation Trust on the Effective Date, and the Plan empowered the QHC Litigation Trustee to prosecute or settle any of the QHC Litigation Trust Causes of Action.

V. **The QHC Litigation**

On October 25, 2021, the Litigation Trustee commenced this Adversary Proceeding and filed the AP Complaint[24] asserting claims against multiple defendants, including CHS, Cash and Seifert. The Complaint alleges, amongst other things, claims for fraudulent transfers under

---

[21] *See* Plan Art. IV.C.3; *see also* Doc. No. 483, Ex. J, at 2.
[22] *Id*.
[23] *See* Plan Arts. I.A.30, 124.
[24] Adv. Doc. No. 1.

Sections 544 and 548 of the Bankruptcy Code and applicable state law and seeks to avoid (i) the "dividend" and transaction fees paid by Quorum to CHS, (ii) releases granted by Quorum to CHS officers, and (iii) Quorum's indemnification obligations to CHS and CHS officers.

## VI.     The Indemnification Provision

As a result of the ongoing litigation, the CHS Movants sent an indemnification request to Quorum on December 15, 2021, pursuant to Section 4.02 of the Separation Agreement.[25] In doing so, they asserted that Quorum was required to make an "advancement of the CHS [Parties]' fees and expenses incurred in defending" against the claims in this Adversary Proceeding, as well as indemnification for all losses incurred in connection with the Adversary Proceeding, including payments that CHS must make pursuant to its own indemnification obligations to other Defendants.[26] The CHS Movants also asserted that Cash and Seifert are entitled to indemnification under Quorum's bylaws and Certificate of Incorporation.

Quorum disputes that the three defendants are entitled to any indemnification in connection with this Adversary Proceeding and rejected the indemnification request in its entirety. Thereafter, it filed the Motion to Intervene and Complaint with this Court. The CHS Movants have filed their Motion to Stay in response to Quorum's attempt to litigate its indemnification obligations in this Court rather than through arbitration.

---

[25] Adv. Doc. No. 54.
[26] *See* Adv. Doc. No. 79.

**DISCUSSION**

The Court will address the two motions individually, beginning with the Motion to Stay and continuing to the Motion to Intervene.

As noted above, Quorum's Intervenor Complaint seeks a declaratory judgment on the issue of its obligation to indemnify the CHS Parties. The parties disagree as to whether the action should be stayed pursuant to Section 3 of the Federal Arbitration Act. Central to this issue is the meaning and scope of the term "monetary relief" as it appears in the Separation Agreement. The Separation Agreement requires any and all disputes to be arbitrated except those concerning non-monetary relief. Quorum asserts that its Intervenor Complaint is ripe for adjudication by this Court, rather than through arbitration, because a declaratory judgment action does not seek monetary damages. By contrast, the CHS Parties urge this Court to consider the substance of the relief requested — namely a decision by this Court regarding whether Quorum is obliged to *pay* for legal fees associated with the underlying Adversary Proceeding.

The Court agrees with the interpretation set forth by the CHS Parties. The relief sought by Quorum through its Complaint is inherently monetary, irrespective of the procedural mechanisms utilized to achieve the result. By its very nature, indemnification involves the potential transfer of money from one party to another. A ruling by this Court on that specific issue in response to a pending request for payment directly affects whether and to what extent the parties are entitled to *payment*. Therefore, per the Separation Agreement, this Court finds that the matter falls squarely within the scope of the arbitration clause, and the parties have contracted to resolve the dispute in arbitration. The Motion to Stay will be granted.

Turning now to the issue of intervention, the Court will deny without prejudice Quorum's Motion to Intervene. Quorum moves to intervene for the express purpose of obtaining a declaratory judgment via the Intervenor Complaint that is not properly before this Court. Because the indemnification dispute set forth in the Intervenor Complaint must be decided in arbitration, the Court finds no reason to allow Quorum to intervene for the purpose of prosecuting its Intervenor Complaint.

However, the Court observes that Quorum has identified a cognizable interest in the disposition of certain counts[27] of the underlying Adversary Proceeding dealing with the validity of the indemnification clauses. This Court also notes Quorum's statutory right to intervene as a party in interest pursuant to Section 1109(b).[28] The Court would consider permitting Quorum to intervene in this adversary proceeding upon the filing of a motion requesting that relief.

## CONCLUSION

For the reasons stated above, this Court will DENY Quorum's Motion to Intervene without prejudice and GRANT the CHS Parties' Motion to Stay Litigation Pending Arbitration. An appropriate order will issue.

Dated: August 30, 2023.

_____
BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

---

[27] *See* Adv. Pro. Doc. No. 1. at counts
[28] Section 1109(b) states, "a party in interest, including the debtor . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. §1109(b).