# Kramer Levin



**Gary A. Orseck**
Partner
T  202.775.4504
F  202.775.4510
GOrseck@KRAMERLEVIN.com

2000 K Street NW, 4th Floor
Washington, DC 20006
T  202.775.4500
F  202.775.4510

December 4, 2023

The Honorable Brendan L. Shannon
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

>   Re: *Daniel H. Golden & Wilmington Savings Fund Society v. Community Health Systems, Inc., et al.*, Adv. Pro. 21-51190

Dear Judge Shannon:

I write on behalf of Community Health Systems, Inc. ("CHSI"), CHS/Community Health Systems, Inc., Revenue Cycle Service Center, LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC, W. Larry Cash, and Rachel Seifert (together, "the CHSI Defendants") in the above-captioned adversary proceeding regarding the discovery conference requested by Plaintiffs.

Plaintiffs' November 27 letter asks the Court to compel production of documents subject to a joint privilege held by Quorum and CHSI—a privilege the Litigation Trustee (one of two Plaintiffs here) now claims to own. Although Plaintiffs are not entitled to any of those materials, Defendants proposed a resolution to the parties' dispute that would have provided Plaintiffs all joint-privileged materials with any conceivable relevance to this case. A month later, Plaintiffs curtly rejected that offer and, hours later, presented their discovery demand to the Court. Plaintiffs' demand should be rejected.

  A.   **The Privilege Jointly Held By CHSI And Quorum Was Never Quorum's To Assign**

1. Prior to the April 2016 spinoff transaction, Quorum was a wholly owned subsidiary of CHSI. That means the two companies were represented by the same in-house and outside counsel in the run-up to the spin. Upon completion of the spin, Quorum became an independent public company, CHSI and Quorum were no longer represented by the same counsel, and the joint representation (and the joint privilege) in connection with the spinoff terminated.

The Honorable Brendan L. Shannon
December 4, 2023

Several months after the spinoff, however, CHSI and Quorum became codefendants in a pair of securities lawsuits (the "Securities Cases").[1] In those cases, CHSI was represented by Robbins Russell (which became part of Kramer Levin in 2022), and Quorum was represented by King & Spalding. As one would expect, those two law firms coordinated efforts in defending the Securities Cases.

Plaintiffs now demand production of both the joint-privileged materials created before the spinoff *and* the joint-defense materials shared between CHSI and Quorum in connection with the Securities Cases long after the spinoff. They insist that because Quorum purported to assign its privileges to the Litigation Trust, the Litigation Trustee is now entitled to rifle through everything that Quorum's attorneys ever laid eyes on.

That is wrong. Even if Quorum's putative assignment of its *own* privilege were effective (which CHSI disputes, *see Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351-52 (1985)), Quorum certainly never purported to assign to the Litigation Trustee the *joint* privilege it shared with CHSI, which Quorum had no power to do in any event. It is black-letter law that documents shared within a joint or community-of-interest representation are protected against third parties. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 363 (3d Cir. 2007). And, further, any waiver (or assignment) of that joint privilege must be agreed to by *all* parties to the joint representation. *Id.* at 379 (where privilege subject to bilateral control, "**both clients must agree** to waive the privilege in order for the waiver to take effect") (emphasis added).

When Quorum purported to assign its privilege to the Litigation Trust, the only rights it had to assign were its ability to assert (or waive) its *own* claims of privilege. The *joint* privilege, by contrast, "did not belong to" Quorum, so "it could not be assigned by [Quorum] to the Trust or anyone else." *In re AOG Ent., Inc.*, 569 B.R. 563, 584 (Bankr. S.D.N.Y. 2017).

Plaintiffs cite no cases holding that a party to a joint privilege may assign that joint privilege to a litigation trustee without the consent of the other joint-privilege holders. The court in *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, denied a third-party assignee's request for production, recognizing that the adverse-litigation exception to a joint privilege does not allow third parties to obtain such documents. *See* 406 F. Supp. 381, 394 (S.D.N.Y. 1975). And, in *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, the debtor-corporation was being **liquidated**; having displaced the debtor's (now-defunct) management altogether, the liquidating trustee was the only one on earth capable of holding the privilege. *See* 213 B.R. 433, 434 (Bankr. S.D.N.Y. 1997). Here, by contrast, the Litigation Trustee purports to have eviscerated CHSI's joint privilege not through a liquidation, merger, or other corporate change-of-control—but simply with the stroke of a pen. That is not the law.

2. Plaintiffs' request to compel production of the joint-privileged materials fails for a second reason. Even if Quorum's attempted assignment of its privilege to the Litigation Trust

---

[1] The Securities Cases are *Zwick Partners LP et al. v. QHC et al.*, No. 3:16-cv-02475 (M.D. Tenn.); *R2 Investments, LDC v. QHC et al.*, No. 2017-578 (Williamson County Circuit Court of Tenn.). Both were settled with no admission of wrongdoing, and voluntarily dismissed, in 2020.

The Honorable Brendan L. Shannon
December 4, 2023

were sufficient to entitle the *Litigation Trustee* to invade the CHSI-Quorum joint privilege, not even Plaintiffs assert that the assignment would entitle *WSFS*—the other Plaintiff to this proceeding—to obtain those documents.

Counsel blithely dismiss this intractable problem by assuring that they "will work with the CHS Defendants to prevent disclosure of any Joint-Privilege Documents to third parties." That is impossible, because the same law firms (Quinn Emanuel, and Pachulski Stang Ziehl & Jones) represent *both* Plaintiffs. Plaintiffs' counsel are not able (or permitted) to shield information from a subset of their own clients. The Delaware Rules of Professional Conduct, the New York Rules of Professional Conduct, and the ABA Model Rules all direct that a joint representation cannot continue when a lawyer is forced to keep information confidential from one of its clients. Del. R. Prof. Conduct 1.7 cmt. 31; N.Y. R. Prof. Conduct 1.7 cmt. 31; ABA Model R. Prof. Conduct 1.7 cmt. 31. Rather, "if one client wishes to keep a piece of information confidential from the other client, the lawyer must withdraw from the joint representation." *SinglePoint Direct Solar, LLC v. Curiel*, 2022 WL 17418428, at *2 (D. Ariz. 2022).[2] Plaintiffs' counsel either can represent all of their clients without receiving this information or withdraw.

**B.    Notwithstanding The Weakness Of Plaintiffs' Position, The CHSI Defendants Already Offered To Produce All *Relevant* Joint-Privileged Materials**

Plaintiffs' lengthy submission omits to mention that on October 27, we agreed to resolve this dispute by producing every last document from the pre-spinoff period that is subject to a jointly held privilege, notwithstanding Plaintiffs' lack of entitlement to those materials. *See* Ex. A. The only joint-privileged documents the CHSI Defendants declined to produce were the joint-defense communications shared between counsel for the CHSI Defendants and Quorum when they were codefendants in the Securities Cases, well after the spinoff. We expected this would be noncontroversial: In addition to being privileged—core opinion work product, no less—the mental impressions of litigators from long after the relevant events have no conceivable relevance to Plaintiffs' claims. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.").

Plaintiffs rejected this offer. After waiting a month to respond, Plaintiffs communicated their rejection via email and filed their letter with the Court roughly an hour later. Ex. B.

As explained above, Plaintiffs are not entitled to CHSI's joint-privileged materials. We are, however, prepared to honor the same proposal we extended to Plaintiffs more than a month ago: We will produce all joint-privileged documents from the pre-spinoff period, when Quorum and CHSI shared counsel, which are the only joint-privileged documents that could possibly have

---

[2] Plaintiffs cite a single case on this point, and we may as well have cited it. *See In re KiOR* 621 B.R. 313, 327 (Bankr. D. Del. 2020). In that case, the law firm that "represented other parties not subject to the joint privilege" (Nov. 27 Ltr. at 5) represented them ***in a separate lawsuit.*** 621 B.R. at 321. The court held that the lawyers could not "unilaterally waive the privilege nor use *any* privileged information in the" separate lawsuit. *Id*. at 329 (emphasis in original).

The Honorable Brendan L. Shannon
December 4, 2023

probative value. So, for example, CHSI would produce joint-privileged materials relating to the parties' conception of, planning for, and structure of the spinoff that Plaintiffs are challenging. The only joint-privileged materials we decline to produce are communications between outside litigators for CHSI and for Quorum exchanged in the course of those parties' joint defense of the Securities Cases. Defense counsel's subjective views on the merits of the various claims, defenses, and litigation tactics—even if responsive to one of Plaintiffs' discovery requests—are neither relevant nor admissible.[3] We are unaware of any case, anywhere, in which a court ordered the production of such core work product.

Nothing about what we have proposed would "frustrate the Bankruptcy Code," or upset settled expectations, much less "decades of precedent." Nov. 27 Ltr. at 4. There is no precedent from any decade that supports Plaintiffs' quest to pry open our briefcases to discover sensitive counsel-to-counsel communications. Nor would honoring the privilege in this context impede Plaintiffs' efforts to pursue claims against "insiders" (*id.*), since we've already offered to produce otherwise joint-privileged communications leading up to and concerning the spinoff. That's what this case is about.

The Court should reject Plaintiffs' request for a declaration that it is entitled to these documents.

Very truly yours,

Gary A. Orseck

cc: Counsel of Record

---

[3] "Lawyers . . . question everything, yield nothing, and talk by the hour." – Thomas Jefferson.

# EXHIBIT A

# Kramer Levin 

**Gary A. Orseck**
Partner
T 202.775.4504
F 202.775.4510
GOrseck@KRAMERLEVIN.com

2000 K Street NW, 4th Floor
Washington, DC 20006
T 202.775.4500
F 202.775.4510

**October 27, 2023**

Ben Odell
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601

*Via Email*

Re: *Golden v. Community Health Systems, Inc., et al.* (Adv. Pro. No. 21-51190)

Ben,

We write with respect to outstanding issues raised in your emails of October 5 and October 23, and in Deborah's letter of October 8.

Joint Representation Privilege

In your October 8 letter, you assert that CHSI has "no basis" to withhold from production Joint Privileged documents. We have carefully considered your letter and the authorities you cite, and we disagree with your conclusion. Among other things, Quorum could not assign or waive privilege over which CHSI had control (including jointly privileged documents that concern CHSI). And even assuming Quorum could unilaterally give such Joint Privileged documents to the Trustee, it certainly could not give them to the other client you represent here—Wilmington Savings Fund Society, a third party with no conceivable claim to Quorum's privileged documents.

We have a solution to propose. The idea is to provide you with substantially all of the *relevant* Joint Privileged documents, while still protecting our core attorney-client and work-product materials, which are not probative as to your claims in any event. We would agree to turn over the *pre-spin* materials in which CHSI and Quorum shared a joint privilege, subject to your agreement that nothing in our producing those documents will be deemed a broader waiver. So, for example, we would produce Joint Privileged materials relating to the parties' conception of, planning for and structure of the spin-off. In exchange, you would agree not to demand any Joint Privileged documents from the *post-spin* period. That means you would not seek (for example) joint-defense communications

October 27, 2023



between Robbins Russell (CHSI's counsel) and King & Spalding (Quorum's counsel) created during the litigation of the *Zwick* and *R2* cases.

Let us know what you think. To be clear, this is the best we are willing to do, and we are otherwise prepared to litigate the point.

Additional Productions

CHSI previously agreed to produce deposition and hearing transcripts from the Arbitration. CHSI also previously agreed to produce the deposition transcripts and any sealed docket filings from the Securities Cases. If you agree to our proposal above regarding Joint Privileged documents, we will produce these materials in unredacted form, except to the extent they reference post-spin jointly privileged communications. You have also requested the document requests to CHSI, and CHSI's responses and objections, from the Securities Cases. CHSI agrees to produce those documents as well.

We estimate that we can produce these documents in the next three to four weeks. Some transcripts and sealed materials in the Securities Cases were designated confidential by parties other than CHSI pursuant to the governing protective orders in those actions. Those protective orders require us to give those parties notice before producing their confidential documents.

Additional Collections

You have proposed a number of additional search terms and targeted document collections that you assert are necessary to fill what you contend are gaps between Plaintiffs' document requests and CHSI's existing document production. We disagree that the requests you highlighted on October 5 and October 23 are unfulfilled by our production. Indeed, more than 3,600 of the document families produced in CHSG001 hit on one or more of the search terms you proposed. Nevertheless, as we advised on October 25, we are running the search terms and date ranges you proposed on all email custodians in order to evaluate the number of additional hits. Based on initial results, we expect to propose narrowing the scope of those search terms, and will send our revised proposal soon.

With respect to the "additional documents to be collected and produced without search terms," your October 5 email proposed six categories of requested documents. As you have now seen from CHSI's responses and objections, all six of those categories are covered by our existing document production.

Finally, you noted that the plaintiff in *R2* moved to compel the production of various arbitration materials. As we have explained, CHSI's production includes non-privileged arbitration exhibits and pleadings, and will soon include transcripts as well. To be clear, all arbitration materials that were produced in *R2* have been produced in CHSG001.

October 27, 2023



Existing Non-Search Term Collections

You have asked for information about documents collected in the Securities Cases (and re-produced in this case) other than those collected by running search terms on email inboxes.

With respect to the individual custodians in your October 5 email:

- Lee Fleck: CHSI collected copies of the Quorum credit model from Mr. Fleck's files at CHSI. Mr. Fleck left CHSI and was employed by Quorum after the spin-off.

- John Fry: CHSI ran the same search terms on Mr. Fry's emails that were used to collect emails from James Ely (the other CHSI board member from whom emails were collected and produced).

- Jason Johnson: CHSI collected hard copy documents from Mr. Johnson related to the spin-off and billing for the TSAs.

- Suzanne McDaniel: CHSI collected a small number of hard copy documents related to Wayne Smith. Ms. McDaniel was Mr. Smith's assistant.

- Thomas Miller: Mr. Miller was the listed custodian for certain monthly financial reports for Quorum that were requested by the plaintiff in *R2*.

- Justin Pitt: Mr. Pitt was the listed custodian for materials related to the CHSI board of directors.

- Meagan Strawhacker: CHSI collected Ms. Strawhacker's electronic files and hard copy documents related to the spin-off.

With respect to the corporate shared drives:

- Arbitration Exhibits: CHSI collected the exhibits entered in the Arbitration.

- CHS Investor Relations: CHSI collected transcripts from earnings calls.

- CHS_Corporate: CHSI collected insurance agreements applicable in the Securities Cases.

- CHSPSC: CHSI collected copies of the TSAs; pleadings from the Arbitration; QHC-related contracts, including several thousand documents related to billing for the TSAs; and financial reports.

- CP2 Files: CHSI collected several thousand spin-off balance sheet documents and other financial documents.

3

October 27, 2023



- SEC Filing: CHSI collected documents related to CHSI's SEC filings.

I think that covers everything. We are available next week to meet and confer if necessary.

Sincerely,

*/s/ Gary A. Orseck*
Gary A. Orseck

cc:   Counsel of Record

4

# EXHIBIT B

| | |
|---|---|
| **From:** | Ben Odell <benodell@quinnemanuel.com> |
| **Sent:** | Monday, November 27, 2023 3:13 PM |
| **To:** | Andrews, Lauren Cassady; Deborah Newman; MacGregor, John S.; Alvarez-Correa, Sabrina; collins@rlf.com; Fournier, David; peter.haveles@akerman.com; Levitin, Joel H.; maddox@rlf.com; marcy.smith@troutman.com; Moss, Edward; bankfilings@ycst.com; Matt Peller; Sheila Sadighi; Washer, Herbert S.; Cole, Lisa J.; ljones@pszjlaw.com; tcairns@pszjlaw.com |
| **Cc:** | Herman, Jack; Orseck, Gary A.; Russell, Mark; Shaffer, Jason; Trunk, William J.; Friedman, Lee Turner; Neiburg, Michael; Lambe, Christopher M. |
| **Subject:** | [EXTERNAL] RE: Golden v. CHSI et al. - Responses and Objections |

Counsel,

We have considered the proposal, as described in your October 27 letter, that the CHS Defendants produce pre-spin joint privileged documents in exchange for our agreement "not to demand any Joint Privileged documents from the post-spin period." We cannot agree to this proposal. The CHS Defendants have no basis to withhold any joint privileged documents from production, for the reasons articulated in our letter of October 8. As your letter states this is your final offer and you are otherwise prepared to litigate this issue, we intend to raise the issue with the Judge today and request a discovery conference.

Thank you,
Ben

**Ben Odell**
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3290 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
benodell@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.