# Kramer Levin



**Gary A. Orseck**
Partner
T  202.775.4504
F  202.775.4510
GOrseck@KRAMERLEVIN.com

2000 K Street NW, 4th Floor
Washington, DC 20006
T  202.775.4500
F  202.775.4510

January 12, 2024

The Honorable Brendan L. Shannon
United States Bankruptcy Court, District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

>  Re: *Daniel H. Golden & Wilmington Savings Fund Society v. Community Health Systems, Inc., et al.*, Adv. Pro. 21-51190

Dear Judge Shannon:

I write on behalf of the CHSI Defendants in reply to Plaintiffs' January 11, 2024 letter (Doc. 218), which urges the Court (1) to allow counsel in possession of joint privilege materials to represent WSFS, which counsel concedes has no entitlement to those materials; and (2) to order Defendants to produce the joint privilege materials before Defendants have an opportunity to pursue an interlocutory appeal or mandamus. The Court should reject this.

*First,* Plaintiff wants to address the intractable problem that arises from its proposed representation of a party (WSFS) that falls outside anyone's conception of the privilege by (i) promising not to disclose joint privilege materials to WSFS, and further (ii) promising that information derived from joint privileged materials will not "be used to support WSFS's claims." Ltr. at 2 (emphasis added). As the case law makes clear, however, the second part of that promise is both neurologically and ethically impossible.

How could any competent and zealous advocate, who digests and deploys evidence in furtherance of one client's claim, possibly *not* rely upon (at least in some fashion) that same evidence in support of her other client's *identical* claim in the same lawsuit? How does the lawyer segregate, in her frontal cortex, between litigation strategies influenced by joint privileged materials and those that are not? Likewise, how could an expert witness, acting on behalf of those same clients, use that information to benefit one client but not the other? It cannot be done—which is precisely why ethical screens exist. *See* 12/13/23 Tr. 22 (observing that counsel must "establish *structures* to ensure that the rules of professional conduct and professional responsibility are abided by") (emphasis added).

The cases cited in our January 10 letter make this very point. They hold that a lawyer who receives confidential information from a party cannot be counsel to an opposing party who is not

The Honorable Brendan L. Shannon
January 12, 2024

entitled to that information on a substantially related matter. It makes no difference whether that lawyer obtained the confidential information from a prior representation of the objecting party (as in *Bowers* and *Grimes*), or from somewhere else. In either event, that lawyer owes a duty of confidentiality to that party. *United States v. Gonzalez*, 669 F.3d 974, 981 (9th Cir. 2012).

To underscore the point, Defendants are prepared to share with the Court, *in camera*, a selection of the joint privilege materials. As the Court will see, a person who knows this information is not capable of un-knowing it (and therefore not using it) depending upon the circumstances.

*Second*, the Court should enter a form of order that allows Defendants to seek review of the Court's order before Defendants must produce the joint privilege materials. During the meet and confer process, Plaintiffs refused to agree with this on the sole asserted ground that "the Supreme Court has conclusively ruled that discovery orders concerning attorney-client privilege do not qualify for interlocutory appeal." January 5, 2024 email (citing *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009)). As noted in our January 10 letter, that is wrong.

Plaintiffs instead pivot to two new, and equally meritless, efforts to deprive Defendants of meaningful appellate review. Plaintiffs first submit that our request should be denied because Defendants "have not moved for" a stay. 1/11/24 Ltr. at 3. But we *did* move for a stay at the close of the December 13 hearing. *See* 12/13/23 Tr. 24. In response, the Court directed that "rather than staying my order, I have asked the parties to formulate a form of order . . . with respect to reservations of rights or mechanics in order to facilitate an interlocutory appeal." Tr. 24-25. If the Court prefers that we renew our motion for a stay, we will do so promptly.

Next, treating our proposed form of order as though it *is* a motion for stay, Plaintiffs object that we have not adequately demonstrated (i) a likelihood of success on the merits of our forthcoming appeal; (ii) that we will suffer irreparable injury absent a stay; or (iii) that a stay will not substantially harm other parties or the public interest. 1/11/24 Ltr. at 3. Plaintiffs are wrong on each point.

- Defendants have a *likelihood of success* on the merits because this Court's holding on the joint privilege issue is in error. Regardless whether Quorum was entitled to assign its *own* privilege and work product to the Trustee, the Court allowed Quorum to assign *CHSI's* privilege and work-product protection to the Trustee. This allows the Trustee unprecedented access to an adversary's work product on a case that raised almost identical issues. And indeed, there are no governing cases holding that a party to a joint privilege can assign that joint privilege to a litigation trustee without the consent of the other joint-privilege holders. To the contrary, "both [holders of a joint privilege] must agree to waive the privilege in order for the waiver to take effect." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 363 (3d Circ. 2007). Allowing the Trustee to pry open opposing counsel's briefcases on Quorum's say-so would be reversible error.

- It is black-letter law that Defendants would suffer *irreparable injury* if forced to produce materials in violation of a privilege. As then-Judge Kavanaugh explained (in a post-*Mohawk* decision), "appeal after final judgment will often come too late because the privileged materials will already have been released. In other words, 'the cat is out of the bag.'" *In re Kellogg Brown*

The Honorable Brendan L. Shannon
January 12, 2024

*& Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (quoting *In re Papandreou,* 139 F.3d 247, 251 (D.C. Cir.1998)). "[P]ost-release review of a ruling that documents are unprivileged is often inadequate to vindicate a privilege the very purpose of which is to prevent the release of those confidential documents." *In re Kellogg Brown & Root, Inc.*, 756 F.3d at 761.[1]

- Plaintiffs assert that our requested form of order will cause them *substantial harm* because "further delay" in production of these materials will prevent the Litigation Trustee from using the materials "to prepare its case." 1/11/24 Ltr at 4. That is baseless. To begin with, Defendants advised Plaintiffs way back on October 27, 2023 that we decline to produce these documents on the grounds of privilege. Plaintiffs then waited thirty days—until November 27—to raise the matter with the Court. We have not engaged in any "delay"; Defendants simply wish to avail themselves of their right to seek interlocutory appellate review before "the cat is out of the bag." However that process turns out, Plaintiffs will have plenty of time to prepare their case: summary judgment opposition briefs are not due until December 9, 2014, and no trial date has yet been scheduled.

Very truly yours,

/s/ *Gary A. Orseck*
Gary A. Orseck

cc:  Counsel of Record

---

[1] *See also In re Sims,* 534 F.3d 117, 129 (2d Cir.2008) ("a remedy after final judgment cannot unsay the confidential information that has been revealed") (quoting *In re von Bulow,* 828 F.2d 94, 99 (2d Cir.1987)); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019), <u>as amended</u> (Oct. 31, 2019) ("Crucially, the [district] court failed to recognize that an adverse party's review of privileged materials seriously injures the privilege holder.").