# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>QUORUM HEALTH CORPORATION, *et al.*,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-10766 (BLS) |
| DANIEL H. GOLDEN, AS LITIGATION TRUSTEE OF THE QHC LITIGATION TRUST, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLEY IN ITS CAPACITY AS INDENTURE TRUSTEE,<br><br>Plaintiffs,<br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC.; CHS/COMMUNITY HEALTH SYSTEMS, INC.; REVENUE CYCLE SERVICE CENTER, LLC; CHSPSC, LLC; PROFESSIONAL ACCOUNT SERVICES, INC.; PHYSICIAN PRACTICE SUPPORT, LLC; ELIGIBILITY SCREENING SERVICES, LLC; W. LARRY CASH; RACHEL SEIFERT; ADAM FEINSTEIN; AND CREDIT SUISSE SECURITIES (USA) LLC,<br><br>Defendants. | Adv. Pro. No. 21-51190 (BLS)<br><br><br><br>**Reference Docket Nos. 350, 351, 352, 353** |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
## ADAM FEINSTEIN'S MOTION FOR SUMMARY JUDGMENT

YOUNG CONAWAY STARGATT
& TAYLOR LLP

Michael S. Neiburg (DE No. 5275)
Christopher M. Lambe (DE No. 6846)
Rodney Square, 1000 North King St.
Wilmington, DE 19801
Tel.: (302) 571-6600
Fax: (302) 571-1253
mneiburg@ycst.com
clambe@ycst.com

ROLNICK KRAMER SADIGHI LLP

Marc B. Kramer (admitted *pro hac vice*)
Sheila A. Sadighi (admitted *pro hac vice*)
Shane Kunselman (admitted *pro hac vice*)
One Pennsylvania Plaza, 34th Floor
New York, NY 10119
Tel: (212) 597-2800
mkramer@rksllp.com
ssadighi@rksllp.com
skunselman@rksllp.com

*Counsel for Defendant Adam Feinstein*

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.    Actual Evidence of Mr. Feinstein's Bad Faith Is Required to Proceed to Trial on the Issue of Mr. Feinstein's Individual Liability ................................................ 3

        A.    Mere Credibility Challenges Do Not Carry Plaintiffs' Evidentiary Burden ................................................................................................... 4

        B.    Plaintiffs' Inability to Adduce Evidence to Support Their Belated Claims Is Not Itself Evidence of Mr. Feinstein's Bad Faith ...................... 7

        C.    Plaintiffs Fail to Refute Mr. Feinstein's Reliance on the Surplus Determination Made by the Incumbent Board and Advisors ...................... 9

            1.    No Evidence Contradicts Mr. Feinstein's Reliance on the April 1 Solvency Determination and Duff & Phelps's Solvency Analysis ...................................................................................... 9

            2.    The DGCL and Delaware Case Law Make Clear That Mr. Feinstein Was Entitled to Rely on the April 1 Solvency Determination and Duff & Phelps's Solvency Analysis ................. 9

        D.    Plaintiffs Fail to Point to Any Other Conflicting Evidence ...................... 11

    II.    Actual Evidence of a Majority's Bad Faith Is Required to Proceed to Trial on Plaintiffs' Section 174 Claims for a "Willful" Violation of Section 173 .............. 13

    III.    Mr. Feinstein Joins CHSI Defendants in All Other Respects ................................ 15

CONCLUSION ................................................................................................................. 15

i

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................... 4

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ......................................................................... 14

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ........................................................................... 3

*City of Coral Springs Police Officers' Pension Plan v. Dorsey*,
    2023 WL 3316246 (Del. Ch. May 9, 2023).............................................. 15

*Cooper v. Wellpath*,
    2023 WL 4929305 (3d Cir. Aug. 2, 2023) ................................................. 8

*Daimler v. Moehle*,
    2025 WL 1355138 (3d Cir. May 9, 2025).................................................. 6

*Desia v. GE Life & Annuity Assur. Co.*,
    2008 WL 4724080 (D. Conn. Oct. 24, 2008).............................................. 6

*Domenech v. City of Philadelphia*,
    2009 WL 1109316 (E.D. Pa. Apr. 23, 2009).............................................. 9

*Dow Chem. Canada Inc. v. HRD Corp.*,
    2013 WL 11311780 (D. Del. Mar. 7, 2013) ............................................... 6

*Edgerton v. Wilkes-Barre Home Care Servs., LLC*,
    2014 WL 131605 (M.D. Pa. Jan. 13, 2014) ........................................... 3, 5

*Elskamp v. Penn-Delco Sch. Dist.*,
    2011 WL 1884010 (E.D. Pa. May 18, 2011) .............................................. 6

*Fernandez v. China Ocean Shipping, (Grp.) Co.*,
    312 F. Supp. 2d 369 (E.D.N.Y. 2003) ......................................................11

*Gould v. Winstar Commc'ns, Inc.*,
    692 F.3d 148 (2d Cir. 2012)........................................................................ 8

*Grier v. Scarpine*,
    2008 WL 655865 (W.D. Pa. Mar. 5, 2008) ................................................ 5

*In re Aydt*,
2025 WL 297662 (Bankr. E.D. Wis. Jan. 24, 2025) ...................................................... 5

*In re Chemours Co. Deriv. Litig.*,
2021 WL 5050285 (Del. Ch. Nov. 1, 2021)............................................................... 3

*In re Filene's Basement*,
2013 WL 620288 (Bankr. D. Del. Feb. 19, 2013)............................................................11

*In re Planet Hollywood Int'l*,
274 B.R. 391 (Bankr. D. Del. 2001) ................................................................. 9

*In re WL Homes, LLC*,
452 B.R. 138 (Bankr. D. Del. 2011) ................................................................. 7

*Kidd v. Midland Credit Mgmt., Inc.*,
2019 WL 4736913 (E.D.N.Y. Sept. 27, 2019) .......................................................... 5

*Lewen v. Raymond*,
2024 WL 3555322 (W.D. Pa. July 25, 2024) .......................................................... 5

*M.K. by & through Barlowe K. v. Prestige Acad. Charter Sch.*,
470 F. Supp. 3d 417 (D. Del. 2020) .................................................... 5, 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)............................................................................ 2

*MC Asset Recovery, LLC v. Southern Company,*
2009 WL 10666059 (N.D. Ga. Feb. 5, 2009) ..................................................... 7

*McElrath v. Kalanick*,
224 A.3d 982 (Del. 2020) .........................................................................10, 11

*Progressive Cas. Ins. Co. v. Monaco*,
2017 WL 2873051 (D. Conn. July 5, 2017).......................................................... 5

*Rodrigues v. Inc. Vill. of Mineola*,
2019 WL 4696427 (E.D.N.Y. Sept. 26, 2019) ................................................... 3

*S.E.C. v. Antar*,
44 F. App'x 548 (3d Cir. 2002) ........................................................................ 6

*Schoonejongen v. Curtiss-Wright Corp.*,
143 F.3d 120 (3d Cir. 1998) ................................................................ 4, 5

*Terrell v. City of Harrisburg Police Dep't*,
549 F. Supp. 2d 671 (M.D. Pa. 2008) ........................................................... 7

*Vladimir Gusinsky Revocable Tr. v. Hayes*,
    2025 WL 1517442 (Del. May 28, 2025)..........................................................................15

*Warren v. Donegal Mut. Ins. Co.*,
    2025 WL 1415771 (M.D. Pa. May 15, 2025) ....................................................................5

*Wenske v. Blue Bell Creameries, Inc.*,
    214 A.3d 958 (Del. Ch. 2019)..........................................................................................14

*Zapata Corp. v. Maldonado*,
    430 A.2d 779 (Del. 1981) ................................................................................................14

**INTRODUCTION**

Plaintiffs' opposition confirms their utter lack of *actual evidence* required to proceed to trial against Mr. Feinstein.  Armed with only insinuations, innuendo, and metaphysical doubt, Plaintiffs pray for another chance to cross-examine Mr. Feinstein in hopes that trial will go differently than discovery.  But Plaintiffs already deposed Mr. Feinstein (and every other person involved in the Spin, many multiple times) and came up empty.[1]  So, this is the end of the road.

Two overlapping evidentiary burdens require Plaintiffs to adduce *actual evidence* of Mr. Feinstein's alleged bad faith at this stage.  *First*, to establish that Mr. Feinstein's approval of the Distribution falls outside Section 172's absolute shield (and to rebut the copious evidence of Mr. Feinstein's good faith), Plaintiffs bear the burden of production to support their allegations of Mr. Feinstein's bad faith.  *Second*, to proceed to trial on their theory of a "willful" violation of Section 173, Plaintiffs must also evidence Mr. Feinstein's bad faith as part of their burden to establish bad faith by an actual majority of Board members—without which there is no "willful" Board action.

Plaintiffs make little attempt to carry these overlapping evidentiary burdens.  Instead of providing affirmative evidence on which a reasonable factfinder could find bad faith, Plaintiffs baldly assert that a trial is nonetheless necessary for the sole purpose of testing Mr. Feinstein's credibility.  The law, however, is resoundingly clear that a trial solely to test credibility of a defendant's otherwise *uncontroverted* testimony is impermissible.  Trials resolve actual conflicts in competing evidence presented by each side.  Here, there is no competing evidence in conflict.

Indeed, the only "evidence" Plaintiffs put forward is the fact that they were unable to

---

[1] Capitalized terms not otherwise defined herein retain their definitions set forth in Mr. Feinstein's opening memorandum of law (Doc. No. 351 ("MOL")).  Citations to "Ex." refer to exhibits attached to the Declaration of Shane Kunselman (Doc. No. 352); "Pltfs' Ex." refers to exhibits attached to the Declaration of Deborah J. Newman (Doc. No 381), filed concurrently with Plaintiffs' opposition (Doc. No. 380 ("Opp.")); "Reply Ex." refers to exhibits attached to the Reply Declaration of Shane Kunselman ("Reply Kunselman Decl."), filed concurrently herewith.

discover any evidence to support their claims.  But Plaintiffs' lack of evidence is reason to grant summary judgment, not reason to deny it.  There is no basis to hale Mr. Feinstein into trial under threat of a $2-billion judgment on Plaintiffs' mere wish that new evidence will reveal itself.  And Plaintiffs' suggestion that an independent director should face massive liability because he committed an alleged offense not of bad faith, but of instead failing to fastidiously archive mailings he received from board service nearly a decade ago, is as ridiculous as it sounds.  The "offense" complained of bears no semblance to the liability Plaintiffs seek to impose.  Plaintiffs have turned over every rock seeking evidence of bad faith and have come up empty.  That lack of evidence weighs heavily in Mr. Feinstein's favor, not Plaintiffs'.

Plaintiffs' failure to contradict Mr. Feinstein's reliance on the April 1 Solvency Determination and Duff & Phelps's solvency analysis is glaring.  Those materials are quintessential sources of information that Delaware law encourages directors to rely on, and they unambiguously show that Quorum had sufficient surplus to consummate the Spin.  Same as the numerous other sources of information on which Mr. Feinstein relied, Plaintiffs' only response is to posit: "but maybe he didn't really consider them."  That is speculation, not evidence.

Plaintiffs' unlawful dividend claim fails against all Defendants, including because (1) the claim is precluded by the result of prior litigation; (2) the Distribution was not a "dividend" within the meaning of the DGCL; and (3) Quorum was indisputably solvent upon consummation of the Spin.  Even if Plaintiffs could drum up a factual dispute on any of those issues, however, there would still be no evidence of any specific misconduct by Mr. Feinstein, as required for individual liability.  Accordingly, Mr. Feinstein's complete dismissal from this action is required by law.[2]

---

[2] Plaintiffs do not contest that the ancillary avoidance claims against Mr. Feinstein necessarily fail insofar as the unlawful dividend claim fails.  (*See* MOL n.1.)

2

**ARGUMENT**

I.    **Actual Evidence of Mr. Feinstein's Bad Faith Is Required to Proceed to Trial on the Issue of Mr. Feinstein's Individual Liability**

The DGCL limits Mr. Feinstein's individual liability to unlawful dividends arising from his own bad faith, and the statute makes clear there is no actionable bad faith where he relied on the Company's records and advisors. *In re Chemours Co. Deriv. Litig.*, 2021 WL 5050285, at *13 (Del. Ch. Nov. 1, 2021); *see also Brehm v. Eisner*, 746 A.2d 244, 261 (Del. 2000) (addressing Section 141's parallel liability shield and holding that plaintiffs must put forth specific facts to "rebut the presumption that the directors properly exercised their business judgment, including their good faith reliance on [advisor]'s expertise.").[3]    Hence, to proceed to trial as to Mr. Feinstein, Plaintiffs are required to lay out sufficient evidence of Mr. Feinstein's alleged bad faith for a factfinder to conclude that his consideration and approval of the Spin falls outside of Section 172's absolute shield.    Plaintiffs utterly fail to meet their evidentiary burden.    Indeed, "Plaintiffs essentially concede that they have no evidence to contradict [Mr. Feinstein]'s testimony" that he relied on numerous persons and materials in approving the Distribution, and "[t]he absence of such evidence is clearly fatal to [P]laintiffs' claim." *Rodrigues v. Inc. Vill. of Mineola*, 2019 WL 4696427, at *5 (E.D.N.Y. Sept. 26, 2019); *see also Edgerton v. Wilkes-Barre Home Care Servs., LLC*, 2014 WL 131605, at *2 (M.D. Pa. Jan. 13, 2014) ("Where the nonmoving party has had adequate time for discovery and will bear the burden of proof at trial, a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial, and summary judgment is warranted.").    Lacking requisite evidence, Plaintiffs instead make a smattering of unsupported arguments that cannot stave off summary judgment:

*First*, Plaintiffs attempt to invoke the specter of "credibility determinations" to overcome

---

[3] All internal quotation marks omitted unless otherwise indicated.

3

Mr. Feinstein's sworn testimony.  But the law in the Third Circuit (and across the nation) is clear that bare credibility challenges are no obstacle to summary judgment.

*Second*, Plaintiffs lament an unsurprisingly limited universe of contemporaneous documents memorializing Mr. Feinstein's Spin-related communications.  But Plaintiffs dissatisfaction with the record of decade-past events does not relieve them of their evidentiary burdens and is no basis to hale Mr. Feinstein into trial.  Plaintiffs must meet their evidentiary burdens with the record they actually developed, not one they intimate should or could exist.

*Third*, to rebut the record evidence that Mr. Feinstein relied on the April 1 Solvency Determination and Duff & Phelps's solvency analysis, Plaintiffs provide no evidence at all.  Mr. Feinstein's undisputed reliance on those materials—whose very purpose was to provide directors unambiguous comfort that Quorum had sufficient surplus to make the Distribution—is dispositive.

*Fourth*, in the few instances where Plaintiffs actually cite to evidence, the record shows there is no actual conflict of evidence.  Plaintiffs' insinuations to the contrary seek to manufacture factual disputes where none exist and must fail.

### A.      Mere Credibility Challenges Do Not Carry Plaintiffs' Evidentiary Burden

In addition to numerous corroborating documents and testimony, Mr. Feinstein submitted a sworn declaration evidencing his good-faith reliance on Quorum's records, advisors, personnel, and other sources of information that provide complete safe harbor under Section 172.  (Ex. 1.) Only "affirmative evidence" to the contrary can create a genuine dispute warranting trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  Yet, "[a]gainst all these affidavits, deposition testimony, and undisputed facts, the plaintiffs, who would bear the burden of proof on this issue at trial, have not set forth even the slightest quantum of evidence" of Mr. Feinstein's bad faith.  *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998).  Instead, Plaintiffs assert that Mr. Feinstein's testimony "is a work of fiction" (Opp. at 51) that "defies credulity" (*id.*

at 92) and that a trial is necessary to "evaluate his credibility" (*id.* at 95).  In doing so, Plaintiffs join the ignominious club of litigants who came up empty in discovery and resort to "categorically argu[ing]" that the movant's evidence is "subject to a credibility determination."  *Warren v. Donegal Mut. Ins. Co.*, 2025 WL 1415771, at *8 (M.D. Pa. May 15, 2025).  Plaintiffs are "wrong." *Id.*  "It will not suffice simply to argue that the affidavit might be false."  *M.K. by & through Barlowe K. v. Prestige Acad. Charter Sch.*, 470 F. Supp. 3d 417, 424 (D. Del. 2020).

Indeed, in the Third Circuit, "[i]t is by now axiomatic that a nonmoving party cannot defeat summary judgment simply by asserting that a [factfinder] might disbelieve an opponent's affidavit to that effect."  *Schoonejongen*, 143 F.3d at 130 (cleaned up); *see also Lewen v. Raymond*, 2024 WL 3555322, at *4 & n. 6 (W.D. Pa. July 25, 2024) ("The rule in this circuit is that a non-moving party cannot survive summary judgment simply by asserting that the factfinder might disbelieve the testimony of the movant's witnesses on a potentially dispositive issue." (cleaned up)); *Edgerton*, 2014 WL 131605, at *2 ("[A] nonmoving party cannot defeat summary judgment by raising the mere possibility that the [factfinder] may disbelieve a witness's testimony."); *Grier v. Scarpine*, 2008 WL 655865, at *1 (W.D. Pa. Mar. 5, 2008).  Courts around the nation concur: "a plaintiff cannot avoid summary judgment merely by reciting the incantation, 'Credibility,' or by calling the defendant a liar."  *In re Aydt*, 2025 WL 297662, at *10 (Bankr. E.D. Wis. Jan. 24, 2025) (cleaned up); *see also Kidd v. Midland Credit Mgmt., Inc.*, 2019 WL 4736913, at *2 (E.D.N.Y. Sept. 27, 2019) ("Courts routinely reject attempts by parties to raise an issue of fact on summary judgment solely by challenging the opposing party's testimony on credibility grounds."); *Progressive Cas. Ins. Co. v. Monaco*, 2017 WL 2873051, at *8 (D. Conn. July 5, 2017) ("If a party opposing summary judgment points only to evidence that could discredit a key witness's testimony, but does not present other evidence that actually contradicts the testimony at issue, the

5

nonmovant will not be able to survive summary judgment solely by impeaching the witness.").

Plaintiffs' description of Mr. Feinstein's testimony as "self-serving" (Opp. at 6) makes no difference. Same as any other evidence, courts may grant summary judgment where so-called "self-serving" testimony is not contradicted. *See Elskamp v. Penn-Delco Sch. Dist.*, 2011 WL 1884010, at *5 (E.D. Pa. May 18, 2011) (granting summary judgment where the plaintiff failed to "provide[] any affirmative evidence" to contradict so-called "self-serving" affidavit). Thus, "[t]he notion that a court errs when it relies on a so-called 'self-serving' affidavit to decide a motion for summary judgment is wrong." *Dow Chem. Canada Inc. v. HRD Corp.*, 2013 WL 11311780, at *2 (D. Del. Mar. 7, 2013) (upholding summary judgment); *see also Daimler v. Moehle*, 2025 WL 1355138, at *4 (3d Cir. May 9, 2025) ("A single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient [evidence at] summary judgment, even when 'self-serving.'" (cleaned up)); *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002). The only question is whether Mr. Feinstein's testimony is contradicted by affirmative evidence. It is not. Not a single witness disputes Mr. Feinstein's testimony.

Nor does it make a difference that Mr. Feinstein's testimony is not "corroborate[d]" however Plaintiffs may desire. (Opp. at 6.) "Under the controlling case law, the rejoinder 'prove it' does not suffice." *Barlowe K.*, 470 F. Supp. 3d at 424; *see also Daimler*, 2025 WL 1355138, at *5 ("[T]here is no obligation to corroborate self-serving testimonial evidence."). Hence, an "argument that Mr. [Feinstein] has not presented any evidence to corroborate his testimony is not the same as presenting evidence" and does not carry Plaintiffs' evidentiary burden. *Desia v. GE Life & Annuity Assur. Co.*, 2008 WL 4724080, at *8 (D. Conn. Oct. 24, 2008). Regardless, corroboration is presented in Mr. Feinstein's motion in numerous respects, whereas Plaintiffs offer no evidence to contradict his testimony. *See infra* §§ I.B-D.

**B.      Plaintiffs' Inability to Adduce Evidence to Support Their Belated Claims Is Not Itself Evidence of Mr. Feinstein's Bad Faith**

Lacking affirmative evidence, Plaintiffs suggest they can survive summary judgment simply by observing an unsurprisingly limited universe of contemporaneous e-mail traffic regarding Mr. Feinstein's consideration of the Spin.  But the law says they cannot.  *MC Asset Recovery, LLC v. Southern Company*—addressing Section 141's parallel liability shield—makes clear there is "no requirement under Delaware law that the directors memorialize their assessment of the company's financial situation."  2009 WL 10666059, at \*15 (N.D. Ga. Feb. 5, 2009).  Thus:

> [A] lack of evidence suggesting that the Board reviewed any financial information prior to approving and declaring the dividend is not sufficient to create a fact question as to whether the assessment took place.

*Id.*  Treating a lack of evidence as affirmative evidence not only flips Plaintiffs' summary judgment burden on its head, but the notion that Plaintiffs could carry their ultimate trial burden and impose a $2-billion liability on an independent director based on the sole "fact" of a thin e-mail record from over a decade ago defies all conceptions of justice.  Plaintiffs' refrain—"if it's not in an e-mail, then maybe it didn't happen"—is as wrong as it is trite.  Mr. Feinstein's under-oath "assertions present issues of objective fact that require a response from [P]laintiffs and cannot be denied simply because [P]laintiffs' discovery attempts have produced no contrary evidence."  *Terrell v. City of Harrisburg Police Dep't*, 549 F. Supp. 2d 671, 676 & n.2 (M.D. Pa. 2008).  This is quintessentially the type of unsupported case summary judgment was designed to weed out prior to trial.  *See In re WL Homes, LLC*, 452 B.R. 138, 142-43 (Bankr. D. Del. 2011) (Shannon, J.).

The context of this case reinforces that conclusion: the Spin's effect on Quorum's financial condition has been litigated in multiple proceedings *since 2017*.  Tellingly, Mr. Feinstein was neither party to nor otherwise haled into any of those prior proceedings, and he was not subject to discovery or obligations to preserve Spin documents.  Mr. Feinstein was not roped into this saga

7

until Plaintiffs sued him in October 2021—over *five years* after the Spin and over *four years* after he resigned from the Board. That Mr. Feinstein did not preserve in amber the mailings he received in connection with a directorship onboarding and transaction approval half-a-decade past is neither remarkable nor evidence of any material fact. Mr. Feinstein explained this during discovery, and Plaintiffs never followed up. (Reply Kunselman Decl. ¶¶ 3-4; Reply Exs. 1-2.)

Notably, for all their grumbling about Mr. Feinstein's "self-serving" declaration, Plaintiffs *do not identify a single discrepancy* between Mr. Feinstein's declaration and his deposition testimony subject to Plaintiffs' cross-examination. The most Plaintiffs can muster is an assertion that Mr. Feinstein's declaration identifies the "precise" dates on which he spoke with Mr. Cash (Opp. at 92)—thanks to Mr. Feinstein's refreshed recollection from numerous contemporaneous e-mails (Ex. 19)—whereas his recollection was more general on the day of his deposition (*see, e.g.*, Pltfs' Ex. 133 ("Dep. Tr.") at 49:3-52:24, 158:16-24; 167:18-168:9, 194:6-12, 212:15-21, 223:7-19). Plaintiffs certainly could have refreshed his recollection in deposition, but they did not. Likewise, Plaintiffs had the opportunity to (and did) cross-examine Mr. Feinstein's routine practice of conducting Board business largely through phone calls, in-person meetings, and hardcopy documents—which independently evidences that he obtained and reviewed the relevant Spin materials. *See Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 161 (2d Cir. 2012) (holding that analyst's testimony that she routinely reviewed financial disclosures of companies in her purview "is enough" to establish her reliance on the specific financial disclosures at issue); *accord Cooper v. Wellpath*, 2023 WL 4929305, at *2 (3d Cir. Aug. 2, 2023). His deposition and declaration testimony are consistent that those were his general habits and specific practices in this case.[4]

In a last-gasp effort to use a lack of evidence as "evidence" to carry their burden, Plaintiffs

---

[4] Ex. 1 ¶¶ 10, 23, 26, 38, 43; Dep. Tr. at 31:22-39:6, 65:19-24, 112:7-114:16, 164:19-168:9.

dump 230 pages of e-mails on the Court and hope the Court will find *something* to contradict Mr. Feinstein's testimony.  (Pltfs' Ex. 24.)  But "[a] non-moving party may not merely submit a voluminous record in the hopes that a court will sift through the details in an effort to deduce some material dispute of fact."  *Domenech v. City of Philadelphia*, 2009 WL 1109316, at \*5 (E.D. Pa. Apr. 23, 2009) (collecting cases).  And, even sifting through those e-mails, it turns out that nothing in them contradicts Mr. Feinstein's testimony, which is apparent by Plaintiffs' failure to spotlight any particular e-mail or material contradiction in their (oversized) briefing.  *See infra* § I.D.

C.      **Plaintiffs Fail to Refute Mr. Feinstein's Reliance on the Surplus Determination Made by the Incumbent Board and Advisors**

1.      **No Evidence Contradicts Mr. Feinstein's Reliance on the April 1 Solvency Determination and Duff & Phelps's Solvency Analysis**

Mr. Feinstein testified that he reviewed and relied in good faith on the April 1 Solvency Determination and related solvency analysis by Duff & Phelps.  (Ex. 1 ¶¶ 42-52; *see also* Dep. Tr. at 28:24-30:1, 32:19-33:4, 164:15-167:7.)  Plaintiffs "present[] no evidence whatsoever to rebut this"—relying exclusively on their misguided credibility challenges—so, "there is no genuine issue of material fact on this point."  *In re Planet Hollywood Int'l*, 274 B.R. 391, 395 (Bankr. D. Del. 2001).  Mr. Feinstein's undisputed good-faith reliance on these materials is dispositive.

2.      **The DGCL and Delaware Case Law Make Clear That Mr. Feinstein Was Entitled to Rely on the April 1 Solvency Determination and Duff & Phelps's Solvency Analysis**

Unable to adduce any evidence to show that Mr. Feinstein did not rely on the valuation work and surplus determination undertaken by Quorum's advisors and incumbent Board members, Plaintiffs ask the Court to determine that Mr. Feinstein's reliance on such materials is outside the scope of Section 172 as a matter of law because, under Plaintiffs' interpretation, the statute imposes unique duties on "new" and "independent" directors such that "an incumbent board's prior approval" is inherently suspicious and directors like Mr. Feinstein are charged with a heightened

duty to conduct independent analysis.  (Opp. at 95.)  But the statute makes no *sub silentio* distinction between new, incumbent, independent, or interested directors; the plain text covers *all* directors.  Plaintiffs point to no case or statutory language to suggest their proposed distinction between director classes even exists in this context, asking this Court to play legislature and write one in.  Thus, inasmuch as determinations by experts and other directors are otherwise reliable sources of information within the ambit of Section 172 (they obviously are, and Plaintiffs do not argue otherwise), then Mr. Feinstein was entitled to rely on them same as any other director.[5]

Regardless, Plaintiffs offer no *factual* reason why Mr. Feinstein was not entitled to rely on the existing valuation work and surplus determination.  Plaintiffs concede (as they must) that Delaware law provides "no set time by which a valuation will become stale such that directors may no longer rely on it" (Opp. at 94), yet they ignore the numerous cases stating that weeks-old valuations are presumptively reliable—especially where the relevant advisors remain engaged and available to advise of material changes.  (*See* MOL at 22-23 & n.7.)

The fundamental principle of Delaware corporate law underlying those cases—*to wit*, that incumbent diligence and determinations may support later transaction approvals *unless new information is presented*—was unambiguously reaffirmed by the Delaware Supreme Court in *McElrath v. Kalanick*, 224 A.3d 982 (Del. 2020).  Plaintiffs' meager attempt to distinguish *McElrath* only underscores why Mr. Feinstein was entitled to rely on the April 1 Solvency Determination and Duff & Phelps's solvency analysis.  Plaintiffs emphasize that the new directors

---

[5] To any extent notions of appropriate or "inappropriate" corporate governance affect interpretation of the statute (*see* Opp. at 95), Defendants' *unrebutted* corporate governance expert opines that permitting new independent directors to approve transactions based on the diligence of incumbent directors accords with good corporate governance practices.  (Ex. 28 at 170:9-179:18; Ex. 35 ¶ 75.) Having declined to offer rebuttal expert opinions, Plaintiffs cannot substitute their counsel's rhetoric for evidence of appropriate corporate governance practices.

in *McElrath* "'heard a presentation that summarized the transaction . . . generally discussed due diligence, asked questions, and participated in a discussion'" (Opp. at 94 (quoting *McElrath*, 224 A.3d at 995)) as if that is not *exactly what happened at the New Directors Orientation* in this case. Just as in *McElrath*: Mr. Feinstein was onboarded while understanding that incumbent directors were evaluating and approving the Spin prior to his joining the Board; they did so; and he was entitled to rely on their preexisting determinations when blessing consummation of that incumbent-approved transaction. *McElrath* makes clear that Mr. Feinstein was entitled to rely on the incumbent Board's determinations *unless and until* he was "informed of any change or had any additional reasons to doubt the diligence process since the approval decision." *McElrath*, 224 A.3d at 995. Regardless of Plaintiffs' own misgivings with the surplus analysis undertaken by Duff & Phelps and the incumbent Board, Plaintiffs cite no evidence that anyone ever *told Mr. Feinstein* that such recent analyses were unreliable. (Ex. 1 ¶¶ 46-48, 52, 54, 57-58.) None exists.

### D.    Plaintiffs Fail to Point to Any Other Conflicting Evidence

Stripping away their improper credibility challenges and demands for additional corroboration, Plaintiffs barely attempt to raise any true conflicts of evidence. The few evidentiary quibbles they raise are neither genuine nor material. At best, Plaintiffs sew only "metaphysical doubt" about whether their version of events could be true. *In re Filene's Basement*, 2013 WL 620288, at *3 (Bankr. D. Del. Feb. 19, 2013); *see also Fernandez v. China Ocean Shipping, (Grp.) Co.*, 312 F. Supp. 2d 369, 378 (E.D.N.Y. 2003) ("[E]ven when viewed through a most charitable prism, all that plaintiff's evidence shows is that a scenario that would create liability is plausible."). That is not enough at this late stage.

*First*, conceding that Mr. Feinstein spoke with Mr. Cash and others on numerous occasions—both by telephone and during in-person meetings—Plaintiffs suggest there is a factual dispute over the contents of those communications: *i.e.*, whether they pertained to the Spin or

exclusively to unrelated business.  There is not.  Both Mr. Feinstein and Mr. Cash testified that they discussed the Spin during the course of meetings and conversations that also addressed other business.  (Ex. 1 ¶¶ 35-37; Ex. 18 at 418:1-420:5.)  That they did not bring stenographers to dinner to memorialize the topics of conversation in 2016 does not create a factual dispute today.[6]

*Second*, Plaintiffs misrepresent Mr. Culotta's testimony.  He was not certain that he did not speak to Mr. Feinstein regarding the Spin between the New Directors Orientation and closing (*cf.* Opp. at 91 n.322); he simply could not recall one way or the other.  (Pltfs' Ex. 62 at 127:15-17; Pltfs' Ex. 104 at 246:21-247:25.)  It is telling that *this* is the best Plaintiffs can do to manufacture a conflict with Mr. Feinstein's testimony: one witness who could not recall.  Conspicuously, despite deposing each of the advisors, incumbent directors, and members of management who Mr. Feinstein relied upon (many multiple times throughout the various litigations), Plaintiffs cannot identify a single person who directly disputes that Mr. Feinstein did so.

*Third*, Plaintiffs suggest there is a material dispute over whether Mr. Cash attended the road show.  (Opp. at 91 n.322.)  There is not.  Mr. Feinstein's declaration states only that he came to understand that Mr. Cash would be joining the road show team (Ex. 1 ¶ 31), and he testified in deposition only that he met with Mr. Cash around that time (Dep. Tr. at 194:6-12)—not that he met with Mr. Cash specifically as part of the road show.  Regardless, the salient aspects of Mr. Feinstein's testimony are that he (1) obtained the road show lender presentation that confirmed his understanding of Quorum's surplus (Dep. Tr. at 120:2-15) and (2) met with Mr. Cash to discuss the Spin before closing (*supra* § I.B).  Plaintiffs do not dispute those facts, and whether Mr. Cash

---

[6] Likewise, despite obtaining third-party discovery from Deloitte, Plaintiffs submit no evidence to contradict Mr. Feinstein's descriptions of his calls with Deloitte.  Moreover, Plaintiffs' assertion that Deloitte's audit of the Form 10 financial statements "has no bearing" on Quorum's equity surplus (Opp. at 92 n.324) makes no sense given that the audited Form 10 financial statements show such surplus on their face.

was officially "attending" the road show when meeting with Mr. Feinstein makes no difference.

*Fourth*, Plaintiffs suggest there are material disputes over whether any of the supplemental indicia of Quorum's surplus—*to wit*, the New Directors Orientation materials, earnings guidance, expressions of enthusiasm from persons working closely on the Spin, the market's willingness to lend, or bond ratings—*standing alone* showed sufficient surplus to ensure Mr. Feinstein's protection by Section 172. (Opp. at 92-94.) There are not. There is no dispute that any of (1) the April 1 Solvency Determination, (2) Duff & Phelps's solvency analysis, or (3) the financial data disclosed in the Form 10 and lender presentation showed sufficient surplus. Thus, while the cumulation of supplemental indicia of surplus gave Mr. Feinstein additional comfort and corroborate his good-faith consideration of the Spin, it is immaterial whether any of them *standing alone* would otherwise suffice under Section 172.[7] In aggregate, they indisputably do.

## II.    Actual Evidence of a Majority's Bad Faith Is Required to Proceed to Trial on Plaintiffs' Section 174 Claims for a "Willful" Violation of Section 173

Willfulness under Section 174 must be established at the Board level. Otherwise, there is no "willful" violation of Section 173 for which any single director could be severally liable. Hence, by failing to adduce evidence of a majority of the directors' bad faith—including by failing to adduce evidence of Mr. Feinstein's bad faith (*supra* § I)—Plaintiffs fail to establish a "willful" violation of Section 173 for which Section 174 liability could be imposed against any director.

The DGCL limits directors' liability for otherwise unlawful dividends by requiring additional elements that Plaintiffs must prove. Beyond establishing a bare violation of Section

---

[7] Plaintiffs do not dispute that the April 1 Solvency Determination and Duff & Phelps's solvency analysis each unambiguously showed Quorum with sufficient surplus. *See supra* § I.C.1. Mr. Feinstein joins in CHSI Defendants' arguments that the Form 10 financial data also reflects a reasonable method of surplus calculation within the wide latitude of the DGCL. Regardless, even if methodologically flawed under the surface (it is not), Plaintiffs cannot overcome the fact that no one ever apprised Mr. Feinstein that there was reason to distrust the Form 10 surplus calculus.

173 as a matter of valuation arithmetic (a tall task given that the statute permits any reasonable methodology), Plaintiffs must then establish that the unlawfulness of the dividend was "willful or negligent" by the approving Board (and outside Section 172's limitations as to any individual director) to impose liability on any director under Section 174. This means establishing that either (1) actual bad-faith intent (*i.e.*, willfulness) or (2) unreasonableness (*i.e.*, negligence) infected the Board's approval. (*See* MOL at 18-20.) With respect to whether willfulness infected the Board *at an entity level*, Plaintiffs must put forth evidence of actual bad-faith intent by a Board majority.[8]

Skirting that evidentiary burden, Plaintiffs argue that Mr. Cash "intentionally inflated" inputs used for the Board's surplus determination and that Mr. Cash's intent *alone* establishes sufficient Board intent to proceed to trial. (Opp. at 88.) But Delaware law does not measure the lawfulness of board action by the malintent of a single member, which "does not strip the board of its corporate power" to make otherwise lawful decisions, such as approving dividends. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 786 (Del. 1981). Instead, excluding tainted votes, "the board entity remains empowered" to discharge its statutory authority because "[t]he problem is one of member disqualification, not the absence of power in the board." *Id.*; *see also Wenske v. Blue Bell Creameries, Inc.*, 214 A.3d 958, 965 (Del. Ch. 2019) ("In assessing board level conflicts in the corporate context, this court 'counts heads' among the individual members of the board to assess whether a majority of its members are, or are not, conflicted.").[9] Thus, the Board-level approval

---

[8] Plaintiffs assert alternative theories of (1) bad faith and (2) unreasonable methods by the Board. Mr. Feinstein underscores here why Plaintiffs' willfulness theory fails and otherwise joins CHSI Defendants' arguments that both theories fail for numerous additional reasons. And Mr. Feinstein is protected even if willfulness or negligence by the Board is otherwise established. *Supra* § I.

[9] Plaintiffs suggest Delaware's "head count" principle is limited to the demand futility context, but neither logic nor case law support that limitation. Deciding whether to commence litigation is just one of innumerable judgments boards are otherwise empowered to make by vote of an unconflicted majority. *Wenske*, 214 A.3d at 965; *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).

of the Distribution was not infected with willfulness unless at least two of its three members acted with bad-faith intent. Regardless of whether Plaintiffs establish Mr. Cash's bad faith (they do not), therefore, Mr. Feinstein and Ms. Seifert remained empowered to approve the Distribution without triggering Section 174 liability—unless Plaintiffs prove at least one of their bad-faith intent also.

Plaintiffs make no attempt to do so. Unlike Mr. Cash, Plaintiffs do not argue (much less offer evidence) that Mr. Feinstein or Ms. Seifert were "manipulating the projections underlying the surplus determination." (Opp. at 90.) Those directors are accused only of insufficiently interrogating the surplus analyses and conclusions presented by advisors and other persons working closely on the transaction. (*Id.* at 89.) Even if true (it is not), that is not "bad faith" conduct under Delaware law, which requires intent to act unlawfully. *City of Coral Springs Police Officers' Pension Plan v. Dorsey*, 2023 WL 3316246, at *8 (Del. Ch. May 9, 2023); *see also Vladimir Gusinsky Revocable Tr. v. Hayes*, 2025 WL 1517442, at *3 (Del. May 28, 2025). A mere "fail[ure] to meaningfully supervise" the surplus analysis does not "r[i]se to the level of bad faith." *Dorsey*, 2023 WL 3316246, at *11. Accordingly, there can be no liability for a "willful" violation.

### III.    Mr. Feinstein Joins CHSI Defendants in All Other Respects

In addition to the arguments set forth herein, Mr. Feinstein joins CHSI Defendants in all arguments relevant to the claims against him, including, for the avoidance of doubt: that (1) Plaintiffs' claims are precluded; (2) the Distribution was not a dividend; and (3) Quorum had sufficient surplus to make the Distribution, as appropriately determined by the Board. These arguments defeat all claims against Mr. Feinstein, so he should be fully dismissed from this case.

### CONCLUSION

For the foregoing reasons, Defendant Adam Feinstein respectfully submits that complete summary judgment should be granted in his favor.

Dated: December 5, 2025

/s/ *Michael S. Neiburg*
Michael S. Neiburg (DE No. 5275)
Christopher M. Lambe (DE No. 6846)
YOUNG CONAWAY STARGATT
& TAYLOR LLP
Rodney Square
1000 North King St.
Wilmington, DE 19801
Tel.: (302) 571-6600
Fax: (302) 571-1253
mneiburg@ycst.com
clambe@ycst.com


Marc B. Kramer
Sheila A. Sadighi
Shane Kunselman
ROLNICK KRAMER SADIGHI LLP
One Pennsylvania Plaza, 34th Floor
New York, NY 10119
Tel.: (212) 597-2800
mkramer@rksllp.com
ssadighi@rksllp.com
skunselman@rksllp.com

*Counsel for Defendant Adam Feinstein*

16