**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>QUORUM HEALTH CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10766 (BLS) |
| DANIEL H. GOLDEN, AS LITIGATION TRUSTEE OF THE QHC LITIGATION TRUST, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE,<br><br>Plaintiffs,<br><br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC.; CHS/COMMUNITY HEALTH SYSTEMS, INC.; REVENUE CYCLE SERVICE CENTER, LLC; CHSPSC, LLC; PROFESSIONAL ACCOUNT SERVICES, INC.; PHYSICIAN PRACTICE SUPPORT, LLC; ELIGIBILITY SCREENING SERVICES, LLC; W. LARRY CASH; RACHEL SEIFERT; ADAM FEINSTEIN; AND CREDIT SUISSE SECURITIES (USA) LLC,<br><br>Defendants. | Adv. Pro. No. 21-51190 (BLS) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS COMMUNITY HEALTH SYSTEMS, INC., CHS/COMMUNITY HEALTH SYSTEMS, INC., REVENUE CYCLE SERVICE CENTER, LLC, CHSPSC, LLC, PROFESSIONAL ACCOUNT SERVICES, INC., PHYSICIAN PRACTICE SUPPORT, LLC, ELIGIBILITY SCREENING SERVICES, LLC, W. LARRY CASH, AND RACHEL SEIFERT'S**
**MOTION FOR PARTIAL RECONSIDERATION**

YOUNG CONAWAY STARGATT
& TAYLOR LLP

Michael S. Neiburg (DE No. 5275)
Christopher M. Lambe (DE No. 6846)
Rodney Square
1000 North King St.
Wilmington, DE 19801
Tel.: (302) 571-6600
Fax: (302) 571-1253
mneiburg@ycst.com

*Counsel for Defendants Community Health Systems, Inc., CHS/Community Health Systems, Inc., Revenue Cycle Service Center, LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC, W. Larry Cash, Rachel Seifert, and Adam Feinstein*

HOGAN LOVELLS CADWALADER
US LLP

Gary A. Orseck (admitted *pro hac vice*)
William J. Trunk (admitted *pro hac vice*)
John S. Clayton (admitted *pro hac vice*)
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
gary.orseck@hlc.com

HERBERT SMITH FREEHILLS
KRAMER (US) LLP

Ralph C. Mayrell (admitted *pro hac vice*)
Jack A. Herman (admitted *pro hac vice*)
Lauren C. Andrews (admitted *pro hac vice*)
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
ralph.mayrell@hsfkramer.com

*Counsel for Defendants Community Health Systems, Inc., CHS/Community Health Systems, Inc., Revenue Cycle Service Center, LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC, W. Larry Cash, and Rachel Seifert*

November 3, 2026

## TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 3

LEGAL STANDARD .......... 5

ARGUMENT .......... 6

I. The Illegal Dividend and Unjust Enrichment Claims Became Property of the Estate, Subject to the Prepetition Preclusion Defense .......... 7

A. Quorum's Illegal Dividend and Unjust Enrichment Claims Were Precluded Prepetition .......... 7

B. The Claims Became Property of the Estate Subject to the Same Preclusion Defense .......... 8

C. Transfer of these Estate Claims to the Trustee Did Not Create New Property Rights .......... 11

II. *Montgomery Ward* Does Not Establish a "Misaligned Incentives" Exception to Section 541(a) .......... 13

III. The Court's Ruling Would Allow Any Debtor to Escape a Final Judgment by Filing for Bankruptcy or Transferring a Claim .......... 17

CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-Tek Mech., Inc. v. KHW Servs., Inc.*,
No. 3:21-cv-01974-H-DDL, 2022 WL 18635745 (S.D. Cal. Oct. 13, 2022) ....6

*Bank of Marin v. England*,
385 U.S. 99 (1966) ....10

*In re Borison*,
226 B.R. 779 (Bankr. S.D.N.Y. 1998) ....11

*Butner v. United States*,
440 U.S. 48 (1979) ....3, 10

*Cmty. Health Sys., Inc. v. Golden*,
No. 1:24-cv-00227-GBW (D. Del. Mar. 4, 2024), Dkt. 17 ....12

*In re Conex Holdings, LLC*,
524 B.R. 55 (Bankr. D. Del. 2015) ....5, 6

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
176 F.3d 187 (3d Cir. 1999) ....7, 8

*In re Derivium Cap. LLC*,
716 F.3d 355 (4th Cir. 2013) ....11

*Edleman v. McMullin Orchards (In re Silver Mill Frozen Foods, Inc.)*,
32 B.R. 783 (Bankr. W.D. Mich. 1983) ....15, 17

*In re Emoral, Inc.*,
740 F.3d 875 (3d Cir. 2014) ....17

*In re Energy Future Holdings Corp.*,
575 B.R. 616 (Bankr. D. Del. 2017), *aff'd*, 904 F.3d 298 (3d Cir. 2018) ....5

*In re FTX Trading Ltd.*,
No. 22-11068 (KBO), 2026 WL 2149961 (Bankr. D. Del. July 24, 2026) ....11

*Haefner v. N. Cornwall Twp.*,
40 F. App'x 656 (3d Cir. 2002) (per curiam) ....8

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
885 F.2d 1149 (3d Cir. 1989) ....*passim*

*In re Hedged-Invs. Assocs., Inc.*,
84 F.3d 1281 (10th Cir. 1996) ....................19

*In re Helms*,
467 B.R. 374 (Bankr. W.D.N.C. 2012)....................11

*Hudson v. RS Fit NW LLC (In re RS Fit NW, LLC)*,
No. 1:24-cv-00448-GBW, 2026 WL 2920735 (D. Del. Sept. 29, 2026)....................6

*Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*,
124 F.3d 487 (3d Cir. 1997)....................1, 8, 10

*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*,
No. 16-11501 (CSS), 2019 WL 647027 (Bankr. D. Del. Feb. 15, 2019) ....................16, 17

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
587 U.S. 370 (2019)....................10, 20

*In re Montgomery Ward, LLC*,
634 F.3d 732 (3d Cir. 2011).................... *passim*

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001).................... *passim*

*Peterson v. McGladrey & Pullen, LLP*,
676 F.3d 594 (7th Cir. 2012) ....................18

*PSINet, Inc. v. Cisco Sys. Cap. Corp. (In re PSINet, Inc.)*,
271 B.R. 1 (Bankr. S.D.N.Y. 2001)....................15

*S.P. Richards Co. v. Arora*,
No. AP 18-01047, 2019 WL 4127147 (Bankr. D.N.J. Aug. 29, 2019) ....................6

*Taylor v. Sturgell*,
553 U.S. 880 (2008)....................11

*Teltronics Servs., Inc. v. L M Ericsson Telecomms., Inc.*,
642 F.2d 31 (2d Cir. 1981)....................11, 19

*USG Cos. v. Advantage Sales & Mktg., LLC*,
No. 1:17-CV-861, 2018 WL 3117545 (D. Del. June 25, 2018) ....................8

*Waris v. Mackey*,
No. 09-1103 (RBK), 2009 WL 4884204 (E.D. Pa. Dec. 15, 2009)....................8

**Statutes**

8 Del. C. § 174(a)....................8

11 U.S.C. § 502 ....................15

11 U.S.C. § 541(a) .................... *passim*

11 U.S.C. § 547 ....................15

**Other Authorities**

Fed. R. Bankr. P. 7054 ....................1, 6

Fed. R. Bankr. P. 9023 ....................1, 5

Fed. R. Bankr. P. 9024 ....................1, 6

Fed. R. Civ. P. 54(b) ....................6

Fed. R. Civ. P. 59(e) ....................5

Fed. R. Civ. P. 60(b) ....................5, 6

*In re Montgomery Ward, LLC*,
No. 1:08-cv-00201-LPS (D. Del.), Dkt. 15-4 ....................13, 16

*In re Montgomery Ward, LLC*,
No. 1:08-cv-00201-LPS (D. Del.), Dkt. 15-13 ....................16

Pursuant to Fed. R. Bankr. P. 9023 and 9024 and this Court's authority to revisit its prior interlocutory orders under Fed. R. Bankr. P. 7054, Defendants Community Health Systems, Inc. ("CHSI"), CHS/Community Health Systems, Inc. ("CHS-2"), Revenue Cycle Service Center, LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC, W. Larry Cash, and Rachel Seifert (collectively, the "CHSI Defendants") submit this memorandum in support of their motion for partial reconsideration of this Court's October 20, 2026 order denying the CHSI Defendants' motion for summary judgment.

**PRELIMINARY STATEMENT**

The Court rejected the CHSI Defendants' preclusion defense to the Trustee's illegal dividend and unjust enrichment claims by holding that the Trustee is not bound by Quorum's prepetition claim preclusion because their litigation incentives are "misaligned." Op. Denying Mot. for Summ. J., Adv. Dkt. No. 433 ("SJ Op.") at 31–32, 55–56. That ruling rests on a manifest error of law, and correcting that error disposes of claims on which the Trustee seeks more than $1.2 billion.

The governing rule is settled. Under section 541(a), the estate succeeds to the debtor's causes of action only as they existed on the petition date—that is, subject to every defense that could have been asserted against the debtor at that time. *See, e.g.*, *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356–58 (3d Cir. 2001); *Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 494–95 (3d Cir. 1997); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 & n.7 (3d Cir. 1989). As the Court put it at argument, when a debtor's claim becomes property of the estate, "[y]ou get what you get." Apr. 7, 2026 Hr'g Tr., Dkt. 429 ("Tr.") at 120. Thereafter, the available defenses to such claims are thus fixed by statute, and the estate, any trustee, and any other assignee or successor stand in the

debtor's shoes subject to all such defenses. Neither the Code's text nor its legislative history "suggests any exceptions" to that rule. *Lafferty*, 267 F.3d at 358 (quoting *In re Hedged-Invs. Assocs., Inc.*, 84 F.3d 1281, 1285–86 (10th Cir. 1996)).

That is dispositive here. The Trustee does not dispute that, on the petition date, the final award in Quorum's prior arbitration against CHSI—which had rested on the same alleged misconduct—barred Quorum from asserting those causes of action. And he concedes that he brings these illegal dividend and unjust enrichment claims *solely* as causes of action that belonged to prepetition Quorum, and not on any other basis. The Trustee therefore owns those claims subject to every defense that the CHSI Defendants could have asserted against prepetition Quorum, including claim preclusion.

The Court nevertheless ruled that the Trustee was *not* bound by that preclusion defense, believing such a result to be compelled by the Third Circuit's decision in *In re Montgomery Ward, LLC*, 634 F.3d 732 (3d Cir. 2011). That is a clear legal error. *Montgomery Ward* involved an assertion of claim preclusion *as between different fiduciaries of different estates in successive bankruptcy cases*. It had nothing to do with any prepetition debtor claim that became estate property solely under section 541(a) subject to any prepetition defenses. And so that case had nothing to do with the binding effect, under that statute, of preclusion and other defenses that could have been asserted against such debtor on the petition date.

The Court mistakenly assumed away that fundamental legal distinction by positing that the claim at issue in *Montgomery Ward* "would be a debtor claim that passed into the estate under Bankruptcy Code § 541." SJ Op. 32 n.110. That is wrong. At issue in that case was whether a plan administrator in a second chapter 11 case, in objecting to a lease-rejection damages claim, was bound by how the *prior debtor in possession* had treated that lease *during the first chapter 11 case*.

*Montgomery Ward*, 634 F.3d at 735–39. The plan administrator did not pursue its claim objection as a debtor cause of action that had become estate property under section 541(a). Accordingly, nothing in *Montgomery Ward* undermines the universally recognized legal principle that an estate and its assignees succeed to a debtor's causes of action, under that statute, subject to every defense that could have been asserted against the debtor—claim preclusion included.

Left uncorrected, the Court's erroneous holding would let any debtor escape an adverse judgment simply by filing for bankruptcy, or even just assigning its claim to creditors with their own provincial "incentives"—thereby enabling the creditors to relitigate that same claim, in the debtor's name, as if nothing had happened. That is the concern that this Court itself identified at argument: that bankruptcy not "become a litigation tool to revive claims . . . that might otherwise be unavailable." Tr. 131–32. It is also precisely the "windfall merely by reason of the happenstance of bankruptcy" that the Code forbids. *Butner v. United States*, 440 U.S. 48, 55 (1979) (quoting *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)). The Court should grant partial reconsideration and enter summary judgment for the CHSI Defendants on Counts XIII and XV.

**BACKGROUND**

This adversary proceeding arises from the 2016 spin-off of Quorum Health Corporation ("Quorum") from CHSI (the "Spin-Off"). Daniel H. Golden, as Litigation Trustee of the QHC Litigation Trust (the "Trustee"), and the Indenture Trustee sued CHSI, CHS-2, related CHSI entities, and certain former officers and directors. After discovery, the CHSI Defendants moved for summary judgment on each remaining claim: illegal dividend, unjust enrichment, breach of contract, and fraudulent transfer. This motion concerns one issue: whether claim preclusion bars the Trustee's illegal dividend (Count XIII) and unjust enrichment (Count XV) claims.

The preclusion issue arises from Quorum's prepetition arbitration against CHSI. In that arbitration, Quorum pressed claims based on the same alleged misconduct that underlies the Trustee's claims here: manipulation of the Spin-Off projections, deterioration of Quorum's assets, the imposition of debt to fund the Distribution, and Quorum's post-Spin-Off financial distress. *See* SJ Op. 28–30; CHSI Defs.' Mem. of Law in Supp. of Mot. for Summ. J., Adv. Dkt. No. 347 ("SJ Mot.") at 32–34. The arbitral panel rejected Quorum's claims in a final award. *See* SJ Mot. 32, 51. Because Quorum could have, but did not, assert illegal dividend and unjust enrichment claims based on the same alleged facts, the award thereafter barred Quorum from asserting those claims. SJ Mot. 32–34. The Trustee does not contend otherwise. *See* CHSI Defs.' Reply in Supp. of Mot. for Summ. J., Adv. Dkt. No. 406 ("SJ Reply") at 3–4.

In moving for summary judgment on those claims, the CHSI Defendants showed that the Trustee stands in no better position. Both claims belonged to prepetition Quorum, became property of the estate under 11 U.S.C. § 541(a), and were later assigned to the Trustee. SJ Mot. 34–38, 52; SJ Reply 3–10. When the Court denied the CHSI Defendants' motion to dismiss, it left open whether the Trustee was pursuing the illegal dividend claim as an estate claim derived from the debtor under section 541(a) or as something else. *See* Adv. Dkt. No. 136 at 27–28. But the Trustee has since answered that question, confirming in discovery that he pursues both claims solely as debtor causes of action that became property of the estate under section 541(a). *See* SJ Ex. 80, Adv. Dkt. No. 348 at Response to Interrogatory Nos. 1, 4, 5, 12.

The Trustee nevertheless argued that he is not bound by the preclusion defense available against prepetition Quorum. According to the Trustee, that is because Quorum had no reason in the arbitration to contend that it had been insolvent at inception. Pls.' Opp. to Mot. for Summ. J., Adv. Dkt. No. 380 ("SJ Opp.") at 52–54. That divergence of interests, he says, renders the

preclusion defense that was available against Quorum on the petition date unavailable against the Trustee in this bankruptcy case—thus transforming a claim that was precluded when Quorum owned it into an un-precluded claim now that the Trustee owns it.

On October 20, 2026, the Court denied summary judgment in full. On preclusion, it assumed that two of the three elements were met and treated privity as the only element in dispute. SJ Op. 30. It briefly acknowledged the distinction between claims that pass from the debtor to the estate under section 541 and other claims possessed by the estate and its successors. *Id.* (citing *Lafferty*, 267 F.3d at 356). But without further discussion of section 541(a) or *Lafferty*, the Court concluded that *Montgomery Ward* controls and liberates the Trustee from the prepetition preclusion defense that had been available against Quorum. To explain that result, the Court posited in a footnote that, although *Montgomery Ward* "did not discuss estate versus creditor causes of action," the lease-recharacterization argument asserted by the plan administrator in the second bankruptcy proceeding "would be a debtor claim that passed into the estate under Bankruptcy Code § 541." *Id.* at 32 n.110. The Court applied the same reasoning to the unjust enrichment claim. *Id.* at 55–56.

## LEGAL STANDARD

Bankruptcy courts analyze motions for reconsideration of their interlocutory orders under Federal Rule of Civil Procedure 59(e), made applicable to bankruptcy cases by Rule 9023 of the Federal Rules of Bankruptcy Procedure. *In re Conex Holdings, LLC*, 524 B.R. 55, 58 (Bankr. D. Del. 2015); *see also In re Energy Future Holdings Corp.*, 575 B.R. 616, 627–28 (Bankr. D. Del. 2017), *aff'd*, 904 F.3d 298 (3d Cir. 2018). Reconsideration is warranted when "there is a need to prevent manifest injustice or to correct a clear error of law or fact." *Conex*, 524 B.R. at 58. Courts also reconsider interlocutory orders under Federal Rule of Civil Procedure 60(b), as applied by

Rule 9024 of the Federal Rules of Bankruptcy Procedure. *S.P. Richards Co. v. Arora*, No. AP 18-01047, 2019 WL 4127147, at *1, *3 (Bankr. D.N.J. Aug. 29, 2019). Under Rule 60(b), reconsideration is warranted when a party identifies "a substantive mistake of law or fact," including, for example, if the Court "applied the wrong statute, ignored binding precedent, or misinterpreted legal standards." *Hudson v. RS Fit NW LLC (In re RS Fit NW, LLC)*, No. 1:24-cv-00448-GBW, 2026 WL 2920735, at *7 (D. Del. Sept. 29, 2026). Moreover, this Court has the "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment" under Rule 7054 (incorporating Fed. R. Civ. P. 54(b)). *See Conex*, 524 B.R. at 58 n.4; *see also A-Tek Mech., Inc. v. KHW Servs., Inc.*, No. 3:21-cv-01974-H-DDL, 2022 WL 18635745, at *1 (S.D. Cal. Oct. 13, 2022).

**ARGUMENT**

The Court denied summary judgment on the Trustee's illegal dividend and unjust enrichment claims on the basis that, even though those claims were estate property acquired from prepetition Quorum, he is not bound by the preclusion defense that the CHSI Defendants had against Quorum because he has different "incentives." That ruling rests on a manifest error of law. Under the plain text of section 541(a), controlling Third Circuit authority, and a mountain of cases elsewhere, claims that pass from the prepetition debtor to the estate are subject to every defense available against the debtor on the petition date, including preclusion.

The Court reasoned that *Montgomery Ward* compels a contrary result in this case, SJ Op. 32 n.110, but that was mistaken. *Montgomery Ward* did not involve claims belonging to the prepetition debtor, nor did it implicate section 541(a) of the Bankruptcy Code. The question presented in *Montgomery Ward* was whether legal positions taken by the estate fiduciary of Montgomery Ward's *first* bankruptcy case (a reorganization) were preclusive against the estate

fiduciary of the company's *second* bankruptcy case (a liquidation). In answering that question in the negative, the Third Circuit said nothing about whether a claim precluded in the hands of the prepetition debtor is equally precluded in the hands of an estate representative whose standing to prosecute that claim is derivative of the debtor under 11 U.S.C. § 541(a)(1).

*Montgomery Ward* did not (and could not) displace the statutory command that a bankruptcy estate succeeds only to the "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Nothing in that decision purported to announce a new rule of preclusion whereby a company may resurrect claims it has litigated and lost merely by filing a bankruptcy petition or assigning the claims to creditors.

## I. THE ILLEGAL DIVIDEND AND UNJUST ENRICHMENT CLAIMS BECAME PROPERTY OF THE ESTATE, SUBJECT TO THE PREPETITION PRECLUSION DEFENSE

Claim preclusion requires a final judgment on the merits, a subsequent suit based on the same cause of action, and the same parties or their privies. *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). The Court assumed the first two elements are satisfied here and rested its ruling on the third. SJ Op. 30. But for claims that belonged to the prepetition debtor, section 541(a) answers the privity question as a matter of law: the estate, and any assignee of the estate, succeeds to the debtor's claim subject to every defense that could have been asserted against the debtor on the petition date. These claims were precluded in Quorum's hands on that date, they entered the estate that way, and they stayed that way when the estate assigned them to the Trustee.

### A. Quorum's Illegal Dividend and Unjust Enrichment Claims Were Precluded Prepetition

It is undisputed that Quorum's illegal dividend and unjust enrichment claims were subject to a complete claim-preclusion defense while they remained in Quorum's hands. *See* SJ Mot. 32–34; SJ Reply 4. The Trustee does not contend otherwise, *see* SJ Opp. 52–54 (illegal dividend);

*id.* at 117 (unjust enrichment), and this Court appropriately assumed as much, SJ Op. 30.[1] Accordingly, as of the petition date, the final arbitration award barred Quorum from asserting the illegal dividend and unjust enrichment claims against the CHSI Defendants.

**B. The Claims Became Property of the Estate Subject to the Same Preclusion Defense**

When Quorum filed its petition, its illegal dividend and unjust enrichment claims against the CHSI Defendants became property of the estate under 11 U.S.C. § 541(a), which reposes in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). No one disputes that the illegal dividend and unjust enrichment claims entered the estate through that mechanism. The Trustee confirmed in discovery that he pursues both claims solely as estate causes of action assigned to him under the Litigation Trust Agreement, and not on any other basis. SJ Ex. 80 at Response to Interrogatory Nos. 1, 4, 5, 12; *see also* 8 Del. C. § 174(a) (conferring standing to pursue illegal dividend claim on "the corporation").

The estate thus took ownership of those claims subject to every defense that could have been asserted against Quorum on the petition date, including claim preclusion. The Third Circuit has identified the "fundamental principle" that "the estate succeeds only to the nature and the rights of the property interest that the debtor possessed pre-petition." *Integrated Sols.*, 124 F.3d at 495. It is black-letter law that "the trustee does not have greater rights in the property of the estate than the debtor had before filing for bankruptcy." *Id.* at 493. The fact that any recovery on those debtor

[1] The remaining elements are equally satisfied, and the Court need not rest on its assumption. The award was a final adjudication on the merits, and an arbitration award is entitled to preclusive effect whether or not it has been confirmed. *See USG Cos. v. Advantage Sales & Mktg., LLC*, No. 1:17-CV-861, 2018 WL 3117545, at *4, 8–9 (D. Del. June 25, 2018); SJ Mot. 32–34. The claims arise from the same transaction and occurrences that Quorum arbitrated. *CoreStates*, 176 F.3d at 194; SJ Mot. 33–34. And the individual CHSI Defendants may invoke the award because of their close relationship with CHSI, the party to the arbitration. *See Waris v. Mackey,* No. 09-1103 (RBK), 2009 WL 4884204, at *8 (E.D. Pa. Dec. 15, 2009); *Haefner v. N. Cornwall Twp.*, 40 F. App'x 656, 657 & n.2 (3d Cir. 2002) (per curiam); *see also* SJ Mot. 32 n.17.

claims now would benefit creditors does not convert those claims into something other than property that the estate acquired from the debtor. *See Lafferty*, 267 F.3d at 349 ("Simply because the creditors of [an] estate may be the primary or even the only beneficiaries of such a recovery does not transform the action into a suit by the creditors." (citation omitted)).

That principle extends to defenses. "[T]he explicit language of section 541 directs courts to evaluate defenses *as they existed at the commencement of the bankruptcy*," and an estate representative is therefore "subject to the same defenses as could have been asserted by the defendant *had the action been instituted by the debtor*." *Lafferty*, 267 F.3d at 356 (quoting *Hays*, 885 F.2d at 1154) (emphasis added). "Neither the text of the [Bankruptcy] Code nor its legislative history suggests any exceptions to the principle that the strength of an estate's cause of action is measured by how it stood as of commencement of the case." *Id.* at 358 (citation modified) (quoting *Hedged-Invs.*, 84 F.3d at 1285–86). Nothing in that rule turns on the specific defense at issue.

*Lafferty* applied that rule in circumstances closely resembling these. A creditors' committee pursued the debtors' claims against alleged participants in the debtors' Ponzi scheme. The Third Circuit first held that the claims had belonged to the debtors, even though creditors would be the beneficiaries of any recovery, and therefore that the committee was "standing in the shoes of the Debtors" in pursuing those claims. 267 F.3d at 344, 348–49. As a result, the committee's claims were barred by *in pari delicto* even though the wrongdoers who had controlled the debtors were gone and any recovery would go only to innocent creditors. *Id.* at 344, 356–58. The change in circumstances and incentives was beside the point, the Third Circuit held, because section 541 forbids "taking into account events that occur after the commencement of the bankruptcy case." *Id.* at 357. What mattered was whether the defense could have been asserted against the debtor as of the petition date.

*Hays* applies the same rule. There, the Third Circuit held that a trustee suing on the debtor's claims was bound by the debtor's prepetition arbitration agreement, even though the trustee had not itself signed that agreement, explaining that, "in actions brought by the trustee as successor to the debtor's interest under section 541," the trustee "is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor. One such defense is a contractual arbitration provision." 885 F.2d at 1154 (citation modified). The court did not ask whether the trustee's litigation incentives were aligned with the debtor's before holding that the trustee was bound by the subject-to-arbitration defense. It relied instead on section 541(a), which "was not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *Id.* at 1154 n.7 (citation omitted).

Any other rule would mean that a "trustee would possess *greater* rights in the property interest than the debtor" had—a result "akin to providing the debtor with 'a windfall merely by reason of the happenstance of bankruptcy,' an outcome clearly in tension with the purposes of the Code and existing caselaw." *Integrated Sols.*, 124 F.3d at 495 (quoting *Butner*, 440 U.S. at 55). As the Supreme Court has put it, "[w]hatever limitations on the debtor's property apply outside of bankruptcy apply inside of bankruptcy as well." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 381 (2019) (citation modified); *see also Butner*, 440 U.S. at 54–56; *Bank of Marin v. England*, 385 U.S. 99, 101–02 (1966).

Before this Court's summary judgment decision, the CHSI Defendants are aware of no court that had ruled that a trustee asserting claims acquired from a debtor under section 541(a)(1) is not subject to a preclusion defense—or any other defense, for that matter—that could have been asserted against the debtor on the petition date. *See* SJ Reply 6–7 & nn.3–12 (collecting cases). With respect to preclusion, specifically, courts have consistently reached the opposite conclusion.

*See, e.g.*, *Teltronics Servs., Inc. v. L M Ericsson Telecomms., Inc.*, 642 F.2d 31, 37 (2d Cir. 1981) ("[W]e see no reason to depart from the general rule that a judgment rendered against a bankrupt prior to his bankruptcy is conclusive upon the trustee."); *In re Helms*, 467 B.R. 374, 383–84 (Bankr. W.D.N.C. 2012); *In re Borison*, 226 B.R. 779, 786 (Bankr. S.D.N.Y. 1998); *see also Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008).

### C. Transfer of these Estate Claims to the Trustee Did Not Create New Property Rights

The estate's transfer of these claims to the Trustee does not change the result. The Trustee took the claims exactly as the estate held them—subject to every defense available against Quorum on the petition date. "[T]o the extent that [a defense] would have barred a debtor from bringing suit directly, it similarly bars a bankruptcy trustee—standing in the debtor's shoes—from bringing suit." *In re Derivium Cap. LLC*, 716 F.3d 355, 367 (4th Cir. 2013); *see also In re FTX Trading Ltd.*, No. 22-11068 (KBO), 2026 WL 2149961, at *21 (Bankr. D. Del. July 24, 2026). The plaintiff in *Derivium*, like the Trustee here, was an assignee of estate claims. *See* 716 F.3d at 367.

Ordinary assignment principles point the same way. An assignee takes no greater rights than its assignor, and "preceding and succeeding owners of property" share the kind of substantive legal relationship that supports nonparty preclusion. *Taylor*, 553 U.S. at 894. As the Court summarized the rule at argument, when a claim changes hands from one party to another, the successor indisputably "[r]emains bound." Tr. 138. The estate could not assign more than it owned under section 541(a), and so the assigned claims carried with them the preclusion defense as it applied against Quorum on the petition date.[2]

[2] Nothing herein concedes that the unjust enrichment claim was transferred to the Litigation Trust. As the CHSI Defendants have explained, that claim was subject to a valid prepetition lien and therefore is excluded from the Litigation Trust Assets. SJ Mot. 52–54; SJ Reply 40–41.

This Court cited this very principle in sustaining the Trustee's effort to compel the production of documents that were subject to Quorum's joint privilege with CHSI. The Trustee insisted that the Litigation Trust "is Quorum's successor with respect to the claims it is pursuing" and, "as Quorum's successor, is just as entitled to access and use the joint-privileged documents as was Quorum." Appellees' Resp. in Opp. to Mot. for Leave to Appeal at 11–12, *Cmty. Health Sys., Inc. v. Golden*, No. 1:24-cv-00227-GBW (D. Del. Mar. 4, 2024), Dkt. 17. This Court agreed, holding that the Litigation Trust "is essentially the successor *and stands in the shoes of Quorum*, notwithstanding the fact that Quorum has reorganized." Dec. 13, 2023 Hr'g Tr. at 21:20–23, Dkt. 208 (emphasis added); *see also* Mem. Op. at 8, *Cmty. Health Sys.*, No. 1:24-cv-00227-GBW (D. Del. May 20, 2024), Dkt. 29 (same). The Court's ruling did not turn on whether the Trustee's current litigation incentives matched prepetition Quorum's. Plainly they did not, seeing as the Trustee now presses against CHSI the very allegations that Quorum and CHSI once jointly defended. *See id.* at 3. Succession to Quorum's shoes carries Quorum's burdens along with its benefits: the Trustee cannot wear those shoes to obtain Quorum's privileged documents and then step out of them to escape the preclusion defense that bound Quorum on the petition date.

* * *

Section 541(a) and controlling authority require summary judgment for the CHSI Defendants on the precluded illegal dividend and unjust enrichment claims. The Trustee holds those claims only in the form in which they entered the estate—*i.e.*, subject to the preclusion defense available *against Quorum itself* on the petition date. No postpetition divergence of incentives revives claims in the Trustee's hands that were precluded in Quorum's hands.

## II. *MONTGOMERY WARD* DOES NOT ESTABLISH A "MISALIGNED INCENTIVES" EXCEPTION TO SECTION 541(A)

The Court's claim-preclusion ruling rests on the premise that *Montgomery Ward* requires an inquiry into whether the Trustee's incentives align with prepetition Quorum's, even as to claims that passed to the estate under section 541(a). SJ Op. 31–32. That premise is wrong as a matter of law. *Montgomery Ward* answered a different question and involved a different kind of claim, and reading it as the Court did would put it in conflict with an unbroken string of precedent including binding Third Circuit decisions that the *Montgomery Ward* panel could not have overruled.

***First***, *Montgomery Ward* answered a different question—namely, whether estate fiduciaries in successive bankruptcy cases are in privity for preclusion purposes, such that a confirmation order in one case could preclude a claim objection in a later case. It did not address section 541(a) because no question under that statute was ever presented on the facts of that case.

Montgomery Ward filed for chapter 11 twice. In the first case ("*Ward I*"), the debtor in possession assumed a lease and a plan was confirmed. 634 F.3d at 735. In the second case ("*Ward II*"), the debtor in possession rejected the lease; the lessor filed a proof of claim for rejection damages; and in response, the Official Committee of Unsecured Creditors ("UCC") and the debtor objected to the lessor's claim under sections 101 and 502 of the Bankruptcy Code. *See* Verified Mot. for an Order Disallowing Certain Claims at 1, filed at *In re Montgomery Ward, LLC*, No. 1:08-cv-00201-LPS (D. Del.), Dkt. 15-4 (Ex. A). Four years later, and following the case's conversion to a liquidation, the newly appointed plan administrator filed a supplemental objection reaffirming the claim objections previously filed by creditors and the debtor and arguing, among other things, that the subject lease was in fact a structured financing and not a true lease. *Montgomery Ward*, 634 F.3d at 735–36. In response, the lessor argued that the *Ward I* debtor in possession's confirmed plan precluded the plan administrator's claim objection in *Ward II*.

The lessor did not assert—nor could it have asserted, as we show below—that the plan administrator's claim objection in *Ward II* was somehow a prepetition debtor cause of action that the plan administrator was asserting solely because such a cause of action had become property of the estate under section 541(a). Nor did the lessor contend that the *Ward II* plan administrator could not make a lease-recharacterization argument in support of that claim objection without having succeeded to such a cause of action, if any, originally owned by the prepetition debtor.

Instead, the only question in *Montgomery Ward* was whether the plan administrator in *Ward II* was the privy of the debtor in possession in *Ward I*. *Id.* at 737–39. The Third Circuit acknowledged that a trustee "may . . . be considered the privy of the prebankruptcy debtor" as its successor in interest, *id.* at 737–38, but explained that the filing of *Ward II* "resulted in a new estate" whose fiduciary "was not the same party" as the *Ward I* debtor in possession, *id.* at 737. The divergent incentives that mattered, in other words, were those of two estate fiduciaries in successive bankruptcy cases—not those of a prepetition debtor and the estate that succeeded to its property under section 541(a).

At argument in this case, the Trustee's counsel described *Montgomery Ward* the same way, explaining that the Third Circuit's decision held only that actions taken "by the estate in that first bankruptcy" were not binding on "a new estate" in the second. Tr. 182–83. Exactly right. And, again, that has nothing to do with section 541(a) or whether a trustee who is pursuing a debtor claim that became estate property under that statute is bound by a preclusion defense that could have been asserted against the debtor as of the petition date.

The authorities on which *Montgomery Ward* relied confirm that key point. *Silver Mill*, the decision on which *Montgomery Ward* principally rested, *see* 634 F.3d at 738, held that a chapter 11 trustee was not bound *by the debtor in possession's* failure to pursue a preference claim under

11 U.S.C. § 547—a claim that exists only in bankruptcy and could not have been a debtor claim under section 541(a). *Edleman v. McMullin Orchards (In re Silver Mill Frozen Foods, Inc.)*, 32 B.R. 783, 785–86 (Bankr. W.D. Mich. 1983). And the "different objectives" principle that *Montgomery Ward* borrowed from *Silver Mill* in turn came from a case holding that a chapter 7 trustee's use of the lien-avoidance power conferred by section 724 of the Bankruptcy Code was not precluded by the debtor in possession's unsuccessful assertion of that power under chapter 11. *Silver Mill*, 32 B.R. at 786 (quoting *In re Cmty. Hosp. of Rockland Cnty.*, 15 B.R. 785, 787 (Bankr. S.D.N.Y. 1981)). Like *Montgomery Ward* itself, each of these cases involved successor estates or fiduciaries exercising Bankruptcy Code powers; none involved a prepetition cause of action that passed to the estate under section 541(a) or addressed that statute.

***Second***, *Montgomery Ward* involved a different kind of claim. The plan administrator was not prosecuting a cause of action that the debtor had owned before bankruptcy. It was objecting, in *Ward II*, to a proof of claim filed in *Ward II* for damages caused by a lease rejection in *Ward II*. 634 F.3d at 735–36. A claim objection is a creature of the claims-allowance process, 11 U.S.C. § 502, and the plan administrator's authority to assert it came from the Code and the *Ward II* plan—not solely as a claim obtained from the debtor via section 541(a). The plan administrator undoubtedly could deploy a lease-recharacterization argument in support of that claim objection independent of any prepetition debtor cause of action. *See, e.g.*, *PSINet, Inc. v. Cisco Sys. Cap. Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 5–6 (Bankr. S.D.N.Y. 2001). At argument, Trustee's counsel herself characterized the plan administrator's lease challenge as "a statutory claim" (Tr. 188)—meaning a claim conferred on the estate and plan administrator by operation of the Bankruptcy Code, not by a succession to ownership of any cause of action that the debtor had held prepetition.

The *Ward II* plan administrator confirmed as much in its filings. It invoked its "exclusive right to make and file objections to claims" under Section 7.3 of the *Ward II* plan of liquidation, sought relief under section 105 of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001, and expressly disclaimed being merely a successor to the *Ward I* debtor in possession. *See* Supp. Obj. at 1 n.1, ¶ 36, filed at *In re Montgomery Ward, LLC*, No. 1:08-cv-00201-LPS (D. Del.), Dkt. 15-4 (Ex. B); Plan Adm'r SJ Mem. at 4–5 & n.6, filed at *In re Montgomery Ward, LLC*, No. 1:08-cv-00201-LPS (D. Del.), Dkt. 15-13 (Ex. C). *Montgomery Ward* had no occasion to distinguish the plan administrator's claim objection and rights under the Bankruptcy Code from debtor claims to which the estate succeeded under section 541(a) precisely because no prepetition cause of action was at issue.

The Court's analysis thus most acutely went astray in footnote 110. There, the Court acknowledged that *Montgomery Ward* "did not discuss estate versus creditor causes of action," but supposed that the plan administrator's claim objection, based on recharacterizing a lease, "would be a debtor claim that passed into the estate under Bankruptcy Code § 541." SJ Op. 32 n.110. It was not. Rather, it was a ground available to the plan administrator under the Code when objecting to a lease-rejection damages claim that had been asserted against the *Ward II* estate in that bankruptcy case.[3]

---

[3] *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, No. 16-11501 (CSS), 2019 WL 647027 (Bankr. D. Del. Feb. 15, 2019), which the Court cited as "following *Montgomery Ward*" (SJ Op. 32 n.109), does not support its decision either. There, defendants argued that a trustee was precluded by a creditor's (OCC's) unsuccessful prior suit and by the prepetition debtor's failure to assert claims in that suit. 2019 WL 647027, at *4–5. The court rejected both arguments. *None* of the claims at issue, it held, derived solely from the prepetition debtor. Maxus, the debtor, "had no actionable pre-petition fraudulent conveyance claims," and the other claims were general creditors' claims that were not pursued solely as debtor claims that became estate property under section 541(a). *Id.* at *2, *5. The Trustee's own account at argument in this case confirms the point: his counsel explained that *Maxus* treated alter ego claims as belonging to "the debtors' creditors" and the unjust enrichment claim as "a generalized claim" of creditors that the estate controlled under *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014), not as property of the estate under section 541(a). Tr. 238.

***Finally***, the Court's reading of *Montgomery Ward* would place that decision in irreconcilable conflict with binding precedent that it did not purport to revisit. *Hays* drew a precise line: a trustee suing on the debtor's section 541 claims is bound by the debtor's prepetition arbitration agreement, 885 F.2d at 1154, but a trustee asserting avoidance claims under section 544(b) is not, because those claims "are not derivative of the bankrupt." *Id.* at 1155. *Lafferty* likewise held that, as to estate claims, defenses are measured without "taking into account events that occur after the commencement of the bankruptcy case"—including a change in who controls the claim and whose interests it serves. 267 F.3d at 357. *Montgomery Ward* did not cite *Lafferty* or *Hays*, much less purport to narrow those decisions, and a Third Circuit panel could not have overruled them in any event. *See* 3d Cir. I.O.P. 9.1.

The Court put the question squarely at argument: Does *Montgomery Ward* create "an exception to 541" that is "something you could drive a truck through," or did it involve "a different circumstance than what we have in front of us?" Tr. 232. It is the latter. Taken together, this Circuit's cases draw a clear line: When a trustee sues on the debtor's own prepetition claims, he stands in the debtor's shoes and takes those claims subject to every defense that could have been asserted against the debtor. *E.g.*, *Lafferty*, 267 F.3d at 356; *Hays*, 885 F.2d at 1154. By contrast, when a trustee acts on any other authority, the trustee is not merely the debtor's successor and a prior judgment against the debtor or other estate or fiduciary may not bind him. *See Montgomery Ward*, 634 F.3d at 738–39; *Silver Mill*, 32 B.R. at 786. The Trustee here sues on Quorum's own claims—squarely on the *Lafferty/Hays* side of that line. No truck-sized loophole is necessary.

## III. THE COURT'S RULING WOULD ALLOW ANY DEBTOR TO ESCAPE A FINAL JUDGMENT BY FILING FOR BANKRUPTCY OR TRANSFERRING A CLAIM

Left uncorrected, the uncertainty created by the Court's error would have an impact that is not confined to this case. A gap between a trustee's incentives and the prepetition debtor's

incentives is not an unusual circumstance, but rather a feature of every bankruptcy in which a trustee represents creditors. *See Montgomery Ward*, 634 F.3d at 738. If that gap were enough to allow a trustee to pursue claims acquired from the debtor, free of any preclusion defenses that applied to those claims on the petition date, then no prepetition judgment, arbitral award, or settlement against a debtor would ever bind its estate representative.

Indeed, nothing in the Court's ruling would limit its application to bankruptcy cases. If a transfer of claim ownership by statute, under section 541(a), comes with existing defenses *only if* the transferor and transferee have perfectly aligned incentives, then that same rule also would apply to transfers of claim ownership by contract or otherwise. An entity holding precluded claims therefore would not even need to file for bankruptcy to escape preclusion under the Court's new rule, but rather could simply transfer those claims to someone who has any different reason to pursue them.

Nor would such a rule stop at preclusion. The same reasoning necessarily would strip estate claims of *in pari delicto*, waiver, release, and limitations defenses—the very defenses that *Lafferty*, *Hays*, and *Integrated Solutions* hold survive the petition. As the Seventh Circuit observed, in rejecting a trustee's attempt to shed *in pari delicto*, "[i]f *in pari delicto* is out, presumably the statute of limitations would be out too, or maybe even the defense of accord and satisfaction." *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 598 (7th Cir. 2012). Indeed, under this Court's reasoning, *Lafferty* itself would have come out the other way. The committee there had every incentive that the debtors' wrongdoers lacked, yet the Third Circuit held it to the defense that could have been asserted against the debtors on the petition date. 267 F.3d at 357–58.

The Trustee has no answer to this point. His counsel conceded at argument that *in pari delicto* binds a trustee when asserting debtor causes of action, Tr. 192, even though, as the Court

observed, "clearly, the interests diverged with *in pari delicto*," *id.* at 190. Asked to "square that circle," counsel could say only: "I'm not sure . . . why the Third Circuit differentiated [preclusion] from *in pari delicto* and other defenses." *Id.* at 190–91. The fact of the matter is that the Third Circuit *did not* draw that illogical distinction in *Montgomery Ward*, and has never done so anywhere else. And nothing in section 541(a) permits it.

Policy considerations do not justify the Court's claim-preclusion ruling either. Courts have repeatedly declined to create equitable exceptions to section 541(a), recognizing that "the issue is not whether such an exception would make good policy but whether the exception can be found in the Bankruptcy Code." *Hedged-Invs.*, 84 F.3d at 1286; *see Lafferty*, 267 F.3d at 358. The Second Circuit specifically rejected the argument that bankruptcy's interest in equitable distribution outweighs the finality of a prepetition judgment, holding that a debtor's bankruptcy "does not liberate the trustee from the res judicata effects" of that judgment. *Teltronics*, 642 F.2d at 37. Finality matters most where, as here, a debtor chose its forum, litigated its grievances to a final award, and lost. If the losing party could simply relitigate in bankruptcy and through a trustee, then every judgment or award against a struggling company would be provisional and its counterparties would lose the repose for which they litigated or settled.

This case illustrates the stakes in imposing such a new legal regime. Quorum pressed these allegations in the arbitration and lost. On the petition date, its illegal dividend and unjust enrichment claims were precluded—a point that the Trustee does not dispute. Yet under the Court's ruling, Quorum's bankruptcy filing amounted to a magic wand, the waving of which turned those dead claims into a $1.2 billion lawsuit. As the Court observed at argument, from the CHSI Defendants' perspective "it sure looks like the same entity. I got sued by Quorum, now I'm getting sued by the trustee for the same facts, same documents, same discovery." Tr. 190. That is

because, as this Court had already held at the Trustee's urging, it *is* the same entity for these purposes given that the Litigation Trust "stands in the shoes of Quorum." Dec. 13, 2023 Hr'g Tr. at 21:20–23, Dkt. 208.

Courts are rightly chary of such "bankruptcy exceptionalism," Tr. 190, and the Code makes this kind of alchemy impossible by making clear that the estate "cannot possess anything more than the debtor itself did outside bankruptcy," *Mission Prod. Holdings*, 587 U.S. at 381. The Court should correct the legal error and contrary ruling now, before the parties are forced to try precluded claims on the merits.

## CONCLUSION

For the foregoing reasons, this Court should grant partial reconsideration of the summary judgment opinion and order and enter summary judgment for the CHSI Defendants on the Trustee's illegal dividend and unjust enrichment claims.

Date: November 3, 2026

/s/ *Michael S. Neiburg*
Michael S. Neiburg (DE No. 5275)
Christopher M. Lambe (DE No. 6846)
YOUNG CONAWAY STARGATT
& TAYLOR LLP
Rodney Square
1000 North King St.
Wilmington, DE 19801
Tel.: (302) 571-6600
Fax: (302) 571-1253
mneiburg@ycst.com

*Counsel for Defendants Community Health Systems, Inc., CHS/Community Health Systems, Inc., Revenue Cycle Service Center, LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC, W. Larry Cash, Rachel Seifert, and Adam Feinstein*

Respectfully submitted,

Gary A. Orseck (admitted *pro hac vice*)
William J. Trunk (admitted *pro hac vice*)
John S. Clayton (admitted *pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
gary.orseck@hlc.com

Ralph C. Mayrell (admitted *pro hac vice*)
Jack A. Herman (admitted *pro hac vice*)
Lauren C. Andrews (admitted *pro hac vice*)
HERBERT SMITH FREEHILLS KRAMER (US) LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
ralph.mayrell@hsfkramer.com

*Counsel for Defendants Community Health Systems, Inc., CHS/Community Health Systems, Inc., Revenue Cycle Service Center, LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC, W. Larry Cash, and Rachel Seifert*